Alan I. Nahmias, Esq., SBN 125140
*anahmias@mbnlawyers.com*
Scott H. Noskin, Esq., SBN 164923
*snoskin@mbnlawyers.com*
Stephen F. Biegenzahn, SBN 60584
*sbiegenzahn@mbnlawyers.com*
MIRMAN, BUBMAN & NAHMIAS, LLP
21860 Burbank Boulevard, Suite 360
Woodland Hills, CA  91367
Telephone:    (818) 451-4600
Facsimile:    (818) 451-4620

General Counsel for Chapter 7 Trustee

(SPACE BELOW FOR FILING STAMP ONLY)

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA, RIVERSIDE DIVISION

| | |
|---|---|
| In Re:<br><br><br><br><br><br>HALO SPORTS BAR & GRILL, INC.,<br><br><br><br><br><br><br>Debtor. | Case No. 6:15-bk-14566-SC<br><br>Chapter 7<br><br>TRUSTEE'S MOTION FOR ORDER:<br><br>(1) AUTHORIZING SALE OF REAL PROPERTY OF THE ESTATE (17122 MAIN STREET, HESPERIA, CALIFORNIA) FREE AND CLEAR OF CERTAIN LIENS CLAIMS AND INTERESTS;<br>(2) CONFIRMING SALE TO THIRD PARTY OF THE HIGHEST BIDDER APPEARING AT THE HEARING;<br>(3) FOR DETERMINATION THAT BUYER IS ENTITLED TO 11 U.S.C. §363(m) PROTECTION; AND<br>(4) WAIVING THE FOURTEEN DAY STAY PRESCRIBED BY BANKRUPTCY RULE 6004<br><br>MEMORANDUM OF POINTS AND DECLARATIONS OF LARRY SIMONS AND BRUCE KALLEN IN SUPPORT THEREOF<br><br>DATE:         September 12, 2017<br>TIME:         11:00 a. m.<br>CTRM:        Video Hearing Room 126<br>                    3420 Twelfth Street<br>                    Riverside, CA  92501 |

{00469403} 0

1  TO THE HONORABLE SCOTT C. CLARKSON, UNITED STATES BANKRUPTCY JUDGE,

2  THE DEBTOR, ITS COUNSEL OF RECORD, AND ALL OTHER PARTIES IN INTEREST:

3       Larry D. Simons, the duly appointed, qualified and acting chapter 7 trustee ("Trustee") of

4  the bankruptcy estate ("Estate") of Halo Sports Bar & Grill, Inc. ("Debtor"), respectfully submits

5  his Motion for an Order (1) Authorizing Sale of Real Property Free and Clear of Liens, Claims

6  and Interests, (2) Confirming Sale to Third Party or the Highest Bidder Appearing at the

7  Hearing, (3) Determining that Buyer is a "Good Faith" Purchaser entitled to protections found

8  at 11 U.S.C. § 363(m), and (4) Waiving the Fourteen (14) day stay prescribed by Rule 6004(h) of

9  the Federal Rules of Bankruptcy Procedure (the "Motion"), and, in support of the Motion,

10 represents that:

11 I.    INTRODUCTION

12      The Motion seeks an order approving the sale of the Estate's interest in certain real property

13 (the "Sale") commonly known as 17122 Main Street, Hesperia, California , APN 0410-134-11[1] (the

14 "Property") on the terms and conditions set forth in that written offer which is attached to the as

15 Exhibit "A" ("Written Offer") to the Declaration of Bruce Kallen filed in support of this Motion

16 ("Kallen Declaration").  The Written Offer was made by Mark Maida and Munem Maida

17 (collectively "Buyers"), at a price of eighty-five thousand dollars ($85,000.00), cash. The Motion

18 requests an order of the Court approving the Sale to Buyers upon the terms of the Written Offer or to

19 any person or entity who appears at the hearing and submits a higher, acceptable bid[2] free and clear

20 of liens on the Property, with liens to attach to the proceeds of the Sale.  The Property is being sold

21 on an "as is" "where is" basis, with no warranties, recourse, contingencies or representations of any

22 kind.

23      The Motion also seeks an order (i) confirming the Sale to the Buyers or to the highest

24 bidder appearing at the hearing on the Motion (hereafter, "the Buyer"), (ii) authorizing the Trustee

25

26 _____
   [1] The APN and the common street address reflected in Buyers' initial offer were incorrect. Those
   errors were subsequently rectified. *See*, Kallen Declaration, ¶ 2.

27
   [2] The terms and conditions relating to overbids have not yet been approved by the Court; and those
28 actually implemented may vary from those described here.

{00469403}                              1

to execute any and all documents that may be necessary to consummate the Sale, (iii) determining

that the Buyer is entitled to 11 U.S.C. § 363(m) protection and (iv) waiving the fourteen (14) day

stay prescribed by Rule 6004(h) of the Federal Rules of Bankruptcy Procedure.

As indicated above, the Sale is subject to approval of the United States Bankruptcy Court

and to overbids from qualified overbidders.    Any person or entity desiring to submit an overbid

will be asked to submit a cashier's check, made payable to "Larry D. Simons, Chapter 7 Trustee" in

the amount of five thousand dollars ($5,000.00) ("Deposit") no later than two (2) business days

before the hearing on the Motion.[3]    The Deposit shall become non-refundable if the successful

overbidder is thereafter unable to complete the purchase of the Property.

Subject to Court approval, the Trustee recommends the first overbid be in cash, and in

the amount of ninety thousand dollars ($90,000.00).    Subsequent overbids, if any, shall be

requested to be made in minimal increments of two thousand dollars ($2,000.00) or in

such other amount[s] as the Court may deem appropriate at the time of the hearing on the

Motion.    The Trustee reserves the right to reject any overbid that, in his business judgment, is

inadequate. All due diligence is expected to be completed prior to the hearing on the Sale

("Hearing") because the Sale is on an "as is," "where is" basis with no warranties,

representations, recourse or contingencies of any kind.    The successful bidder—whether the

Buyers, or a third party (hereafter referred to simply as the "Buyer")—will, subject to Court

approval, be expected to pay the full amount of the successful overbid, less any deposit, to the

Trustee within fourteen (14) days from the date the Order approving the Motion is entered.    In

the event that the successful bidder does not make full payment within that time, the Trustee shall be

authorized to accept the offer made by the second highest over bidder.

II.    BACKGROUND

In 1984, Carl and Nellie Schou (the "Schous") constructed a building on the vacant land

which is now the site of the Property. From the location, the Schous operated a bar and grill. The

Property was sold by the Schou Trust to the Debtor in or about January, 2005. A portion of the sales

price was financed by the Schou Trust, which carried back two Promissory Notes in the respective

---

[3]    The Deposit represents approximately seven percent (7%) of the initial sale price.

{00469403}    2

amounts of three hundred seventy thousand dollars ($370,000.00) and one hundred fifty-five thousand dollars ($155,000.00) which were secured by the Property ("Notes"). The Notes fell into arrears, and the Schou Trust commenced non-judicial foreclosure proceedings ("Non-Judicial Foreclosure Action"). The Non-Judicial Foreclosure Action spawned a Settlement Agreement between the Schou Trust, the Debtor, George Thanos, the Debtor's principal, his wife, Klairis, and various other Thanos-controlled entities. On May 6, 2015, the Debtor held record title to the Property. The Schou Trust asserts that as of that date, it was owed two hundred seventy-nine thousand nine hundred twenty-three dollars and two cents ($279,923.02); and has filed a Proof of Claim in the Case in that amount. *See,* Claim No. 5-1.

In addition to having not made payments on the Schou Trust Promissory Notes after October, 2014, property taxes on the Property were not paid for years. Although the Debtor owned the Property, the sports bar and grill that was operated on the premises was purportedly run by another entity owned or controlled by Thanos, Santa Cruz Tides Inc. ("Santa Cruz"). The Lease produced by the Debtor which purportedly was in effect between Santa Cruz and itself is incomplete and unclear.

The Case was commenced on May 6, 2015 under chapter 11. The principal asset of the Estate, was and remains the Property. The catalyst for the filing was the tax sale by the County of San Bernardino ("County") scheduled for August 5, 2015. Rather unexpectedly, on July 21, 2015, the County obtained relief from the automatic stay allowing it to proceed with its tax sale and the Court converted the Case to chapter 7, sua sponte. Upon conversion, the Trustee was appointed.

Mysteriously, on August 4, 2015 the night before the County's tax sale, the structure on the Property burned to the ground. The cost to completely rebuild the structure was projected to exceed six hundred thousand dollars ($600,000.00) The tax sale was cancelled by the County and the Debtor made a claim with the insurer of the property, Seneca Insurance Company, Inc., a New York corporation ("Seneca"). The Schou Trust, named as an additional loss payee on the policy, also placed a claim with Seneca.

For a considerable period, Seneca ignored entreaties by Movant and the Schou Trust, and would not discuss paying the claims, even threatening to rescind the policy on a number of grounds. The Trustee and the Schou Trust disputed Seneca's contentions, and ultimately, facing a loss of the

{00469403}                                    3

1    Property to a re-scheduled tax sale—set for May 13, 2016--the parties and their counsel met with

2    Seneca and its counsel; and a settlement was reached.

3         Pursuant to the settlement, Seneca paid two hundred forty-nine thousand dollars

4    ($249,000.00) to the Estate.  From that payment, sixty-five thousand nine hundred thirty-two dollars

5    and forty-five cents ($65,932.45) was paid to the County of San Bernardino to redeem the Property

6    before the May 13, 2016 redemption deadline.  Of the remainder -- one hundred eighty-three

7    thousand sixty-seven dollars and fifty-five cents ($183,067.55)--the Schou Trust was paid one

8    hundred thirty-one thousand sixty-seven dollars and fifty-five cents ($131,067.55), leaving fifty-two

9    thousand dollars ($52,000.00)  from the settlement proceeds.  Of that amount, forty-two thousand

10   dollars ($42,000.00) was to be used to clear the Property of all remaining debris left from the fire and

11   to demolish the charred remains of the structure.

12        After clearing the debris, the Trustee was authorized to list the Property for sale, and from the

13   net Sale proceeds, the Estate is entitled to receive the first seventy-three thousand dollars

14   ($73,000.00); and the Schou Trust is to receive the next available funds, up to ninety-eight thousand

15   nine hundred thirty-two dollars and forty-five cents ($98,932.45), for a total payment to the Schou

16   Trust of Two Hundred Thirty Thousand Dollars ($230,000.00).  To the extent the net Sale proceeds

17   exceed $98,932.45, they are to be divided between the Schou Trust and the Estate on the ratio of

18   seventy-five percent (75%) to the Schou Trust and twenty-five percent (25%) to the Estate.

19        After the Property was cleared, the Trustee retained RE/MAX Full Spectrum and Shear

20   Realty to list and market the Property.  The Court approved the RE/MAX employment in an Order

21   entered on October 19, 2016.  Since then, the Property has been marketed extensively.  On or about

22   February 27, 2017, the Trustee received an offer to purchase the Property for the price of Eighty-five

23   Thousand Dollars ($85,000.00) subject to overbid and the approval of this Court ("Offer").  A true

24   and correct copy of the Offer is attached to the Kallen Declaration as Exhibit "A."

25        The Trustee had previously received and rejected an offer of eighty thousand dollars

26   ($80,000.00) for the Property, believing it to be low.  *Id.* The $85,000.00 Offer at least equals, if it

27   does not exceed value of the Property.

28        On October 31, 2016, a Preliminary Title Report regarding the Property (the "PTR") was

{00469403}                                4

1    prepared by Chicago Title Company.  An accurate copy of the PTR is attached as Exhibit "B" to the

2    Simons Declaration.  The PTR reflects twenty-seven (27) liens on the Property ("Liens").  The

3    Trustee will use the net proceeds of the Sale to pay administrative expenses allowed in the Case; and,

4    if there is a surplus, to pay unsecured claims of the Estate.

5    III.    THE SALE IS IN THE BEST INTERESTS OF THE ESTATE

6            The Trustee has the right and power to sell the Property pursuant to 11 U.S.C.

7    §363(b)(l), which provides that "[t]he trustee, after notice and a hearing, may use, sell or lease, other

8    than in the ordinary course of business, property of the estate."

9            To approve a sale outside the ordinary course of business, the court must discern a sufficient

10   business reason for the sale, and it must also find that the sale is in the best interests of the

11   estate.  The sale must be fair and reasonable, the asset must have been adequately marketed, the

12   terms of sale must have been negotiated and proposed in good faith—in other words, it is an

13   "arms-length" transaction.  *See,* In re Wilde Horse Enterprises. Inc., 136 BR 830 (Bankr. C.D.

14   Cal. 1991) (in determining whether a proposed sale of equipment was proper under Section 363,

15   court considered whether the terms of proposed sale were fair and equitable, whether there was a

16   good business reason for completing the sale and whether the transaction was proposed in good

17   faith).  *See also,* Matter of Phoenix Steel Corp., 82 BR 334, 335-336 (Bankr. D. Del. 1987).

18   Additional factors a court should consider in deciding whether to approve a sale of property

19   under Section 363 include the integrity of the sale process and preservation of the best interests

20   of the estate.  *See,* Inre Alves, 52 BR 353 (Bankr. D. R.I. 1985).  A sale of an estate's interest in

21   real or personal property generally is allowed under Section 363 if the estate has equity in the

22   property and the sale is in the best interest of the estate.  In re Investors Funding Corporation of

23   New York, 592 F.2s 134, 135 (2nd Cir. 1979) *cert. denied,* 444 830 (1979).

24           As noted, a sale outside the ordinary course of business must be based upon a sufficient

25   business reason and be in the best interests of the estate.  The asset must have been adequately

26   marketed, been negotiated and proposed in good faith, and the sale must be the results of an "arms-

27   length" transaction.  Wilde Horse Enterprises, 136 BR at 830.  The Trustee acknowledges his

28   responsibility to maximize any recovery from the assets of the Estate; and believes the Sale is fair and

{00469403}                              5

1    reasonable.  The Broker is familiar with the value of the real property located in the general area of

2    the Property, and the Property has been vigorously marketed.  Finally, a sale of the Property will also

3    allow the Trustee to consummate the settlements with Seneca and the Schou Trust.

4        As such, the Trustee has satisfied each of the applicable elements governing the proposed

5    Sale, and the Trustee has sound business reasons for seeking to consummate the Sale.  First, the

6    Trustee believes, based on the Trustee's experience and that of his broker, comparable sale of

7    property in the area that the proposed sales price of Eighty-five Thousand Dollars ($85,000.00) is a

8    fair offer and in accordance with its appraised value.  See the Simons and Kallen Declarations which

9    are appended.  Second, at all relevant times the Trustee and the Buyer have engaged in an "arms-

10   length" transaction in an effort to maximize the value of the Estate's assets.  Third, the Sale of the

11   Property will benefit the Estate, as equity will be realized upon the eventual close of the Sale.  Fourth,

12   a sale of the Property completes the requirements imposed upon the Estate through the previously

13   Court approved settlement between the Estate, Seneca and the Schou Trust.  Therefore, given the

14   present circumstances, the Trustee believes that the Sale terms are fair and reasonable and the Sale

15   should be approved.

16   IV.    THE SALE SHOULD BE APPROVED FREE AND CLEAR OF LIENS, CLAIMS AND

17          INTERESTS PURSUANT TO 11 U.S.C. §363(f)

18       Subsection 363(f) of the Bankruptcy Code ("Section 363(f)") provides that a trustee may

19   sell assets of the estate free and clear of any interest in such property of an entity other than

20   the estate only if - (1) applicable non-bankruptcy law permits sale of such property free in and

21   clear of such interest; (2) such entity consents; (3) such interest is a lien and the price at which

22   such property is to be sold is greater than the aggregate value of all liens on such property;  (4)

23   such interest is in bona fide dispute; or (5) such entity could be compelled, in legal or equitable

24   proceedings, to accept a money satisfaction of such interest.  Subsection 363(f) has been construed

25   as disjunctive, rather than conjunctive.  Thus, the Trustee need only demonstrate that one of the

26   elements has been satisfied.  In re Elliott, 94 B.R. 343, 345 (Bankr. E.D. Pa. 1988).  Here, the

27   Trustee believes that at least three elements of Section 363(f) are present.

28       The Trustee contends that, at the very least, the two disputed liens have been resolved by

{00469403}                                        6

stipulation,[4] no party with a lien on the Property dissents, the validity of most liens are disputed as expressed in the accompanying declaration, the price at which the Property is to be sold exceeds the aggregate of conceded liens, and each lien holder could be compelled to accept a money satisfaction of its lien claim.  The statute has been satisfied; and the Sale should be approved.

Moreover, all interested parties were provided notice of the Motion; and any party objecting to the Sale may file his/her/its objection with the Court and be heard at the hearing on the Motion. Absent proper objection, the parties will be deemed to have consented to the sale of the Property. Veltman v. Whetzal, 93 F.3d 517 (8th Cir. 1996) (failure to object to proposed sale, coupled with agreement authorizing the sale free of interest, constituted consent); Elliott, supra (implied consent found); In re Tabore, Inc., 175 B.R. 855 (Bankr. D. N.J. 1994) (failure to object to notice of sale or attend hearing deemed consent to sale for purposes of section 363); In re Shary, 152 B.R. 724 (Bankr. N.D. Ohio 1993) (state's failure to object to transfer of liquor license constituted consent to sale). Thus, pursuant to Section 363(f)(2), Trustee may sell the Property free and clear of any interest of entities other than the bankruptcy estate because the noticed parties will be deemed to have consented to the sale of the Property if they make no objections to the Sale.

In addition, pursuant to Section 363(f)(3), Trustee may sell property of an estate free and clear of interests if the interest is a lien and the price at which the property is to be sold is greater than the aggregate value of all liens on that property.  This provision requires the Court to look not merely to the value of the lien, but to whether the estate has any equity in the property.  Early decisions held that Section 363(f)(3) required the sales price to exceed the face amount of all liens.  However, a number of decisions have held that the term "value" should be interpreted as the "secured value of the liens, not the face amount." In re Beker Industries Corp., 63 B.R. 474, 477 (Bankr. S.D. N. Y. 1986) (actual value as distinguished from lien); In re Collins, 180 B.R. 447, 450-01 (Bankr. E.D. Va 1995) (actual value rather than base amount of the lien); In re WPRV-TV, Inc., 143 B.R. 315, 320 (D.P.R. 1991) 983 F.2d 336 (1st Cir. 1993) (actual value as used in §506(a)); In re Milford Group, Inc., 150 B.R. 904, 906 (Bankr. E.D. Pa. 1992) (value of collateral rather than value of all debts against property); In re Oneida Lake Dev., Inc., 114 B.R. 352 (Bankr. N.D.N.Y. 1990) (value of creditor's

---

[4] As of this writing, an order approving a stipulated resolution is pending.

1    interest in property rather than face amount of lien); In re Terrace Gardens Park Partnership, 96 B.R.

2    707 (Bankr. W.D. Tex. 1989) (debtor could sell estate property free and clear of liens, so long as the

3    sale price exceeded the value of the property, even if it did not exceed the aggregate of all the debts

4    asserted to be secured by liens on the property).

5         In this case, Trustee is selling the Property for what he believes to be the highest and best

6    offer he has received or will expect to receive, which exceeds the amount of known, valid, voluntary

7    liens against the Property. Thus, the Section 363(f)(3) requirement at the price at which the Property

8    is sold is greater than the aggregate value of all undisputed liens will be satisfied. *See,* Simons

9    Declaration, ¶ 5.

10         Therefore, Trustee has more than satisfied Section 363(f), having demonstrated that at least

11    three of the conditions exist here. As such, the Trustee believes that the Sale free and clear of the

12    delineated liens, claims or interests is proper pursuant to Section 363(f), and the liens, claims or

13    interests, if any should attach to the Estate's net proceeds of the Sale. Trustee does not object to the

14    payment of the undisputed liens, brokers' commissions and closing costs from the sale proceeds.

15    V.    THE SALE IS PROPOSED IN GOOD FAITH

16         As this Court is aware, subsection 363(m) of the Bankruptcy Code ("Section 363(m)")

17    authorizes the Court to make a finding that a buyer is a "good faith" purchaser. A good faith

18    purchaser of property is protected from the effect of reversal of the order authorizing a sale provided

19    the trial court finds that the purchaser acted in good faith and the aggrieved party fails to obtain a stay

20    of the sale order.

21         Although the Code does not define the term "good faith", courts have provided guidance as to

22    the appropriate factors to consider. In essence, the purpose of Section 363(m) is to disable courts

23    from backtracking on promises with respect to the bankruptcy sales in the absence of bad faith.

24    Kham and Nate's Shoes No. 2 v. First Bank, 908 F.2d 1351, 1355 (7th Cir. 1990). Generally

25    speaking, the requirement that a purchaser act in good faith speaks to the integrity of his conduct in

26    the course of the sale proceeding and focuses primarily on the disclosure of all material sale terms

27    and the absence of fraud or collusion. See, In re Pine Coast Enterprise, Ltd., 147 B.R. 30, 33 (Bankr.

28    N.D. Ill. 1992); In re Abbotts Dairies of Pennsylvania, Inc., 788 F2d 143, 147 (3rd Cir. 1986).

1    Here, the Buyers have prepared and submitted the Written Offer in good faith.  The Buyers

2  have no relation to the Debtor or the Trustee, are not creditors of the Estate.  *See*, Simons Declaration

3  ¶ 3.  The Court should hold that the Buyers are entitled to the protections of Section 363(m).  See, In

4  re M Capital Corp., 290 BR 743 (9th Cir. BAP 2003) (court may not make a finding of good faith in

5  the absence of evidence, but may make such a finding if appropriate evidence is presented).

6  VI.    THE SALE ENABLES THE TRUSTEE TO DISCHARGE HIS FIDUCIARY DUTIES TO

7  UNSECURED CREDITORS

8    Section 704(l) of the Code requires the Trustee to do the following:

9    "Collect and reduce to money the property of the estate for which such

10    trustee serves, and close such estate as expeditiously as is compatible

11    with the best interests of the parties in interest."

12    With this goal in mind, the Trustee determined that the Sale would afford him the opportunity

13  to pay certain secured, administrative and unsecured claims chargeable to the chapter 7 estate

14  ("Estate") from the Sale proceeds.  Since the Trustee received no other acceptable written offers for

15  the Property over the last few months, the Trustee has agreed to seek Court approval for the Sale.

16  Although the Trustee could conceivably further market the Property, the Trustee's duty is to provide

17  a mechanism for the payment of claims as expeditiously as possible.  Since the Sale will facilitate

18  prompt administration of the Estate, and since it is unclear how much, if any, increased benefit would

19  be added to the value of the Estate if the Property continued to be marketed.  Subject to this Court's

20  approval, the Sale should proceed without any delay, and the remaining creditors can be assured of a

21  prompt and expeditious closure of the estate.

22  VII.    THE PROPOSED OVERBID PROCEDURE WILL NOT PREJUDICE ANY INTERESTED

23  PARTY AND MAY SUBSTANTIALLY BENEFIT THE ESTATE

24    While the Trustee is prepared to accept the Written Offer, he is also interested in obtaining the

25  maximum price for the Property.  Accordingly, the Trustee requests that the Court authorize him to

26  implement an overbid procedure regarding the sale of the Property on the following terms:

27    A.    Each party interested in participating as an overbidder must be present physically at

28  the hearing on the Motion or represented by an individual or individuals with the authority to

{00469403}                                9

1    participate in the overbid process on their behalf;

2          B.    Each party participating in the overbid process (except for the Buyer) must have, not

3    less than two business days prior to the hearing on the Motion, placed a deposit in cash or cashier's

4    check made payable to "Larry D. Simons, Chapter 7 Trustee" in the amount of Five Thousand

5    Dollars ($5,000.00) with the Trustee.  The $5,000 deposit shall not be refundable if such party is the

6    successful bidder and is thereafter unable to complete the purchase of the Property for any reason

7    other than a material breach by the Trustee;

8          C.    Subject to Court approval, the Trustee recommends that the initial overbid be in the

9    amount of $90,000.00 and that subsequent overbids be in the incremental amount of $2,000.00, or

10    such other amount as this Court deems appropriate under the circumstances; and

11          D.    The Buyer must pay the full amount of the successful bid to the Trustee within

12    fourteen (14) days after entry of the Order approving the Motion.  Furthermore, if the Buyer does not

13    deliver the balance of the sale price in a timely fashion, the successful bidder's deposit shall become

14    non-refundable.  In the event that the Buyers are not the successful bidder of the Property, the

15    successful bidder shall then become the Buyer under the same terms and conditions as set forth in the

16    Escrow documents and the Trustee shall return the Buyer's initial deposit to Buyer.

17          The Trustee believes the foregoing overbid terms are reasonable under the circumstances of

18    this case and will insure that the price ultimately received for the Property will be the highest and best

19    price.

20    VIII.    <u>CONCLUSION</u>

21          Based upon the foregoing, the Trustee respectfully requests that the Motion be granted in all

22    respects and for such other and further relief as this Court may deem just and proper.

23

24    Dated: August 22, 2017               MIRMAN, BUBMAN & NAHMIAS, LLP

25

26                            By:                                                  
                            ALAN I. NAHMIAS

27                                SCOTT H. NOSKIN
                            Attorneys for Chapter 7 Trustee, Larry D. Simons

28

## DECLARATION OF LARRY D. SIMONS

I, LARRY D. SIMONS, declare as follows:

1.      I am the duly appointed, qualified and acting chapter 7 trustee of the bankruptcy estate of the Halo Sports Bar & Grill, Inc.  I make this Declaration in support of the preceding Motion For Order:  (1) Authorizing Sale [etc.] ("Motion").  For the sake of brevity and clarity, I adopt the definitions contained in the Motion.

2.      I have personal knowledge, information and/or belief of the facts set forth below, and if called as a witness, could and would competently testify thereto under oath.

3.      The Motion seeks an order approving the Sale of the Estate's interest in the Property to the Buyers on the terms and conditions stated in the written offer (the "Offer"), which is attached to the Declaration of Bruce Kallen as Exhibit "A" and incorporated herein by this reference for $85,000.00 subject to qualified overbids.  I have no prior relationship with the Buyers or either of them.  My negotiations with the Buyers were at arms length; no special concessions were made by either side to the other.

4.      In the Motion, I also seek an order approving the Sale free and clear of certain liens, claims and interests, with said liens, claims and interests to attach to the sale proceeds in the same manner and priority as under applicable law.

5.      The Property is being sold on an "as is" "where is" basis, with no warranties, recourse, contingencies or representations of any kind.  I also am seeking an order (i) confirming the Sale to Buyer or to the highest bidder appearing at the hearing, (ii) authorizing me, as Trustee, to execute any and all documents that may be necessary to consummate the sale, (iii) determining that Buyer or the successful bidder is entitled to 11 U.S.C. §363(m) protection, (iv) waiving the fourteen (14) day stay prescribed by Rule 6004(h) of the Federal Rules of Bankruptcy Procedure; and (v) permitting me, as Trustee, to otherwise perform in accordance with the terms and provisions of the Written Offer.  I believe all prerequisites for approval of the Sale under applicable provisions of the Bankruptcy Code have been satisfied and I therefore urge the Court to grant the Motion.

6.      After my appointment as Trustee, I conducted an investigation into the Debtor's assets and liabilities.  I became aware of the Debtor's ownership of the Property and sports bar known as

{00469403}                                                11

1    Halo Sports Bar & Grill, which was located at 17122 Main Street, Hesperia, California and

2    experienced a severe fire on the night of August 4, 2015 just hours before a tax sale by the County

3    was to be held.  After learning of disputed insurance coverage issues through Seneca Insurance and

4    claims of liens on the Property by its former owner, the Schou Trust, my counsel and I conducted

5    extensive negotiations with Seneca and counsel to the Schou Trust.  While negotiating concurrent

6    settlements with Seneca Insurance and the Schou Trust, I obtained a market evaluation of the

7    Property and determined that if the Property was sold, I ought to be able to provide a dividend to the

8    Estate's creditors from the net proceeds.

9        7.    I then caused to be filed an application to employ RE/MAX Full Spectrum and Shear

10    Realty – Commercial Division as brokers, with Nathan Genovese and Bruce Kallen as agents, as my

11    to list and market the Property ("Broker[s]").  The Court entered an order approving Brokers'

12    employment on October 19, 2016.  *See,* Case Doc. # 109. Since that time, the Property has been

13    marketed vigorously and extensively by the Broker.  On or about November 7, 2016, I received a

14    written offer to purchase the Property for $80,000.  I thought, based on my discussion with the

15    Brokers that I could do better.  On February 27, 2017, I received an offer from the Buyers to purchase

16    the Property for the price of eighty-five thousand dollars ($85,000.00), subject to approval of this

17    Court.  A true and correct copy of the Offer is attached to the Declaration of Bruce Kallen as Exhibit

18    "A" and incorporated herein by this reference.  I believe the Offer is at a price equal to or in excess of

19    the fair market value of the Property.

20        8.    A Preliminary Title Report regarding the Property (the "PTR") was prepared by

21    Chicago Title  at my request.  A true and correct copy of the PTR is attached hereto as Exhibit "B"

22    and incorporated herein by this reference.  A review of the PTR reflects that the following liens have

23    been recorded against the Property.

24        a.  Beneficiary:        [Unidentified in the PTR]
            Type of Lien  Property Taxes
25          Date:          Current year
            Amount:        $2,528.02
26                         $252.81 (due after December 10),
                           $2,527.99
27                         $262.81 (due after April 10)
            Recording No. [None listed]
28

{00469403}                                12

b. Beneficiary:        Carl C. Schou and Nellie M. Schou, Trustees, or their
   successors in trust, under The Schou Family living Trust, dated June 6, 2002, and
   any amendments thereto
   Type of Lien   Deed of Trust
   Date:          December 17, 2004
   Amount:        $370,000.00
   Recording No. 2005-0186457

c. Beneficiary:        Carl C. Schou and Nellie M. Schou, Trustees, or their
   successors in trust, under The Schou Family living Trust, dated June 6, 2002, and
   any amendments thereto
   Type of Lien   Deed of Trust
   Date:          December 17, 2004
   Amount:        $370,000.00
   Recording No. 2005-0186458

d. Beneficiary:        San Bernardino County
   Type of Lien   2006 Unsecured Property Taxes
   Date:          November 19, 2007
   Amount:        $427.11
   Recording No. 2007-0639578

e. Beneficiary:        San Bernardino County
   Type of Lien   2006 Unsecured Property Taxes
   Date:          November 19, 2007
   Amount:        $506.32
   Recording No. 2007-0639869

f. Beneficiary:        San Bernardino County
   Type of Lien   2007 Unsecured Property Taxes
   Date:          November 19, 2008
   Amount:        $472.66
   Recording No. 2008-0505185

g. Beneficiary:        San Bernardino County
   Type of Lien   2007 Unsecured Property Taxes
   Date:          November 19, 2008
   Amount:        $562.16
   Recording No. 2008-0505433

h. Beneficiary:        San Bernardino County
   Type of Lien   2007 Unsecured Property Taxes
   Date:          November 19, 2008
   Amount:        $544.69
   Recording No. 2008-0513570

i. Beneficiary:        San Bernardino County
   Type of Lien   2008 Unsecured Property Taxes
   Date:          November 19, 2009
   Amount:        $528.00
   Recording No. 2009-0510908

{00469403}                          13

j.  Beneficiary:      San Bernardino County
    Type of Lien  2009 Unsecured Property Taxes
    Date:         November 19, 2009
    Amount:       $445.91
    Recording No. 2009-0510909

k.  Beneficiary:      San Bernardino County
    Type of Lien  2010 Unsecured Property Taxes
    Date:         November 18, 2010
    Amount:       $491.37
    Recording No. 2010-487007

l.  Beneficiary:      San Bernardino County
    Type of Lien  2011 Unsecured Property Taxes
    Date:         November 15, 2011
    Amount:       $495.61
    Recording No. 2011-0479639

m.  Beneficiary:      State Board of Equalization
    Type of Lien  State Tax Lien
    Date:         August 30, 2012
    Amount:       $3,068.25
    Recording No. 2012-0352289

n.  Beneficiary:      State Board of Equalization
    Type of Lien  State Tax Lien
    Date:         September 14, 2014
    Amount:       $3,446.94
    Recording No. 2012-0378366

o.  Beneficiary:      San Bernardino County
    Type of Lien  2012 Unsecured Property Taxes
    Date:         November 9, 2012
    Amount:       $493.51
    Recording No. 2012-00473494

p.  Beneficiary:      State Board of Equalization
    Type of Lien  State Tax Lien
    Date:         February 8, 2013
    Amount:       $2,618.47
    Recording No. 2013-0057898

q.  Beneficiary:      San Bernardino County
    Type of Lien  2013 Unsecured Property Taxes
    Date:         November 14, 2013
    Amount:       $261.99
    Recording No. 2013-0493429

r.  Beneficiary:      San Bernardino County
    Type of Lien  2013 Unsecured Property Taxes
    Date:         November 14, 2013
    Amount:       $500.33
    Recording No. 2013-0493702

s.  Beneficiary:    Collectronics, Inc.
    Type of Lien  Abstract of Judgment – Case No. CIVRS 1306962
    Date:    May 14, 2014
    Amount:    $4,752.02
    Recording No. 2014-0175198

t.  Beneficiary:    Franchise Tax Board
    Type of Lien  State Tax Lien
    Date:    July 1, 2014
    Amount:    $72,956.73
    Recording No. 2014-0236325

u.  Beneficiary:    San Bernardino County
    Type of Lien  2014 Unsecured Property Taxes
    Date:    November 13, 2014
    Amount:    $499.95
    Recording No. 2014-0428011

v.  Beneficiary:    San Bernardino County
    Type of Lien  2014 Unsecured Property Taxes
    Date:    November 13, 2014
    Amount:    $263.13
    Recording No. 2014-0428590

w.  Beneficiary:    Collectronics, Inc.
    Type of Lien  Abstract of Judgment – Case No. CIVRS 1402556
    Date:    April 23, 2015
    Amount:    $1,811.46
    Recording No. 2015-0161436

x.  Beneficiary:    State Board of Equalization
    Type of Lien  State Tax Lien
    Date:    May 1, 2015
    Amount:    $2,228.23
    Recording No. 2015-0178119

y.  Beneficiary:    San Bernardino County
    Type of Lien  2015 Unsecured Property Taxes
    Date:    November 18, 2015
    Amount:    $261.80
    Recording No. 2015-0505989

z.  Beneficiary:    State Board of Equalization
    Type of Lien  State Tax Lien
    Date:    February 10, 2016
    Amount:    $4,589.68
    Recording No. 2016-0052406

aa.  Beneficiary:    Employment Development Department
    Type of Lien  State Tax Lien
    Date:    August 30, 2016
    Amount:    $1,236.90
    Recording No. 2016-0349664

9.    The Title Report contains fifteen (15) liens in favor of The County of San Bernardino

{00469403}

(Items 10-18; 21; 23-24; 27-28; and 35 on the PTR). The County concedes that twelve (12) of those fifteen (15) liens have been paid, or alternatively should be released (Items 10-18; 21; 24; and 27), and asserts that three (3) of the liens remain unpaid (Items 23, 28 and 35). A true and correct copy of correspondence from my counsel and the County's counsel related to this assertion is attached hereto as Exhibit "C" and incorporated here by this reference. I dispute these claims and assert that all fifteen liens have been paid off pursuant to the compromise reached with Seneca Insurance Company and the Schou Family Living Trust, or alternatively, were not valid liens in the first place.

10.    Based thereon, with respect to the liens against the Property in favor of the County, the County has consented to the sale free and clear of the aforementioned twelve (12) liens, and with respect to the remaining three (3) liens, they are subject to a bona fide dispute. Specifically, I assert the three liens have been paid off. The aggregate of the three (3) liens is $786.92. I further assert that with respect to Items 23 and 28 on the Title Report, the alleged taxpayer, Shadowview Corp., was not on title to the Property at the time the lien was recorded. With respect to Item 35, this lien was recorded post-petition and the alleged taxpayer, Shadowview Corp; Teasers Sports Bar & Grill was not on title to the Property when the lien was recorded. Therefore, the sale free and clear of the County's liens is appropriate under section 363(f)(2) and (4).

11.    With respect to the twelve (12) liens that have been released, I need to pay a duplication release fee of $9.00 per release per counsel for the County. As such, I will need to pay through escrow the sum of $108 from the sale proceeds in order for the County to reissue the releases.

12.    The PTR contains six (6) liens in favor of the State Board of Equalization (Items 19-20; 22; 29; 31 and 36 on Title Report). I dispute any of these liens are valid. The aggregate amount of these liens is $125,751.34. Specifically, with respect to Items 19, 22, 29 and 36, the alleged taxpayer, Santa Cruz Tides dba Rocksclub was not on title to the Property at the time the lien was recorded. With respect to Items 20 and 31, the alleged taxpayer, Shadowview Corporation doing business as T-Zers Sports Bar & Grill was not on title to the Property at the time the lien was recorded. Consequently, the sale free and clear of the County's liens is appropriate under section 363(f)(4).

{00469403}                          16

13.     As indicated in the Motion, the claims asserted by Collectronics have been compromised. The Court's order fixing the two claims at $4,752.02 and $1,811.46 was entered August 4, 2017; and is now final.

14.     The PTR contains one lien in favor of the Franchise Tax Board (item 26) in the amount of $72,956.73. I dispute the validity of this lien. Specifically, the taxpayer, Halo Sports Bar & Grill, Inc. was not on title on the day the lien was recorded, July 1, 2014. Halo Sports Bar did not hold title to the Property until May 4, 2015, via Grant Deed (See Item 32 on Title Report).

15.     The PTR contains one lien in favor of the Employment Development Department (Item 39) in the amount of $1,236.90 recorded post-petition. I dispute the validity of this lien. Specifically, the taxpayer, Shadowview Corporation was not on title on the day the lien was recorded.

16.     Based upon the proposed purchase price of $85,000.000 for the Property (which I believe is fair and reasonable and represents the highest and best offer the Estate has received to date for the Property), I anticipate the Estate will net approximately $66,436 (the "Net Proceeds") after payment of the brokers' commissions for the Property (a combined 6% of the Sale price, or $5,100 with 3% to the estate's broker and 3% to Buyer's broker) and other normal closing costs, as well as the Collectronics stipulated amounts.

17.     The Sale will be free and clear of recorded liens, with enforceable liens attaching to the proceeds of the Sale.

18.     As Trustee, in the event that no overbids are received, and in accordance with the terms of the settlement with the Schou Trust, I shall receive 100% of the Net Proceeds up to the first seventy three thousand ($73,000). If the net proceeds are greater than $73,000, they will be distributed between the Estate and the Schou Trust in accordance with the previously approved stipulation between the parties (See, docket numbers 82 and 93). I will use the Net Proceeds to pay remaining administrative, and other allowed claims against the Estate.

19.     I have instructed my counsel to notify all interested parties of the Sale. Any party objecting to the Sale may file an objection with the Court and be heard at the hearing on the Motion. Thus, pursuant to Section 363(f), in my opinion, I may sell the Property, free and clear of any interest of entities other than the Bankruptcy Estate, because they will be deemed to have consented to the

{00469403}                                17

1    Sale of the Property, if they make no objections to the Sale.

2        20.    The Buyer will purchase the Property "as is" "where is." I have never viewed nor

3    visited the Property personally and I am unaware of its condition and am making no representations

4    or warranties as to the condition, fitness or zoning of the Property.

5        21.    I am selling the Property for what I believe to be the highest and best offer I have

6    received or will expect to receive, which is an amount in excess of the known, undisputed and

7    voluntary liens against the Property, and in accordance with the appraised value I have been provided

8    for the Property. Based on the foregoing, I believe that the sale of the Property free and clear of liens,

9    claims or interests is proper pursuant to Section 363(f), and the delineated liens, claims or interests, if

10    any, should attach to the proceeds of the Sale. As noted, I do not object to the payment of the

11    undisputed liens, brokers' commissions and closing costs from the sales proceeds held in escrow.

12        22.    I am also requesting that the Court extend good faith purchaser status to the Buyer. In

13    this regard, it should be noted that the Sale to Buyer was the result of an arm's length transaction.

14    There are no facts raising the specter of bad faith or calling into question the propriety of the Sale to

15    Buyer or any successful purchaser. Therefore, pursuant to Section 363(m), the Court should find that

16    the Sale has been entered into in good faith.

17        23.    The Motion also asks that the Court waive the fourteen (14) day stay period prescribed

18    by Rule 6004(h) of the Federal Rules of Bankruptcy Procedure. I believe there is cause to waive the

19    14 day stay period since this will expedite the consummation of the Sale and allow me to close the

20    Estate expeditiously since there are no material assets left to administer once the Property has been

21    sold.

22        24.    As Trustee, my goal is to reduce to money the property of the Estate and to close the

23    Estate as expeditiously as possible. With this goal in mind, I determined that the proposed Sale

24    would afford me the opportunity to pay certain creditors of the Estate from the sale proceeds.

25    Buyer's Offer is the highest and best written offer I received for the Property, and as I have not

26    received any higher or better offers over the past few months, despite its continued marketing, I have

27    agreed to seek Court approval for the Sale. Although I conceivably could further market the

28    Property, my duty is to provide a mechanism for the payment of claims as expeditiously as possible.

Since the Sale will insure that any allowed and remaining secured claims will be paid, and there will be a net to the Estate, I believe I have discharged my fiduciary duties, as it is unclear how much increased benefit would be added to the overall value of the Estate if the Property continued to be marketed.  In any event, during the pendency of this Motion, I intend to cause to be filed the appropriate Rule 6004 Notice of Sale with the Court and to continue to market the Property through my Broker and the MLS.  Thus, subject to this Court's approval, the Sale can proceed without any delay, and the remaining creditors can be assured of a prompt and expeditious closure of the Estate.

I declare under penalty of perjury under the laws of the United States of America, that the foregoing is true and correct.  Executed this 21st day of August, 2017, at __Riverside__, California.

L.

## DECLARATION OF BRUCE KALLEN

I, BRUCE KALLEN, declare as follows:

1.      I am over the age of eighteen and am employed as an agent for Shear Realty-Commercial Division, located at 12640 Hesperia Boulevard, Ste G, Victorville, CA, telephone number 760-403-3000. I am the agent assigned to the sale of the parcel of property located at 17122 Main Street, Hesperia, California 92345 (the "Property"). I have personal knowledge of the matters discussed below, and if called as a witness, I could and would competently testify thereto under oath.

2.      The Property is also commonly known as 17122 Main Street, Hesperia, California 92345. It had been, mistakenly designated "0 Main Street" the Purchase Agreement. That oversight was corrected in the Counteroffer which forms the basis for the Motion. I have also determined that the Purchase Agreement misstated the APN. That too has been corrected.

3.      After my employment as broker, I advertised the Property in the Multiple Listing Service, and as soon as I have been provided with the Court date, time of the hearing on the Trustee's Motion, along with all overbidding procedures, I intend to publish this information in the Multiple Listing Service.

4.      As a result of my marketing efforts, I received two written offers, with the highest and best offer from Mark Maida and Munem Maida (the "Buyer"), a true and correct copy of which is attached hereto as Exhibit "A" and incorporated herein by this reference, to purchase the Property of the total price of Eighty-five Thousand Dollars ($85,000.00) cash (the "Sale Price"), subject to approval of this Court. After discussing the Offer with the Trustee, it was determined that this was the highest and best price offered, with the greatest likelihood of closing, and the Trustee agreed to accept it.

5.      Notwithstanding the foregoing, I am continuing my efforts to market and sell the Property for the benefit of the Estate, as to my understanding, the sale is subject to overbid.

6.      In my professional opinion, based on my experience in marketing and selling property in the Inland Empire—twelve years as a licensed broker, and an additional three years as an associate--I believe that the proposed Sale Price is fair and

{00469403}                                    20

1

2    reasonable and the Motion should be approved by the Court.

3        I declare under penalty of perjury under the laws of the United States of America, that the

4    foregoing is true and correct.  Executed this 22d day of August, 2017, at ___Victorville___, California.

5

6

7                                    *Bruce Kallen*
                                     BRUCE KALLEN

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28



**CALIFORNIA**
**ASSOCIATION**
**OF REALTORS®**

## VACANT LAND PURCHASE AGREEMENT
## AND JOINT ESCROW INSTRUCTIONS
### (C.A.R. Form VLPA, Revised 12/15)

Date Prepared: _February 27, 2017_

**1. OFFER:**
  **A. THIS IS AN OFFER FROM** _Mark Maida, and/or assignee, Minem Maida, and/or assignee_ ("Buyer"),
  **B. THE REAL PROPERTY** to be acquired is _0 Main Street_ , situated in
     _Hesperia_ (City), _San Bernardino_ (County), California, _92345_ (Zip Code), Assessor's Parcel No._0413063080000_ ("Property").
    Further Described As _Vacant land_ .
  **C. THE PURCHASE PRICE** offered is _Eighty-Five Thousand_
    Dollars $ _85,000.00_
  **D. CLOSE OF ESCROW** shall occur on |_____| (date) (or [X] _15_ Days After Acceptance).
  **E.** Buyer and Seller are referred to herein as the "Parties." Brokers are not Parties to this Agreement.

**2. AGENCY:**
  **A. DISCLOSURE: The Parties** each acknowledge receipt of a [X] **"Disclosure Regarding Real Estate Agency Relationships"**
    **(C.A.R. Form AD).**
  **B. CONFIRMATION:** The following agency relationships are hereby confirmed for this transaction:
    Listing Agent _Shear Realty- Victorville_ (Print Firm Name) is the agent of (check one):
    [ ] the Seller exclusively; or [X] both the Buyer and Seller.
    Selling Agent _Shear Realty_ (Print Firm Name) (if not the same as the
    Listing Agent) is the agent of (check one): [ ] the Buyer exclusively; or [ ] the Seller exclusively; or [ ] both the Buyer and Seller.
  **C. POTENTIALLY COMPETING BUYERS AND SELLERS:** The Parties each acknowledge receipt of a [X] **"Possible Representation**
    of More than One Buyer or Seller - Disclosure and Consent" (C.A.R. Form PRBS).

**3. FINANCE TERMS:** Buyer represents that funds will be good when deposited with Escrow Holder.
  **A. INITIAL DEPOSIT:** Deposit shall be in the amount of . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $ _5,000.00_
    (1) Buyer Direct Deposit: Buyer shall deliver deposit directly to Escrow Holder by electronic funds
    transfer, [ ] cashier's check, [ ] personal check, [ ] other _____ within 3 business days
    after Acceptance (or _____ );
    OR (2) [ ] Buyer Deposit with Agent: Buyer has given the deposit by personal check (or _____ )
    to the agent submitting the offer (or to _____ ), made payable to
    _____ . The deposit shall be held uncashed until Acceptance and then deposited
    with Escrow Holder within 3 business days after Acceptance (or _____ ).
    Deposit checks given to agent shall be an original signed check and not a copy.
    (Note: Initial and increased deposits checks received by agent shall be recorded in Broker's trust fund log.)
  **B. INCREASED DEPOSIT:** Buyer shall deposit with Escrow Holder an increased deposit in the amount of . . . $ _____
    within _____ Days After Acceptance (or _____ ).
    If the Parties agree to liquidated damages in this Agreement, they also agree to incorporate the increased
    deposit into the liquidated damages amount in a separate liquidated damages clause (C.A.R. Form RID)
    at the time the increased deposit is delivered to Escrow Holder.
  **C.** [X] **ALL CASH OFFER:** No loan is needed to purchase the Property. This offer is NOT contingent on
    Buyer obtaining a loan. Written verification of sufficient funds to close this transaction IS ATTACHED to
    this offer or [ ] Buyer shall, within 3 (or _____ ) Days After Acceptance, Deliver to Seller such verification.
  **D. LOAN(S):**
    (1) **FIRST LOAN:** in the amount of . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $ _____
    This loan will be conventional financing or [ ] FHA, [ ] VA, [ ] Seller financing (C.A.R. Form SFA),
    [ ] assumed financing (C.A.R. Form AFA), [ ] subject to financing, [ ] Other _____ . This
    loan shall be at a fixed rate not to exceed _____ % or, [ ] an adjustable rate loan with initial rate not
    to exceed _____ %. Regardless of the type of loan, Buyer shall pay points not to exceed _____ %
    of the loan amount.
    (2) [ ] **SECOND LOAN** in the amount of . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $ _____
    This loan will be conventional financing or [ ] Seller financing (C.A.R. Form SFA), [ ] assumed financing
    (C.A.R. Form AFA), [ ] subject to financing [ ] Other _____ . This loan shall be at a fixed
    rate not to exceed _____ % or, [ ] an adjustable rate loan with initial rate not to exceed _____ %.
    Regardless of the type of loan, Buyer shall pay points not to exceed _____ % of the loan amount.
    (3) **FHA/VA:** For any FHA or VA loan specified in 3D(1), Buyer has 17 (or _____ ) Days After Acceptance to
    Deliver to Seller written notice (C.A.R. Form FVA) of any lender-required repairs or costs that Buyer requests
    Seller to pay for or otherwise correct. Seller has no obligation to pay or satisfy lender requirements unless
    agreed in writing. A FHA/VA amendatory clause (C.A.R. Form FVAC) shall be a part of this transaction.
  **E. ADDITIONAL FINANCING TERMS:** _____

Buyer's Initials (x _MM_ ) (x _MM_ )        Seller's Initials ( _M_ ) ( )

© 1996-2015, California Association of REALTORS®, Inc.
**VLPA REVISED 12/15 (PAGE 1 OF 11)**
### VACANT LAND PURCHASE AGREEMENT (VLPA PAGE 1 OF 11)

Shear Realty- AV, 18564 US Highway 18 Ste 205 Apple Valley, CA 92307    Phone: 760.242.7221    Fax: 760.242.7226    Vacant Land
John Snyder      Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026   www.zipLogix.com

Property Address: **0 Main Street , Hesperia, CA  92345**      Date: **February 27, 2017**

  F. **BALANCE OF DOWN PAYMENT OR PURCHASE PRICE** in the amount of . . . . . . . . . . . . . . . . . . . . . $ _____**80,000.00**
to be deposited with Escrow Holder pursuant to Escrow Holder Instructions.

  G. **PURCHASE PRICE (TOTAL):** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $ _____**85,000.00**

  H. **VERIFICATION OF DOWN PAYMENT AND CLOSING COSTS:** Buyer (or Buyer's lender or loan broker pursuant to paragraph 3J(1)) shall, within 3 (or ___) **Days** After Acceptance, Deliver to Seller written verification of Buyer's down payment and closing costs. ( ☐ Verification attached.)

  I. **APPRAISAL CONTINGENCY AND REMOVAL:** This Agreement is (or ☐ is NOT) contingent upon a written appraisal of the Property by a licensed or certified appraiser at no less than the purchase price. Buyer shall, as specified in paragraph 19B(3), in writing, remove the appraisal contingency or cancel this Agreement within 17 (or ___) **Days** After Acceptance.

  J. **LOAN TERMS:**

    (1) **LOAN APPLICATIONS:** Within 3 (or ___) **Days** After Acceptance, Buyer shall Deliver to Seller a letter from Buyer's lender or loan broker stating that, based on a review of Buyer's written application and credit report, Buyer is prequalified or preapproved for any NEW loan specified in paragraph 3D. If any loan specified in paragraph 3D is an adjustable rate loan, the prequalification or preapproval letter shall be based on the qualifying rate, not the initial loan rate. ( ☐ ☐ Letter attached.)

    (2) **LOAN CONTINGENCY:** Buyer shall act diligently and in good faith to obtain the designated loan(s). Buyer's qualification for the loan(s) specified above is a contingency of this Agreement unless otherwise agreed in writing. If there is no appraisal contingency or the appraisal contingency has been waived or removed, then failure of the Property to appraise at the purchase price does not entitle Buyer to exercise the cancellation right pursuant to the loan contingency if Buyer is otherwise qualified for the specified loan. Buyer's contractual obligations regarding deposit, balance of down payment and closing costs are **not contingencies** of this Agreement.

    (3) **LOAN CONTINGENCY REMOVAL:**
Within 21 (or ___) **Days** After Acceptance, Buyer shall, as specified in paragraph 19, in writing, remove the loan contingency or cancel this Agreement. If there is an appraisal contingency, removal of the loan contingency shall not be deemed removal of the appraisal contingency.

    (4) ☐ **NO LOAN CONTINGENCY:** Obtaining any loan specified above is NOT a contingency of this Agreement. If Buyer does not obtain the loan and as a result Buyer does not purchase the Property, Seller may be entitled to Buyer's deposit or other legal remedies.

    (5) **LENDER LIMITS ON BUYER CREDITS:** Any credit to Buyer, from any source, for closing or other costs that is agreed to by the Parties ("Contractual Credit") shall be disclosed to Buyer's lender. If the total credit allowed by Buyer's lender ("Lender Allowable Credit") is less than the Contractual Credit, then (i) the Contractual Credit shall be reduced to the Lender Allowable Credit, and (ii) in the absence of a separate written agreement between the Parties, there shall be no automatic adjustment to the purchase price to make up for the difference between the Contractual Credit and the Lender Allowable Credit.

  K. **BUYER STATED FINANCING:** Seller is relying on Buyer's representation of the type of financing specified (including but not limited to, as applicable, all cash, amount of down payment, or contingent or non-contingent loan). Seller has agreed to a specific closing date, purchase price and to sell to Buyer in reliance on Buyer's covenant concerning financing. Buyer shall pursue the financing specified in this Agreement. Seller has no obligation to cooperate with Buyer's efforts to obtain any financing other than that specified in the Agreement and the availability of any such alternate financing does not excuse Buyer from the obligation to purchase the Property and close escrow as specified in this Agreement.

  L. **SELLER FINANCING:** The following terms (or ☐ the terms specified in the attached Seller Financing Addendum) (C.A.R. Form SFA) apply ONLY to financing extended by Seller under this Agreement.

    (1) **BUYER'S CREDIT-WORTHINESS:** Buyer authorizes Seller and/or Brokers to obtain, at Buyer's expense, a copy of Buyer's credit report. Within 7 (or _____) **Days** After Acceptance, Buyer shall provide any supporting documentation reasonably requested by Seller.

    (2) **TERMS:** Buyer's promissory note, deed of trust and other documents as appropriate shall incorporate and implement the following additional terms: (i) the maximum interest rate specified in paragraph 3D shall be the actual fixed interest rate for Seller financing; (ii) deed of trust shall contain a REQUEST FOR NOTICE OF DEFAULT on senior loans; (iii) Buyer shall sign and pay for a REQUEST FOR NOTICE OF DELINQUENCY prior to Close Of Escrow and at any future time if requested by Seller; (iv) note and deed of trust shall contain an acceleration clause making the loan due, when permitted by law and at Seller's option, upon the sale or transfer of the Property or any interest in it; (v) note shall contain a late charge of 6% of the installment due (or _____) if the installment is not received within 10 days of the date due; (vi) title insurance coverage in the form of a joint protection policy shall be provided insuring Seller's deed of trust interest in the Property (any increased cost over owner's policy shall be paid by Buyer); and (vii) tax service shall be obtained and paid for by Buyer to notify Seller if property taxes have not been paid.

    (3) **ADDED, DELETED OR SUBSTITUTED BUYERS:** The addition, deletion or substitution of any person or entity under this Agreement or to title prior to Close Of Escrow shall require Seller's written consent. Seller may grant or withhold consent in Seller's sole discretion. Any additional or substituted person or entity shall, if requested by Seller, submit to Seller the same documentation as required for the original named Buyer. Seller and/or Brokers may obtain a credit report, at Buyer's expense, on any such person or entity.

  M. **ASSUMED OR "SUBJECT TO" FINANCING:** Seller represents that Seller is not delinquent on any payments due on any loans. Seller shall, within the time specified in paragraph 19, provide Copies of all applicable notes and deeds of trust, loan balances and current interest rates to Buyer. Buyer shall then, as specified in paragraph 19B(3), remove this contingency or cancel this Agreement. Differences between estimated and actual loan balances shall be adjusted at Close Of Escrow by cash down payment. Impound accounts, if any, shall be assigned and charged to Buyer and credited to Seller. Buyer is advised that Buyer's assumption of an existing loan may not release Seller from liability on that loan. If this is an assumption of a VA Loan, the sale is contingent upon Seller being provided a release of liability and substitution of eligibility, unless otherwise agreed in writing. If the Property is acquired subject to an existing loan, Buyer and Seller are advised to consult with legal counsel regarding the ability of an existing lender to call the loan due, and the consequences thereof.

Buyer's Initials (x __MM__ )(x __MM__ )         Seller's Initials ( ___M___ )( _____ )

**VLPA REVISED 12/15 (PAGE 2 OF 11)**
**VACANT LAND PURCHASE AGREEMENT (VLPA PAGE 2 OF 11)**
Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026  www.zipLogix.com     *Vacant Land*

Exhibit A - Page 23

Property Address: *0 Main Street, Hesperia, CA 92345* _____ Date: *February 27, 2017*

**4. SALE OF BUYER'S PROPERTY:**
  **A.** This Agreement and Buyer's ability to obtain financing are NOT contingent upon the sale of any property owned by Buyer.
  **OR B.** ☐ This Agreement and Buyer's ability to obtain financing are contingent upon the sale of property owned by Buyer as specified in the attached addendum (C.A.R. Form COP).

**5.** ☐ **MANUFACTURED HOME PURCHASE:** The purchase of the Property is contingent upon Buyer acquiring a personal property manufactured home to be placed on the Property after Close Of Escrow. Buyer ☐ has ☐ has not entered into a contract for the purchase of a personal property manufactured home. Within the time specified in paragraph 19, Buyer shall remove this contingency or cancel this Agreement, (or ☐ this contingency shall remain in effect until the Close Of Escrow of the Property).

**6.** ☐ **CONSTRUCTION LOAN FINANCING:** The purchase of the Property is contingent upon Buyer obtaining a construction loan. A draw from the construction loan ☐ will ☐ will not be used to finance the Property. Within the time specified in paragraph 19, Buyer shall remove this contingency or cancel this Agreement (or ☐ this contingency shall remain in effect until Close Of Escrow of the Property).

**7. ADDENDA AND ADVISORIES:**
  **A. ADDENDA:**

| | |
|---|---|
| | ☐ Addendum # _____ (C.A.R. Form ADM) |
| ☐ Back Up Offer Addendum (C.A.R. Form BUO) | ☐ Court Confirmation Addendum (C.A.R. Form CCA) |
| ☐ Septic, Well and Property Monument Addendum (C.A.R. Form SWPI) | |
| ☐ Short Sale Addendum (C.A.R. Form SSA) | ☐ Other _____ |

  **B. BUYER AND SELLER ADVISORIES:**

| | |
|---|---|
| | ☒ Buyer's Inspection Advisory (C.A.R. Form BIA) |
| ☐ Probate Advisory (C.A.R. Form PA) | ☐ Statewide Buyer and Seller Advisory (C.A.R. Form SBSA) |
| ☐ Trust Advisory (C.A.R. Form TA) | ☐ REO Advisory (C.A.R. Form REO) |
| ☐ Short Sale Information and Advisory (C.A.R. Form SSIA) | ☐ Other _____ |

**8. OTHER TERMS:** _____
_____
_____
_____

**9. ALLOCATION OF COSTS**
  **A. INSPECTIONS, REPORTS AND CERTIFICATES:** Unless otherwise agreed, in writing, this paragraph only determines who is to pay for the inspection, test, certificate or service ("Report") mentioned; it **does not determine who is to pay for any work recommended or identified in the Report.**
  (1) ☐ Buyer ☒ Seller shall pay for a natural hazard zone disclosure report, including tax ☐ environmental ☐ Other: _____
    prepared by _____.
  (2) ☐ Buyer ☐ Seller shall pay for the following Report _____
    prepared by _____.
  (3) ☐ Buyer ☐ Seller shall pay for the following Report _____
    prepared by _____.
  **B. ESCROW AND TITLE:**
  (1) (a) ☒ Buyer ☒ Seller shall pay escrow fee *50/50* _____
    (b) Escrow Holder shall be *Sellers choice.*
    (c) The Parties shall, within 5 (or ___ ) Days After receipt, sign and return Escrow Holder's general provisions.
  (2) (a) ☐ Buyer ☒ Seller shall pay for owner's title insurance policy specified in paragraph 18E _____
    (b) Owner's title policy to be issued by *Sellers choice*
    (Buyer shall pay for any title insurance policy insuring Buyer's lender, unless otherwise agreed in writing.)
  **C. OTHER COSTS:**
  (1) ☐ Buyer ☒ Seller shall pay County transfer tax or fee _____
  (2) ☐ Buyer ☐ Seller shall pay City transfer tax or fee _____
  (3) ☐ Buyer ☐ Seller shall pay Homeowners' Association ("HOA") transfer fee _____
  (4) ☐ Seller shall pay HOA fees for preparing all documents required to be delivered by Civil Code §4525.
  (5) Buyer to pay for any HOA certification fee.
  (6) ☐ Buyer ☐ Seller shall pay HOA fees for preparing all documents other than those required by Civil Code §4525.
  (7) ☐ Buyer ☐ Seller shall pay for any private transfer fee _____
  (8) ☐ Buyer ☐ Seller shall pay for _____
  (9) ☐ Buyer ☐ Seller shall pay for _____

**10. CLOSING AND POSSESSION:** Possession shall be delivered to Buyer: (i) ☐ at 6 PM or (_____ ☐ AM/☐ PM) on the date of Close Of Escrow; (ii) ☐ no later than ___ calendar days after Close Of Escrow; or (iii) ☐ at _____ ☐ AM/☐ PM on _____. The Property shall be unoccupied, unless otherwise agreed in writing. Seller shall provide keys and/or means to operate all Property locks. If Property is located in a common interest subdivision, Buyer may be required to pay a deposit to the Homeowners' Association ("HOA") to obtain keys to accessible HOA facilities.

**11. ITEMS INCLUDED IN AND EXCLUDED FROM SALE:**
  **A. NOTE TO BUYER AND SELLER:** Items listed as included or excluded in the MLS, flyers or marketing materials are **not** included in the purchase price or excluded from the sale unless specified in 11B or C.

Buyer's Initials (x _MM_ )(x _MM_ )          Seller's Initials ( _M_ )( _____ )

**VLPA REVISED 12/15 (PAGE 3 OF 11)**

**VACANT LAND PURCHASE AGREEMENT (VLPA PAGE 3 OF 11)**

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026  www.zipLogix.com          *Vacant Land*

DigiSign: FOCE040FED-B4C2-459F-9F6C-7FED13D3FA44 Case 6:15-bk-14566-SC Doc 216 Filed 08/22/17 Entered 08/22/17 16:59:17 Desc
Main Document Page 26 of 74

DigiSign: FE040FED-B4C2-459F-9F6C-7FED13D3FA44

Property Address: *0 Main Street , Hesperia, CA 92345* _____ Date: *February 27, 2017*

**B. ITEMS INCLUDED IN SALE:**
    (1) All EXISTING fixtures and fittings that are attached to the Property;
    (2) The following items: _____
    _____
    (3) Seller represents that all items included in the purchase price, unless otherwise specified, are owned by Seller.
    (4) All items included shall be transferred free of liens and without Seller warranty.
**C. ITEMS EXCLUDED FROM SALE:** _____

**12. STATUTORY AND OTHER DISCLOSURES AND CANCELLATION RIGHTS:**
    **A. NATURAL AND ENVIRONMENTAL HAZARD DISCLOSURES AND OTHER BOOKLETS:** Within the time specified in paragraph 19A, Seller shall, if required by Law: (I) Deliver to Buyer earthquake guide(s) (and questionnaire), environmental hazards booklet; (II) disclose if the Property is located in a Special Flood Hazard Area; Potential Flooding (Inundation) Area; Very High Fire Hazard Zone; State Fire Responsibility Area; Earthquake Fault Zone; and Seismic Hazard Zone; and (III) disclose any other zone as required by Law and provide any other information required for those zones.
    **B. WITHHOLDING TAXES:** Within the time specified in paragraph 19A, to avoid required withholding, Seller shall Deliver to Buyer or qualified substitute, an affidavit sufficient to comply with federal (FIRPTA) and California withholding Law (C.A.R. Form AS or QS).
    **C. MEGAN'S LAW DATABASE DISCLOSURE:** Notice: Pursuant to Section 290.46 of the Penal Code, information about specified registered sex offenders is made available to the public via an Internet Web site maintained by the Department of Justice at www.meganslaw.ca.gov. Depending on an offender's criminal history, this information will include either the address at which the offender resides or the community of residence and ZIP Code in which he or she resides. (Neither Seller nor Brokers are required to check this website. If Buyer wants further information, Broker recommends that Buyer obtain information from this website during Buyer's inspection contingency period. Brokers do not have expertise in this area.)
    **D. NOTICE REGARDING GAS AND HAZARDOUS LIQUID TRANSMISSION PIPELINES:** This notice is being provided simply to inform you that information about the general location of gas and hazardous liquid transmission pipelines is available to the public via the National Pipeline Mapping System (NPMS) Internet Web site maintained by the United States Department of Transportation at http://www.npms.phmsa.dot.gov/. To seek further information about possible transmission pipelines near the Property, you may contact your local gas utility or other pipeline operators in the area. Contact information for pipeline operators is searchable by ZIP Code and county on the NPMS Internet Web site.
    **E. CONDOMINIUM/PLANNED DEVELOPMENT DISCLOSURES:**
        (1) **SELLER HAS:** 7 (or ___ ) Days After Acceptance to disclose to Buyer whether the Property is a condominium, or is located in a planned development or other common interest subdivision (C.A.R. Form VLQ).
        (2) If the Property is a condominium or is located in a planned development or other common interest subdivision, Seller has 3 (or ___ ) Days After Acceptance to request from the HOA (C.A.R. Form HOA1): (I) Copies of any documents required by Law; (II) disclosure of any pending or anticipated claim or litigation by or against the HOA; (III) a statement containing the location and number of designated parking and storage spaces; (IV) Copies of the most recent 12 months of HOA minutes for regular and special meetings; and (v) the names and contact information of all HOAs governing the Property (collectively, "CI Disclosures"). Seller shall itemize and Deliver to Buyer all CI Disclosures received from the HOA and any CI Disclosures in Seller's possession. Buyer's approval of CI Disclosures is a contingency of this Agreement as specified in paragraph 19B(3). The Party specified in paragraph 9, as directed by escrow, shall deposit funds into escrow or direct to HOA or management company to pay for any of the above.

**13. SELLER DOCUMENTATION AND ADDITIONAL DISCLOSURE:**
    **A.** Within the time specified in paragraph 19, if Seller has actual knowledge, Seller shall provide to Buyer, in writing, the following information:
        (1) **LEGAL PROCEEDINGS:** Any lawsuits by or against Seller, threatening or affecting the Property, including any lawsuits alleging a defect or deficiency in the Property or common areas, or any known notices of abatement or citations filed or issued against the Property.
        (2) **AGRICULTURAL USE:** Whether the Property is subject to restrictions for agricultural use pursuant to the Williamson Act (Government Code §§51200-51295).
        (3) **DEED RESTRICTIONS:** Any deed restrictions or obligations.
        (4) **FARM USE:** Whether the Property is in, or adjacent to, an area with Right to Farm rights (Civil Code §3482.5 and §3482.6).
        (5) **ENDANGERED SPECIES:** Presence of endangered, threatened, 'candidate' species, or wetlands on the Property.
        (6) **ENVIRONMENTAL HAZARDS:** Any substances, materials, or products that may be an environmental hazard including, but not limited to, asbestos, formaldehyde, radon gas, lead-based paint, fuel or chemical storage tanks, and contaminated soil or water on the Property.
        (7) **COMMON WALLS:** Any features of the Property shared in common with adjoining landowners, such as walls, fences, roads, and driveways, and agriculture and domestic wells whose use or responsibility for maintenance may have an effect on the Property.
        (8) **LANDLOCKED:** The absence of legal or physical access to the Property.
        (9) **EASEMENTS/ENCROACHMENTS:** Any encroachments, easements or similar matters that may affect the Property.
        (10) **SOIL FILL:** Any fill (compacted or otherwise), or abandoned mining operations on the Property.
        (11) **SOIL PROBLEMS:** Any slippage, sliding, flooding, drainage, grading, or other soil problems.
        (12) **EARTHQUAKE DAMAGE:** Major damage to the Property or any of the structures from fire, earthquake, floods, or landslides.
        (13) **ZONING ISSUES:** Any zoning violations, non-conforming uses, or violations of "setback" requirements.
        (14) **NEIGHBORHOOD PROBLEMS:** Any neighborhood noise problems, or other nuisances.
    **B. RENTAL AND SERVICE AGREEMENTS:** Within the time specified in paragraph 19, Seller shall make available to Buyer for inspection and review, all current leases, rental agreements, service contracts and other related agreements, licenses, and permits pertaining to the operation or use of the Property.
    **C.** ☐ **TENANT ESTOPPEL CERTIFICATES:** Within the time specified in paragraph 19, Seller shall deliver to Buyer tenant estoppel certificates (C.A.R. Form TEC) completed by Seller or Seller's agent, and signed by tenants, acknowledging: (i) that tenants' rental or lease agreements are unmodified and in full force and effect (or if modified, stating all such modifications); (ii) that no lessor defaults exist; and (iii) stating the amount of any prepaid rent or security deposit.

Buyer's Initials (x __MM__ ) (x __MM__ )        Seller's Initials ( _/M_ )( _____ )

**VLPA REVISED 12/15 (PAGE 4 OF 11)**

Exhibit A - Page 25

Property Address: **0 Main Street , Hesperia, CA  92345**     Date: **February 27, 2017**

**D. MELLO-ROOS TAX; 1915 BOND ACT:** Within the time specified in paragraph 19, Seller shall: (i) make a good faith effort to obtain a notice from any local agencies that levy a special tax or assessment on the Property (or, if allowed, substantially equivalent notice), pursuant to the Mello-Roos Community Facilities Act, and Improvement Bond Act of 1915, and (ii) promptly deliver to Buyer any such notice obtained.

**E. SELLER VACANT LAND QUESTIONNAIRE:** Seller shall, within the time specified in paragraph 19, complete and provide Buyer with a Seller Vacant Land Questionnaire (C.A.R. Form VLQ).

**14. SUBSEQUENT DISCLOSURES:** In the event Seller, prior to Close Of Escrow, becomes aware of adverse conditions materially affecting the Property, or any material inaccuracy in disclosures, information or representations previously provided to Buyer of which Buyer is otherwise unaware, Seller shall promptly provide a subsequent or amended disclosure or notice, in writing, covering those items. However, **a subsequent or amended disclosure shall not be required for conditions and material inaccuracies disclosed in reports ordered and paid for by Buyer.**

**15. CHANGES DURING ESCROW:**

  **A.** Prior to Close Of Escrow, Seller may engage in the following acts, ("Proposed Changes"), subject to Buyer's rights in paragraph 15B: (i) rent or lease any part of the premises; (ii) alter, modify or extend any existing rental or lease agreement; (iii) enter into, alter, modify or extend any service contract(s); or (iv) change the status of the condition of the Property.

  **B.** At least 7 (or ____ ) Days prior to any Proposed Changes, Seller shall give written notice to Buyer of such Proposed Changes. Within 5 (or ____ ) Days After receipt of such notice, Buyer, in writing, may give Seller notice of Buyer's objection to the Proposed Changes, in which case Seller shall not make the Proposed Changes.

**16. CONDITION OF PROPERTY:** Unless otherwise agreed in writing: (i) the Property is sold (a) "AS-IS" in its PRESENT physical condition as of the date of Acceptance and (b) subject to Buyer's Investigation rights; (ii) the Property, including pool, spa, landscaping and grounds, is to be maintained in substantially the same condition as on the date of Acceptance; and (iii) all debris and personal property not included in the sale shall be removed by Close Of Escrow.

  **A.** Seller shall, within the time specified in paragraph 19A, DISCLOSE KNOWN MATERIAL FACTS AND DEFECTS affecting the Property, including known insurance claims within the past five years, and make any and all other disclosures required by law.

  **B.** Buyer has the right to conduct Buyer Investigations of the Property and, as specified in paragraph 19B, based upon information discovered in those investigations: (i) cancel this Agreement; or (ii) request that Seller make Repairs or take other action.

  **C. Buyer is strongly advised to conduct investigations of the entire Property in order to determine its present condition. Seller may not be aware of all defects affecting the Property or other factors that Buyer considers important. Property improvements may not be built according to code, in compliance with current Law, or have had permits issued.**

**17. BUYER'S INVESTIGATION OF PROPERTY AND MATTERS AFFECTING PROPERTY:**

  **A.** Buyer's acceptance of the condition of, and any other matter affecting the Property, is a contingency of this Agreement as specified in this paragraph and paragraph 19B. Within the time specified in paragraph 19B(1), Buyer shall have the right, at Buyer's expense unless otherwise agreed, to conduct inspections, investigations, tests, surveys and other studies ("Buyer Investigations"), including, but not limited to, the right to: (i) inspect for lead-based paint and other lead-based paint hazards; (ii) inspect for wood destroying pests and organisms; (iii) review the registered sex offender database; (iv) confirm the insurability of Buyer and the Property; and (v) satisfy Buyer as to any matter specified in the attached Buyer's Inspection Advisory (C.A.R. Form BIA). Without Seller's prior written consent, Buyer shall neither make nor cause to be made: (i) invasive or destructive Buyer Investigations except for minimally invasive testing; or (ii) inspections by any governmental building or zoning inspector or government employee, unless required by Law.

  **B.** Seller shall make the Property available for all Buyer Investigations. Buyer shall (i) as specified in paragraph 19B, complete Buyer Investigations and, either remove the contingency or cancel this Agreement, and (ii) give Seller, at no cost, complete Copies of all investigation reports obtained by Buyer, which obligation shall survive the termination of this Agreement.

  **C. Buyer indemnity and Seller protection for entry upon property: Buyer shall: (i)** keep the Property free and clear of liens; **(ii)** repair all damage arising from Buyer Investigations; and **(iii)** indemnify and hold Seller harmless from all resulting liability, claims, demands, damages and costs of Buyer's Investigations. Buyer shall carry, or Buyer shall require anyone acting on Buyer's behalf to carry, policies of liability, workers' compensation and other applicable insurance, defending and protecting Seller from liability for any injuries to persons or property occurring during any Buyer Investigations or work done on the Property at Buyer's direction prior to Close Of Escrow. Seller is advised that certain protections may be afforded Seller by recording a "Notice of Non-responsibility" (C.A.R. Form NNR) for Buyer Investigations and work done on the Property at Buyer's direction. Buyer's obligations under this paragraph shall survive the termination or cancellation of this Agreement and Close Of Escrow.

  **D. BUYER IS STRONGLY ADVISED TO INVESTIGATE THE CONDITION AND SUITABILITY OF ALL ASPECTS OF THE PROPERTY AND ALL MATTERS AFFECTING THE VALUE OR DESIRABILITY OF THE PROPERTY, INCLUDING BUT NOT LIMITED TO, THE ITEMS SPECIFIED BELOW. IF BUYER DOES NOT EXERCISE THESE RIGHTS, BUYER IS ACTING AGAINST THE ADVICE OF BROKERS. BUYER UNDERSTANDS THAT ALTHOUGH CONDITIONS ARE OFTEN DIFFICULT TO LOCATE AND DISCOVER, ALL REAL PROPERTY CONTAINS CONDITIONS THAT ARE NOT READILY APPARENT AND THAT MAY AFFECT THE VALUE OR DESIRABILITY OF THE PROPERTY. BUYER AND SELLER ARE AWARE THAT BROKERS DO NOT GUARANTEE, AND IN NO WAY ASSUME RESPONSIBILITY FOR, THE CONDITION OF THE PROPERTY. BROKERS HAVE NOT AND WILL NOT VERIFY ANY OF THE ITEMS IN THIS PARAGRAPH 17, UNLESS OTHERWISE AGREED IN WRITING.**

  **E. SIZE, LINES, ACCESS AND BOUNDARIES:** Lot size, property lines, legal or physical access and boundaries including features of the Property shared in common with adjoining landowners, such as walls, fences, roads and driveways, whose use or responsibility for maintenance may have an effect on the Property and any encroachments, easements or similar matters that may affect the Property. (Fences, hedges, walls and other natural or constructed barriers or markers do not necessarily identify true Property boundaries. Property lines may be verified by survey.) (Unless otherwise specified in writing, any numerical statements by Brokers regarding lot size are APPROXIMATIONS ONLY, which have not been and will not be verified, and should not be relied upon by Buyer.)

  **F. ZONING AND LAND USE:** Past, present, or proposed laws, ordinances, referendums, initiatives, votes, applications and permits affecting the current use of the Property, future development, zoning, building, size, governmental permits and inspections. Any zoning violations, non-conforming uses, or violations of "setback" requirements. (Buyer should also investigate whether these matters affect Buyer's intended use of the Property.)

  **G. UTILITIES AND SERVICES:** Availability, costs, restrictions and location of utilities and services, including but not limited to, sewerage, sanitation, septic and leach lines, water, electricity, gas, telephone, cable TV and drainage.

Buyer's Initials (X **MM** )(x **MM** )     Seller's Initials ( **M** )( _____ )

**VLPA REVISED 12/15 (PAGE 5 OF 11)**

**VACANT LAND PURCHASE AGREEMENT (VLPA PAGE 5 OF 11)**

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026  www.zipLogix.com     Vacant Land

Property Address: **0 Main Street, Hesperia, CA 92345** _____ Date: **February 27, 2017**

    H. **ENVIRONMENTAL HAZARDS:** Potential environmental hazards, including, but not limited to, asbestos, lead-based paint and other lead contamination, radon, methane, other gases, fuel, oil or chemical storage tanks, contaminated soil or water, hazardous waste, waste disposal sites, electromagnetic fields, nuclear sources, and other substances, including mold (airborne, toxic or otherwise), fungus or similar contaminant, materials, products or conditions.

    I. **GEOLOGIC CONDITIONS:** Geologic/seismic conditions, soil and terrain stability, suitability and drainage including any slippage, sliding, flooding, drainage, grading, fill (compacted or otherwise), or other soil problems.

    J. **NATURAL HAZARD ZONE:** Special Flood Hazard Areas, Potential Flooding (Inundation) Areas, Very High Fire Hazard Zones, State Fire Responsibility Areas, Earthquake Fault Zones, Seismic Hazard Zones, or any other zone for which disclosure is required by Law.

    K. **PROPERTY DAMAGE:** Major damage to the Property or any of the structures or non-structural systems and components and any personal property included in the sale from fire, earthquake, floods, landslides or other causes.

    L. **NEIGHBORHOOD, AREA AND PROPERTY CONDITIONS:** Neighborhood or area conditions, including Agricultural Use Restrictions pursuant to the Williamson Act (Government Code §§51200-51295), Right To Farm Laws (Civil Code §3482.5 and §3482.6),schools, proximity and adequacy of law enforcement, crime statistics, the proximity of registered felons or offenders, fire protection, other government services, availability, adequacy and cost of any speed-wired, wireless internet connections or other telecommunications or other technology services and installations, proximity to commercial, industrial or agricultural activities, existing and proposed transportation, construction and development that may affect noise, view, or traffic, airport noise, noise or odor from any source, abandoned mining operations on the Property, wild and domestic animals, other nuisances, hazards, or circumstances, protected species, wetland properties, botanical diseases, historic or other governmentally protected sites or improvements, cemeteries, facilities and condition of common areas of common interest subdivisions, and possible lack of compliance with any governing documents or Homeowners' Association requirements, conditions and influences of significance to certain cultures and/or religions, and personal needs, requirements and preferences of Buyer.

    M. **COMMON INTEREST SUBDIVISIONS: OWNER ASSOCIATIONS:** Facilities and condition of common areas (facilities such as pools, tennis courts, walkways, or other areas co-owned in undivided interest with others), Owners' Association has any authority over the subject property, CC&Rs, or other deed restrictions or obligations, and possible lack of compliance with any Owners' Association requirements.

    N. **SPECIAL TAX:** Any local agencies that levy a special tax on the Property pursuant to the Mello-Roos Community Facilities Act or Improvement Bond Act of 1915.

    O. **RENTAL PROPERTY RESTRICTIONS:** Some cities and counties impose restrictions that limit the amount of rent that can be charged, the maximum number of occupants and the right of a landlord to terminate a tenancy.

    P. **MANUFACTURED HOME PLACEMENT:** Conditions that may affect the ability to place and use a manufactured home on the Property.

**18. TITLE AND VESTING:**

    A. Within the time specified in paragraph 19, Buyer shall be provided a current preliminary title report ("Preliminary Report"). The Preliminary Report is only an offer by the title insurer to issue a policy of title insurance and may not contain every item affecting title. Buyer's review of the Preliminary Report and any other matters which may affect title are a contingency of this Agreement as specified in paragraph 19. The company providing the Preliminary Report shall, prior to issuing a Preliminary Report, conduct a search of the General Index for all Sellers except banks or other institutional lenders selling properties they acquired through foreclosure (REOs), corporations, and government entities. Seller shall within **7 Days After Acceptance**, give Escrow Holder a completed Statement of Information.

    B. Title is taken in its present condition subject to all encumbrances, easements, covenants, conditions, restrictions, rights and other matters, whether of record or not, as of the date of Acceptance except for: **(i)** monetary liens of record (which Seller is obligated to pay off) unless Buyer is assuming those obligations or taking the Property subject to those obligations; and **(ii)** those matters which Seller has agreed to remove in writing.

    C. Within the time specified in paragraph 19A, Seller has a duty to disclose to Buyer all matters known to Seller affecting title, whether of record or not.

    D. At Close Of Escrow, Buyer shall receive a grant deed conveying title (or, for stock cooperative or long-term lease, an assignment of stock certificate or of Seller's leasehold interest), including oil, mineral and water rights if currently owned by Seller. Title shall vest as designated in Buyer's supplemental escrow instructions. **THE MANNER OF TAKING TITLE MAY HAVE SIGNIFICANT LEGAL AND TAX CONSEQUENCES. CONSULT AN APPROPRIATE PROFESSIONAL.**

    E. Buyer shall receive a "CLTA/ALTA Homeowner's Policy of Title Insurance", if applicable to the type of property and buyer. A title company, at Buyer's request, can provide information about the availability, desirability, coverage, and cost of various title insurance coverages and endorsements. If Buyer desires title coverage other than that required by this paragraph, Buyer shall instruct Escrow Holder in writing and shall pay any increase in cost.

**19. TIME PERIODS; REMOVAL OF CONTINGENCIES; CANCELLATION RIGHTS:** The following time periods may only be extended, altered, modified or changed by mutual written agreement. Any removal of contingencies or cancellation under this paragraph by either Buyer or Seller must be exercised in good faith and in writing (C.A.R. Form CR or CC).

    A. **SELLER HAS: 7 (or ___ ) Days** After Acceptance to Deliver to Buyer all Reports, disclosures and information for which Seller is responsible under paragraphs 3M, 7A, 8, 9, 12A, B, and E, 13, 16A and 18A. Buyer after first Delivering to Seller a Notice to Seller to Perform (C.A.R. Form NSP) may cancel this Agreement if Seller has not Delivered the items within the time specified.

    B. **(1) BUYER HAS: 17 (or ___ ) Days** After Acceptance, unless otherwise agreed in writing, to:

        (i) complete all Buyer Investigations; review all disclosures, reports, and other applicable information, which Buyer receives from Seller; and approve all matters affecting the Property; and (ii) Deliver to Seller Signed Copies of Statutory Disclosures and other disclosures Delivered by Seller in accordance with paragraph 12A.

       (2) Within the time specified in paragraph 19B(1), Buyer may request that Seller make repairs or take any other action regarding the Property (C.A.R. Form RR). Seller has no obligation to agree to or respond to (C.A.R. Form RRRR) Buyer's requests.

       (3) By the end of the time specified in paragraph 19B(1) (or as otherwise specified in this Agreement), Buyer shall Deliver to Seller a removal of the applicable contingency or cancellation (C.A.R. Form CR or CC) of this Agreement. However, if any report, disclosure or information for which Seller is responsible is not Delivered within the time specified in paragraph 19A, then Buyer has **5 (or ___ ) Days** After Delivery of any such items, or the time specified in paragraph 19B(1), whichever is later, to Deliver to Seller a removal of the applicable contingency or cancellation of this Agreement.

Buyer's Initials (X **MM** )(X **MM** )            Seller's Initials ( **M** )( _____ )

VLPA REVISED 12/15 (PAGE 6 OF 11)
**VACANT LAND PURCHASE AGREEMENT (VLPA PAGE 6 OF 11)**
Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026 www.zipLogix.com     Vacant Land

Exhibit A - Page 27

DigiSign: FE040FED-B4C2-459F-9F6C-7FED13D3FA44

Property Address: _0 Main Street, Hesperia, CA 92345_____ Date: _February 27, 2017_____

(4) **Continuation of Contingency:** Even after the end of the time specified in paragraph 19B(1) and before Seller cancels, if at all, pursuant to paragraph 19C, Buyer retains the right, in writing, to either (i) remove remaining contingencies, or (ii) cancel this Agreement based on a remaining contingency. Once Buyer's written removal of all contingencies is Delivered to Seller, Seller may not cancel this Agreement pursuant to paragraph 19C(1).

C. **SELLER RIGHT TO CANCEL:**

(1) **Seller right to Cancel; Buyer Contingencies:** If, by the time specified in this Agreement, Buyer does not Deliver to Seller a removal of the applicable contingency or cancellation of this Agreement, then Seller, after first Delivering to Buyer a Notice to Buyer to Perform (C.A.R. Form NBP), may cancel this Agreement. In such event, Seller shall authorize the return of Buyer's deposit, except for fees incurred by Buyer.

(2) **Seller right to Cancel; Buyer Contract Obligations:** Seller, after first delivering to Buyer a NBP, may cancel this Agreement if, by the time specified in this Agreement, Buyer does not take the following action(s): (i) Deposit funds as required by paragraph 3A or 3B or if the funds deposited pursuant to paragraph 3A or 3B are not good when deposited; (ii) Deliver a notice of FHA or VA costs or terms as required by paragraph 3D(3) (C.A.R. Form FVA); (iii) Deliver a letter as required by paragraph 3J(1); (iv) Deliver verification as required by paragraph 3C or 3H or if Seller reasonably disapproves of the verification provided by paragraph 3C or 3H; (v) Return Statutory Disclosures as required by paragraph 12A; or (vi) Sign or initial a separate liquidated damages form for an increased deposit as required by paragraphs 3B and 27B; or (vii) Provide evidence of authority to sign in a representative capacity as specified in paragraph 19. In such event, Seller shall authorize the return of Buyer's deposit, except for fees incurred by Buyer.

D. **NOTICE TO BUYER OR SELLER TO PERFORM:** The NBP or NSP shall: (i) be in writing; (ii) be signed by the applicable Buyer or Seller; and (iii) give the other Party at least 2(or ____ ) Days After Delivery (or until the time specified in the applicable paragraph, whichever occurs last) to take the applicable action. A NBP or NSP may not be Delivered any earlier than 2 Days Prior to the expiration of the applicable time for the other Party to remove a contingency or cancel this Agreement or meet an obligation specified in paragraph 19.

E. **EFFECT OF BUYER'S REMOVAL OF CONTINGENCIES:** If Buyer removes, in writing, any contingency or cancellation rights, unless otherwise specified in writing, Buyer shall conclusively be deemed to have: (i) completed all Buyer Investigations, and review of reports and other applicable information and disclosures pertaining to that contingency or cancellation right; (ii) elected to proceed with the transaction; and (iii) assumed all liability, responsibility and expense for Repairs or corrections pertaining to that contingency or cancellation right, or for the inability to obtain financing.

F. **CLOSE OF ESCROW:** Before Buyer or Seller may cancel this Agreement for failure of the other Party to close escrow pursuant to this Agreement, Buyer or Seller must first Deliver to the other Party a demand to close escrow (C.A.R. Form DCE). The DCE shall: (i) be signed by the applicable Buyer or Seller; and (ii) give the other Party at least 3 (or ____ ) Days After Delivery to close escrow. A DCE may not be Delivered any earlier than 3 Days Prior to the scheduled close of escrow.

G. **EFFECT OF CANCELLATION ON DEPOSITS:** If Buyer or Seller gives written notice of cancellation pursuant to rights duly exercised under the terms of this Agreement, the Parties agree to Sign mutual instructions to cancel the sale and escrow and release deposits, if any, to the party entitled to the funds, less fees and costs incurred by that party. Fees and costs may be payable to service providers and vendors for services and products provided during escrow. Except as specified below, release of funds will require mutual Signed release instructions from the Parties, judicial decision or arbitration award. If either Party fails to execute mutual instructions to cancel escrow, one Party may make a written demand to Escrow Holder for the deposit (C.A.R. Form BDRD or SDRD). Escrow Holder, upon receipt, shall promptly deliver notice of the demand to the other Party. If, within 10 Days After Escrow Holder's notice, the other Party does not object to the demand, Escrow Holder shall disburse the deposit to the Party making the demand. If Escrow Holder complies with the preceding process, each Party shall be deemed to have released Escrow Holder from any and all claims or liability related to the disbursal of the deposit. Escrow Holder, at its discretion, may nonetheless require mutual cancellation instructions. A Party may be subject to a civil penalty of up to $1,000 for refusal to Sign cancellation instructions if no good faith dispute exists as to who is entitled to the deposited funds (Civil Code §1057.3).

20. **REPAIRS:** Repairs shall be completed prior to final verification of condition unless otherwise agreed in writing. Repairs to be performed at Seller's expense may be performed by Seller or through others, provided that the work complies with applicable Law, including governmental permit, inspection and approval requirements. Repairs shall be performed in a good, skillful manner with materials of quality and appearance comparable to existing materials. It is understood that exact restoration of appearance or cosmetic items following all Repairs may not be possible. Seller shall: (i) obtain invoices and paid receipts for Repairs performed by others; (ii) prepare a written statement indicating the Repairs performed by Seller and the date of such Repairs; and (iii) provide Copies of invoices and paid receipts and statements to Buyer prior to final verification of condition.

21. **FINAL VERIFICATION OF CONDITION:** Buyer shall have the right to make a final verification of the Property within 5 (or ____ ) Days Prior to Close Of Escrow, NOT AS A CONTINGENCY OF THE SALE, but solely to confirm: (i) the Property is maintained pursuant to paragraph 16; (ii) Repairs have been completed as agreed; and (iii) Seller has complied with Seller's other obligations under this Agreement (C.A.R. Form VP).

22. **ENVIRONMENTAL HAZARD CONSULTATION:** Buyer and Seller acknowledge: (i) Federal, state, and local legislation impose liability upon existing and former owners and users of real property, in applicable situations, for certain legislatively defined, environmentally hazardous substances; (ii) Broker(s) has/have made no representation concerning the applicability of any such Law to this transaction or to Buyer or to Seller, except as otherwise indicated in this Agreement; (iii) Broker(s) has/have made no representation concerning the existence, testing, discovery, location and evaluation of/for, and risks posed by, environmentally hazardous substances, if any, located on or potentially affecting the Property; and (iv) Buyer and Seller are each advised to consult with technical and legal experts concerning the existence, testing, discovery, location and evaluation of/for, and risks posed by, environmentally hazardous substances, if any, located on or potentially affecting the Property.

23. **PRORATIONS OF PROPERTY TAXES AND OTHER ITEMS:** Unless otherwise agreed in writing, the following items shall be PAID CURRENT and prorated between Buyer and Seller as of Close Of Escrow: real property taxes and assessments, interest, rents, HOA regular, special, and emergency dues and assessments imposed prior to Close Of Escrow, premiums on insurance assumed by Buyer, payments on bonds and assessments assumed by Buyer, and payments on Mello-Roos and other Special Assessment

Buyer's Initials (x _MM_ ) (x _MM_ )                    Seller's Initials ( _M_ ) ( _____ )

VLPA REVISED 12/15 (PAGE 7 OF 11)
VACANT LAND PURCHASE AGREEMENT (VLPA PAGE 7 OF 11)
Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026 www.zipLogix.com          Vacant Land

Exhibit A - Page 28

DigiSign: FE040FED-B4C2-459F-9F6C-7FED13D3FA44

Property Address: **0 Main Street, Hesperia, CA 92345** Date: **February 27, 2017**

District bonds and assessments that are now a lien. The following items shall be assumed by Buyer WITHOUT CREDIT toward the purchase price: prorated payments on Mello-Roos and other Special Assessment District bonds and assessments and HOA special assessments that are now a lien but not yet due. Property will be reassessed upon change of ownership. Any supplemental tax bills shall be paid as follows: (i) for periods after Close Of Escrow, by Buyer; and (ii) for periods prior to Close Of Escrow, by Seller (see C.A.R. Form SPT or SBSA for further information). TAX BILLS ISSUED AFTER CLOSE OF ESCROW SHALL BE HANDLED DIRECTLY BETWEEN BUYER AND SELLER. Prorations shall be made based on a 30-day month.

**24. BROKERS:**

**A. COMPENSATION:** Seller or Buyer, or both, as applicable, agrees to pay compensation to Broker as specified in a separate written agreement between Broker and that Seller or Buyer. Compensation is payable upon Close Of Escrow, or if escrow does not close, as otherwise specified in the agreement between Broker and that Seller or Buyer.

**B. SCOPE OF DUTY:** Buyer and Seller acknowledge and agree that Broker: (i) Does not decide what price Buyer should pay or Seller should accept; (ii) Does not guarantee the condition of the Property; (iii) Does not guarantee the performance, adequacy or completeness of inspections, services, products or repairs provided or made by Seller or others; (iv) Does not have an obligation to conduct an inspection of common areas or areas off the site of the Property; (v) Shall not be responsible for identifying defects on the Property, in common areas, or offsite unless such defects are visually observable by an inspection of reasonably accessible areas of the Property or are known to Broker; (vi) Shall not be responsible for inspecting public records or permits concerning the title or use of Property; (vii) Shall not be responsible for identifying the location of boundary lines or other items affecting title; (viii) Shall not be responsible for verifying square footage, representations of others or information contained in Investigation reports, Multiple Listing Service, advertisements, flyers or other promotional material; (ix) Shall not be responsible for determining the fair market value of the Property or any personal property included in the sale; (x) Shall not be responsible for providing legal or tax advice regarding any aspect of a transaction entered into by Buyer or Seller; and (xi) Shall not be responsible for providing other advice or information that exceeds the knowledge, education and experience required to perform real estate licensed activity. Buyer and Seller agree to seek legal, tax, insurance, title and other desired assistance from appropriate professionals.

**25. REPRESENTATIVE CAPACITY:** If one or more Parties is signing the Agreement in a representative capacity and not for him/herself as an individual then that Party shall so indicate in paragraph 37 or 38 and attach a Representative Capacity Signature Addendum (C.A.R. Form RCSD). Wherever the signature or initials of the representative identified in the RCSD appear on the Agreement or any related documents, it shall be deemed to be in a representative capacity for the entity described and not in an individual capacity, unless otherwise indicated. The Party acting in a representative capacity (i) represents that the entity for which that party is acting already exists and (ii) shall Deliver to the other Party and Escrow Holder, within 3 Days After Acceptance, evidence of authority to act in that capacity (such as but not limited to: applicable portion of the trust or Certification Of Trust (Probate Code §18100.5), letters testamentary, court order, power of attorney, corporate resolution, or formation documents of the business entity).

**26. JOINT ESCROW INSTRUCTIONS TO ESCROW HOLDER:**

**A.** The following paragraphs, or applicable portions thereof, of this Agreement constitute the joint escrow instructions of Buyer and Seller to Escrow Holder, which Escrow Holder is to use along with any related counter offers and addenda, and any additional mutual instructions to close the escrow: paragraphs 1, 3, 4B, 5, 6, 7A, 8, 9, 12B, 18, 19G, 23, 24A, 25, 26, 32, 35, 36, 37, 38 and paragraph D of the section titled Real Estate Brokers on page 11. If a Copy of the separate compensation agreement(s) provided for in paragraph 24A, or paragraph D of the section titled Real Estate Brokers on page 10 is deposited with Escrow Holder by Broker, Escrow Holder shall accept such agreement(s) and pay out from Buyer's or Seller's funds, or both, as applicable, the Broker's compensation provided for in such agreement(s). The terms and conditions of this Agreement not set forth in the specified paragraphs are additional matters for the information of Escrow Holder, but about which Escrow Holder need not be concerned. Buyer and Seller will receive Escrow Holder's general provisions, if any, directly from Escrow Holder and will execute such provisions within the time specified in paragraph 9B(1)(c). To the extent the general provisions are inconsistent or conflict with this Agreement, the general provisions will control as to the duties and obligations of Escrow Holder only. Buyer and Seller will execute additional instructions, documents and forms provided by Escrow Holder that are reasonably necessary to close the escrow and, as directed by Escrow Holder, within 3 (or ___) Days, shall pay to Escrow Holder or HOA or HOA management company or others any fee required by paragraphs 9, 12 or elsewhere in this Agreement.

**B.** A Copy of this Agreement including any counter offer(s) and addenda shall be delivered to Escrow Holder within 3 Days After Acceptance (or _____). Buyer and Seller authorize Escrow Holder to accept and rely on Copies and Signatures as defined in this Agreement as originals, to open escrow and for other purposes of escrow. The validity of this Agreement as between Buyer and Seller is not affected by whether or when Escrow Holder Signs this Agreement. Escrow Holder shall provide Seller's Statement of Information to Title company when received from Seller. If Seller delivers an affidavit to Escrow Holder to satisfy Seller's FIRPTA obligation under paragraph 12B, Escrow Holder shall deliver to Buyer a Qualified Substitute statement that complies with federal Law.

**C.** Brokers are a party to the escrow for the sole purpose of compensation pursuant to paragraph 24A and paragraph D of the section titled Real Estate Brokers on page 11. Buyer and Seller irrevocably assign to Brokers compensation specified in paragraph 24A, and irrevocably instruct Escrow Holder to disburse those funds to Brokers at Close Of Escrow or pursuant to any other mutually executed cancellation agreement. Compensation instructions can be amended or revoked only with the written consent of Brokers. Buyer and Seller shall release and hold harmless Escrow Holder from any liability resulting from Escrow Holder's payment to Broker(s) of compensation pursuant to this Agreement.

**D.** Upon receipt, Escrow Holder shall provide Seller and Seller's Broker verification of Buyer's deposit of funds pursuant to paragraph 3A and 3B. Once Escrow Holder becomes aware of any of the following, Escrow Holder shall immediately notify all Brokers: (i) if Buyer's initial or any additional deposit is not made pursuant to this Agreement, or is not good at time of deposit with Escrow Holder; or (ii) if Buyer and Seller instruct Escrow Holder to cancel escrow.

**E.** A Copy of any amendment that affects any paragraph of this Agreement for which Escrow Holder is responsible shall be delivered to Escrow Holder within 3 Days after mutual execution of the amendment.

Buyer's Initials (x__MM__)(x__MM__)   Seller's Initials (__M__)(_____)

**VLPA REVISED 12/15 (PAGE 8 OF 11)**

**VACANT LAND PURCHASE AGREEMENT (VLPA PAGE 8 OF 11)**

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026 www.zipLogix.com   Vacant Land

Property Address: *0 Main Street*, Hesperia, CA 92345 _____ Date: *February 27, 2017*

**27. REMEDIES FOR BUYER'S BREACH OF CONTRACT:**
A. Any clause added by the Parties specifying a remedy (such as release or forfeiture of deposit or making a deposit non-refundable) for failure of Buyer to complete the purchase in violation of this Agreement shall be deemed invalid unless the clause independently satisfies the statutory liquidated damages requirements set forth in the Civil Code.
B. **LIQUIDATED DAMAGES:** If Buyer fails to complete this purchase because of Buyer's default, Seller shall retain, as liquidated damages, the deposit actually paid. Buyer and Seller agree that this amount is a reasonable sum given that it is impractical or extremely difficult to establish the amount of damages that would actually be suffered by Seller in the event Buyer were to breach this Agreement. Release of funds will require mutual, Signed release instructions from both Buyer and Seller, judicial decision or arbitration award. AT TIME OF ANY INCREASED DEPOSIT BUYER AND SELLER SHALL SIGN A SEPARATE LIQUIDATED DAMAGES PROVISION INCORPORATING THE INCREASED DEPOSIT AS LIQUIDATED DAMAGES (C.A.R. FORM RID).

Buyer's Initials ___/___    Seller's Initials ___/___

**28. DISPUTE RESOLUTION:**
A. **MEDIATION:** The Parties agree to mediate any dispute or claim arising between them out of this Agreement, or any resulting transaction, before resorting to arbitration or court action through the C.A.R. Consumer Mediation Center (www.consumermediation.org) or through any other mediation provider or service mutually agreed to by the Parties. The Parties also agree to mediate any disputes or claims with Broker(s), who, in writing, agree to such mediation prior to, or within a reasonable time after, the dispute or claim is presented to the Broker. Mediation fees, if any, shall be divided equally among the Parties involved. If, for any dispute or claim to which this paragraph applies, any Party (i) commences an action without first attempting to resolve the matter through mediation, or (ii) before commencement of an action, refuses to mediate after a request has been made, then that Party shall not be entitled to recover attorney fees, even if they would otherwise be available to that Party in any such action. THIS MEDIATION PROVISION APPLIES WHETHER OR NOT THE ARBITRATION PROVISION IS INITIALED. Exclusions from this mediation agreement are specified in paragraph 28C.
B. **ARBITRATION OF DISPUTES:** The Parties agree that any dispute or claim in Law or equity arising between them out of this Agreement or any resulting transaction, which is not settled through mediation, shall be decided by neutral, binding arbitration. The Parties also agree to arbitrate any disputes or claims with Broker(s), who, in writing, agree to such arbitration prior to, or within a reasonable time after, the dispute or claim is presented to the Broker. The arbitrator shall be a retired judge or justice, or an attorney with at least 5 years of transactional real estate Law experience, unless the parties mutually agree to a different arbitrator. The Parties shall have the right to discovery in accordance with Code of Civil Procedure §1283.05. In all other respects, the arbitration shall be conducted in accordance with Title 9 of Part 3 of the Code of Civil Procedure. Judgment upon the award of the arbitrator(s) may be entered into any court having jurisdiction. Enforcement of this agreement to arbitrate shall be governed by the Federal Arbitration Act. Exclusions from this arbitration agreement are specified in paragraph 28C.

"NOTICE: BY INITIALING IN THE SPACE BELOW YOU ARE AGREEING TO HAVE ANY DISPUTE ARISING OUT OF THE MATTERS INCLUDED IN THE 'ARBITRATION OF DISPUTES' PROVISION DECIDED BY NEUTRAL ARBITRATION AS PROVIDED BY CALIFORNIA LAW AND YOU ARE GIVING UP ANY RIGHTS YOU MIGHT POSSESS TO HAVE THE DISPUTE LITIGATED IN A COURT OR JURY TRIAL. BY INITIALING IN THE SPACE BELOW YOU ARE GIVING UP YOUR JUDICIAL RIGHTS TO DISCOVERY AND APPEAL, UNLESS THOSE RIGHTS ARE SPECIFICALLY INCLUDED IN THE 'ARBITRATION OF DISPUTES' PROVISION. IF YOU REFUSE TO SUBMIT TO ARBITRATION AFTER AGREEING TO THIS PROVISION, YOU MAY BE COMPELLED TO ARBITRATE UNDER THE AUTHORITY OF THE CALIFORNIA CODE OF CIVIL PROCEDURE. YOUR AGREEMENT TO THIS ARBITRATION PROVISION IS VOLUNTARY."

"WE HAVE READ AND UNDERSTAND THE FOREGOING AND AGREE TO SUBMIT DISPUTES ARISING OUT OF THE MATTERS INCLUDED IN THE 'ARBITRATION OF DISPUTES' PROVISION TO NEUTRAL ARBITRATION."

Buyer's Initials ___/___    Seller's Initials ___/___

C. **ADDITIONAL MEDIATION AND ARBITRATION TERMS:**
(1) **EXCLUSIONS:** The following matters are excluded from mediation and arbitration: (i) a judicial or non-judicial foreclosure or other action or proceeding to enforce a deed of trust, mortgage or installment land sale contract as defined in Civil Code §2985; (ii) an unlawful detainer action; and (iii) any matter that is within the jurisdiction of a probate, small claims or bankruptcy court.
(2) **PRESERVATION OF ACTIONS:** The following shall not constitute a waiver nor violation of the mediation and arbitration provisions: (i) the filing of a court action to preserve a statute of limitations; (ii) the filing of a court action to enable the recording of a notice of pending action, for order of attachment, receivership, injunction, or other provisional remedies; or (iii) the filing of a mechanic's lien.
(3) **BROKERS:** Brokers shall not be obligated nor compelled to mediate or arbitrate unless they agree to do so in writing. Any Broker(s) participating in mediation or arbitration shall not be deemed a party to the Agreement.

**29. SELECTION OF SERVICE PROVIDERS:** Brokers do not guarantee the performance of any vendors, service or product providers ("Providers"), whether referred by Broker or selected by Buyer, Seller or other person. Buyer and Seller may select ANY Providers of their own choosing.

**30. MULTIPLE LISTING SERVICE ("MLS"):** Brokers are authorized to report to the MLS a pending sale and, upon Close Of Escrow, the sales price and other terms of this transaction shall be provided to the MLS to be published and disseminated to persons and entities authorized to use the information on terms approved by the MLS.

Buyer's Initials (x ___)(x ___)    Seller's Initials ( ___)( ___)

VLPA REVISED 12/15 (PAGE 9 OF 11)

**VACANT LAND PURCHASE AGREEMENT (VLPA PAGE 9 OF 11)**
Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026  www.zipLogix.com    Vacant Land

Exhibit A - Page 30

Property Address: _0 Main Street, Hesperia, CA 92345_ Date: _February 27, 2017_

31. **ATTORNEY FEES:** In any action, proceeding, or arbitration between Buyer and Seller arising out of this Agreement, the prevailing Buyer or Seller shall be entitled to reasonable attorneys fees and costs from the non-prevailing Buyer or Seller, except as provided in paragraph 28A.

32. **ASSIGNMENT:** Buyer shall not assign all or any part of Buyer's interest in this Agreement without first having obtained the written consent of Seller. Such consent shall not be unreasonably withheld unless otherwise agreed in writing. Any total or partial assignment shall not relieve Buyer of Buyer's obligations pursuant to this Agreement unless otherwise agreed in writing by Seller (C.A.R. Form AOAA).

33. **EQUAL HOUSING OPPORTUNITY:** The Property is sold in compliance with federal, state and local anti-discrimination Laws.

34. **TERMS AND CONDITIONS OF OFFER:** This is an offer to purchase the Property on the above terms and conditions. The liquidated damages paragraph or the arbitration of disputes paragraph is incorporated in this Agreement if initialed by all Parties or if incorporated by mutual agreement in a counteroffer or addendum. If at least one but not all Parties initial, a counter offer is required until agreement is reached. Seller has the right to continue to offer the Property for sale and to accept any other offer at any time prior to notification of Acceptance. Buyer has read and acknowledges receipt of a Copy of the offer and agrees to the confirmation of agency relationships. If this offer is accepted and Buyer subsequently defaults, Buyer may be responsible for payment of Brokers' compensation. This Agreement and any supplement, addendum or modification, including any Copy, may be Signed in two or more counterparts, all of which shall constitute One and the same writing.

35. **TIME OF ESSENCE; ENTIRE CONTRACT; CHANGES:** Time is of the essence. All understandings between the Parties are incorporated in this Agreement. Its terms are intended by the Parties as a final, complete and exclusive expression of their Agreement with respect to its subject matter, and may not be contradicted by evidence of any prior agreement or contemporaneous oral agreement. If any provision of this Agreement is held to be ineffective or invalid, the remaining provisions will nevertheless be given full force and effect. Except as otherwise specified, this Agreement shall be interpreted and disputes shall be resolved in accordance with the Laws of the State of California. Neither this Agreement nor any provision in it may be extended, amended, modified, altered or changed, except in writing Signed by Buyer and Seller.

36. **DEFINITIONS:** As used in this Agreement:
   A. "Acceptance" means the time the offer or final counter offer is accepted in writing by a Party and is delivered to and personally received by the other Party or that Party's authorized agent in accordance with the terms of this offer or a final counter offer.
   B. "Agreement" means this document and any counter offers and any incorporated addenda, collectively forming the binding agreement between the Parties. Addenda are incorporated only when Signed by all Parties.
   C. "C.A.R. Form" means the most current version of the specific form referenced or another comparable form agreed to by the parties.
   D. "Close Of Escrow" means the date the grant deed, or other evidence of transfer of title, is recorded.
   E. "Copy" means copy by any means including photocopy, NCR, facsimile and electronic.
   F. "Days" means calendar days. However, after Acceptance, the last Day for performance of any act required by this Agreement (including Close Of Escrow) shall not include any Saturday, Sunday, or legal holiday and shall instead be the next Day.
   G. "Days After" means the specified number of calendar days after the occurrence of the event specified, not counting the calendar date on which the specified event occurs, and ending at 11:59 PM on the final day.
   H. "Days Prior" means the specified number of calendar days before the occurrence of the event specified, not counting the calendar date on which the specified event is scheduled to occur.
   I. "Deliver", "Delivered" or "Delivery", unless otherwise specified in writing, means and shall be effective upon: personal receipt by Buyer or Seller or the individual Real Estate Licensee for that principal as specified in the section titled Real Estate Brokers on page 11, regardless of the method used (i.e., messenger, mail, email, fax, other).
   J. "Electronic Copy" or "Electronic Signature" means, as applicable, an electronic copy or signature complying with California Law. Buyer and Seller agree that electronic means will not be used by either Party to modify or alter the content or integrity of this Agreement without the knowledge and consent of the other Party.
   K. "Law" means any law, code, statute, ordinance, regulation, rule or order, which is adopted by a controlling city, county, state or federal legislative, judicial or executive body or agency.
   L. "Repairs" means any repairs (including pest control), alterations, replacements, modifications or retrofitting of the Property provided for under this Agreement.
   M. "Signed" means either a handwritten or electronic signature on an original document, Copy or any counterpart.

37. **EXPIRATION OF OFFER:** This offer shall be deemed revoked and the deposit, if any, shall be returned to Buyer unless the offer is Signed by Seller and a Copy of the Signed offer is personally received by Buyer, or by _____, who is authorized to receive it, by 5:00 PM on the third Day after this offer is signed by Buyer (or by _____ [ ] AM/ [ ] PM, on _____ (date)).

☐ One or more Buyers is signing the Agreement in a representative capacity and not for him/herself as an individual. See attached Representative Capacity Signature Disclosure (C.A.R. Form RCSD-B) for additional terms.

Date _02-27-2017_ BUYER X _Mark Maida_
(Print name) **Mark Maida, and/or assignee**
Date _02-27-2017_ BUYER X _Minenu Maida_
(Print name) **Minem Maida, and/or assignee**

☐ Additional Signature Addendum attached (C.A.R. Form ASA).

Buyer's Initials (X _MM_ )(X _MM_ ) Seller's Initials ( _M_ )( _____ )

VLPA REVISED 12/15 (PAGE 10 OF 11)

Exhibit A - Page 31

Property Address: 0 Main Street, Hesperia, CA 92345_____ Date: February 27, 2017_____
**38. ACCEPTANCE OF OFFER:** Seller warrants that Seller is the owner of the Property, or has the authority to execute this Agreement. Seller accepts the above offer and agrees to sell the Property on the above terms and conditions, and agrees to the above confirmation of agency relationships. Seller has read and acknowledges receipt of a Copy of this Agreement, and authorizes Broker to Deliver a Signed Copy to Buyer.

☐ (If checked) SELLER'S ACCEPTANCE IS SUBJECT TO ATTACHED COUNTER OFFER (C.A.R. Form SCO or SMCO) DATED:
_____

☐ One or more Sellers is signing the Agreement in a representative capacity and not for him/herself as an individual. See attached Representative Capacity Signature Disclosure (C.A.R. Form RCSD-S) for additional terms.

Date _____ SELLER _____
(Print name) _____
Date _____ SELLER _____
(Print name) _____

☐ Additional Signature Addendum attached (C.A.R. Form ASA).

(_____/_____) (Do not initial if making a counter offer.) CONFIRMATION OF ACCEPTANCE: A Copy of Signed Acceptance was
(Initials) personally received by Buyer or Buyer's authorized agent on (date) _____ at _____ ☐ AM/ ☐ PM. A binding Agreement is created when a Copy of Signed Acceptance is personally received by Buyer or Buyer's authorized agent whether or not confirmed in this document. Completion of this confirmation is not legally required in order to create a binding Agreement; it is solely intended to evidence the date that Confirmation of Acceptance has occurred.

**REAL ESTATE BROKERS:**
A. Real Estate Brokers are not parties to the Agreement between Buyer and Seller.
B. Agency relationships are confirmed as stated in paragraph 2.
C. If specified in paragraph 3A(2), Agent who submitted the offer for Buyer acknowledges receipt of deposit.
D. COOPERATING BROKER COMPENSATION: Listing Broker agrees to pay Cooperating Broker (Selling Firm) and Cooperating Broker agrees to accept, out of Listing Broker's proceeds in escrow, the amount specified in the MLS, provided Cooperating Broker is a Participant of the MLS in which the Property is offered for sale or a reciprocal MLS. If Listing Broker and Cooperating Broker are not both Participants of the MLS, or a reciprocal MLS, in which the Property is offered for sale, then compensation must be specified in a separate written agreement (C.A.R. Form CBC). Declaration of License and Tax (C.A.R. Form DLT) may be used to document that tax reporting will be required or that an exemption exists.

Real Estate Broker (Selling Firm) Shear Realty CalBRE Lic. #00818152
By John Snyder  John F. Snyder CalBRE Lic. # 01019705 Date 02/27/2017
By _____ CalBRE Lic. # _____ Date _____
Address 18564 Hwy 18 Suite 205 City Apple Valley State Ca Zip 92307
Telephone (760)242-7221 Fax (760)242-7226 E-mail Snydersells@aol.com

Real Estate Broker (Listing Firm) Shear Realty- Victorville CalBRE Lic. #00978336
By _____ Bruce D Kallen CalBRE Lic. # 01497080 Date 2-28-17
By _____ CalBRE Lic. # _____ Date _____
Address 12640 Hesperia Rd. Suite G City Victorville State CA Zip 92395
Telephone (760)951-0542 Fax (760)245-9637 E-mail bdkallen@gmail.com

**ESCROW HOLDER ACKNOWLEDGMENT:**
Escrow Holder acknowledges receipt of a Copy of this Agreement, (if checked, ☐ a deposit in the amount of $ _____ ), counter offer numbers _____ ☐ Seller's Statement of Information and _____ , and agrees to act as Escrow Holder subject to paragraph 26 of this Agreement, any supplemental escrow instructions and the terms of Escrow Holder's general provisions.
Escrow Holder is advised that the date of Confirmation of Acceptance of the Agreement as between Buyer and Seller is _____
Escrow Holder _____ Escrow # _____
By _____ Date _____
Address _____
Phone/Fax/E-mail _____
Escrow Holder has the following license number # _____
☐ Department of Business Oversight, ☐ Department of Insurance, ☐ Bureau of Real Estate.

PRESENTATION OF OFFER: (_____) Listing Broker presented this offer to Seller on _____ (date).
                        Broker or Designee Initials

REJECTION OF OFFER: (_____) No counter offer is being made. This offer was rejected by Seller on _____ (date).
                     Seller's Initials

©1996- 2015, California Association of REALTORS®, Inc. United States copyright law (Title 17 U.S. Code) forbids the unauthorized distribution, display and reproduction of this form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats.
THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS® (C.A.R.). NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ACCURACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL.

Published and Distributed by:
REAL ESTATE BUSINESS SERVICES, INC.
a subsidiary of the CALIFORNIA ASSOCIATION OF REALTORS®
525 South Virgil Avenue, Los Angeles, California 90020

Buyer's Acknowledge that page 11 is part of this Agreement (X MM) (X MM)

Reviewed by Broker or Designee _____

VLPA REVISED 11/14 (PAGE 11 OF 11)

**VACANT LAND PURCHASE AGREEMENT (VLPA PAGE 11 OF 11)**
Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026 www.zipLogix.com

Vacant Land



**CALIFORNIA
ASSOCIATION
OF REALTORS®**

# BUYER'S INSPECTION ADVISORY
(C.A.R. Form BIA, Revised 11/14)

Property Address: 0 Main Street, Hesperia, CA 92345 _____ ("Property").

**1. IMPORTANCE OF PROPERTY INVESTIGATION:** The physical condition of the land and improvements being purchased is not guaranteed by either Seller or Brokers. You have an affirmative duty to exercise reasonable care to protect yourself, including discovery of the legal, practical and technical implications of disclosed facts, and the investigation and verification of information and facts that you know or that are within your diligent attention and observation. A general physical inspection typically does not cover all aspects of the Property nor items affecting the Property that are not physically located on the Property. If the professionals recommend further investigations, including a recommendation by a pest control operator to inspect inaccessible areas of the Property, you should contact qualified experts to conduct such additional investigations.

**2. BROKER OBLIGATIONS:** Brokers do not have expertise in all areas and therefore cannot advise you on many items, such as those listed below. If Broker gives you referrals to professionals, Broker does not guarantee their performance.

**3. YOU ARE STRONGLY ADVISED TO INVESTIGATE THE CONDITION AND SUITABILITY OF ALL ASPECTS OF THE PROPERTY, INCLUDING BUT NOT LIMITED TO THE FOLLOWING. IF YOU DO NOT DO SO, YOU ARE ACTING AGAINST THE ADVICE OF BROKERS.**

   **A. GENERAL CONDITION OF THE PROPERTY, ITS SYSTEMS AND COMPONENTS:** Foundation, roof (condition, age, leaks, useful life), plumbing, heating, air conditioning, electrical, mechanical, security, pool/spa (cracks, leaks, operation), other structural and nonstructural systems and components, fixtures, built-in appliances, any personal property included in the sale, and energy efficiency of the Property.

   **B. SQUARE FOOTAGE, AGE, BOUNDARIES:** Square footage, room dimensions, lot size, age of improvements and boundaries. Any numerical statements regarding these items are APPROXIMATIONS ONLY and have not been verified by Seller and cannot be verified by Brokers. Fences, hedges, walls, retaining walls and other barriers or markers do not necessarily identify true Property boundaries.

   **C. WOOD DESTROYING PESTS:** Presence of, or conditions likely to lead to the presence of wood destroying pests and organisms.

   **D. SOIL STABILITY:** Existence of fill or compacted soil, expansive or contracting soil, susceptibility to slippage, settling or movement, and the adequacy of drainage.

   **E. WATER AND UTILITIES; WELL SYSTEMS AND COMPONENTS;WASTE DISPOSAL:** Water and utility availability, use restrictions and costs. Water quality, adequacy, condition, and performance of well systems and components. The type, size, adequacy, capacity and condition of sewer and septic systems and components, connection to sewer, and applicable fees.

   **F. ENVIRONMENTAL HAZARDS:** Potential environmental hazards, including, but not limited to, asbestos, lead-based paint and other lead contamination, radon, methane, other gases, fuel oil or chemical storage tanks, contaminated soil or water, hazardous waste, waste disposal sites, electromagnetic fields, nuclear sources, and other substances, materials, products, or conditions (including mold (airborne, toxic or otherwise), fungus or similar contaminants.

   **G. EARTHQUAKES AND FLOODING:** Susceptibility of the Property to earthquake/seismic hazards and propensity of the Property to flood.

   **H. FIRE, HAZARD AND OTHER INSURANCE:** The availability and cost of necessary or desired insurance may vary. The location of the Property in a seismic, flood or fire hazard zone, and other conditions, such as the age of the Property and the claims history of the Property and Buyer, may affect the availability and need for certain types of insurance. Buyer should explore insurance options early as this information may affect other decisions, including the removal of loan and inspection contingencies.

   **I. BUILDING PERMITS, ZONING AND GOVERNMENTAL REQUIREMENTS:** Permits, inspections, certificates, zoning, other governmental limitations, restrictions, and requirements affecting the current or future use of the Property, its development or size.

   **J. RENTAL PROPERTY RESTRICTIONS:** Some cities and counties impose restrictions that limit the amount of rent that can be charged, the maximum number of occupants, and the right of a landlord to terminate a tenancy. Deadbolt or other locks and security systems for doors and windows, including window bars, should be examined to determine whether they satisfy legal requirements.

   **K. SECURITY AND SAFETY:** State and local Law may require the installation of barriers, access alarms, self-latching mechanisms and/or other measures to decrease the risk to children and other persons of existing swimming pools and hot tubs, as well as various fire safety and other measures concerning other features of the Property.

   **L. NEIGHBORHOOD, AREA, SUBDIVISION CONDITIONS; PERSONAL FACTORS:** Neighborhood or area conditions, including schools, law enforcement, crime statistics, registered felons or offenders, fire protection, other government services, availability, adequacy and cost of internet connections or other technology services and installations, commercial, industrial or agricultural activities, existing and proposed transportation, construction and development that may affect noise, view, or traffic, airport noise, noise or odor from any source, wild and domestic animals, other nuisances, hazards, or circumstances, protected species, wetland properties, botanical diseases, historic or other governmentally protected sites or improvements, cemeteries, facilities and condition of common areas of common interest subdivisions, and possible lack of compliance with any governing documents or Homeowners' Association requirements, conditions and influences of significance to certain cultures and/or religions, and personal needs, requirements and preferences of Buyer.

By signing below, Buyers acknowledge that they have read, understand, accept and have received a Copy of this Advisory. Buyers are encouraged to read it carefully.

Buyer _Mark Maida_                   Buyer _Minenm Maida_
     Mark Maida, and/or assignee                        Minem Maida, and/or assignee

© 1991-2004, California Association of REALTORS®, Inc. THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS® (C.A.R.). NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ACCURACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL.

Published and Distributed by:
REAL ESTATE BUSINESS SERVICES, INC.
a subsidiary of the California Association of REALTORS®
525 South Virgil Avenue, Los Angeles, California 90020

| Reviewed by _____ Date _____ |
| --- |



BIA REVISED 11/14 (PAGE 1 OF 1)

**BUYER'S INSPECTION ADVISORY (BIA PAGE 1 OF 1)**

Shear Realty- AV, 18564 US Highway 18 Ste 205 Apple Valley, CA 92307     Phone: 760.242.7221     Fax: 760.242.7216     Vacant Land
John Snyder        Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026   www.zipLogix.com

Exhibit A - Page 33



**CALIFORNIA
ASSOCIATION
OF REALTORS®**

## POSSIBLE REPRESENTATION OF MORE THAN ONE BUYER
## OR SELLER - DISCLOSURE AND CONSENT
(C.A.R. Form PRBS, 11/14)

A real estate broker (Broker), whether a corporation, partnership or sole proprietorship, may represent more than one buyer or seller. This multiple representation can occur through an individual licensed as a broker or salesperson or through different individual broker's or salespersons (associate licensees) acting under the Broker's license. The associate licensees may be working out of the same or different office locations.

**Multiple Buyers:** Broker (individually or through its associate licensees) may be working with many prospective buyers at the same time. These prospective buyers may have an interest in, and make offers on, the same properties. Some of these properties may be listed with Broker and some may not. Broker will not limit or restrict any particular buyer from making an offer on any particular property whether or not Broker represents other buyers interested in the same property.

**Multiple Sellers:** Broker (individually or through its associate licensees) may have listings on many properties at the same time. As a result, Broker will attempt to find buyers for each of those listed properties. Some listed properties may appeal to the same prospective buyers. Some properties may attract more prospective buyers than others. Some of these prospective buyers may be represented by Broker and some may not. Broker will market all listed properties to all prospective buyers whether or not Broker has another or other listed properties that may appeal to the same prospective buyers.

**Dual Agency:** If Seller is represented by Broker, Seller acknowledges that broker may represent prospective buyers of Seller's property and consents to Broker acting as a dual agent for both seller and buyer in that transaction. If Buyer is represented by Broker, buyer acknowledges that Broker may represent sellers of property that Buyer is interested in acquiring and consents to Broker acting as a dual agent for both buyer and seller with regard to that property.

In the event of dual agency, seller and buyer agree that: **(a)** Broker, without the prior written consent of the Buyer, will not disclose to seller that the Buyer is willing to pay a price greater than the offered price; **(b)** Broker, without the prior written consent of the seller, will not disclose to the buyer that seller is willing to sell property at a price less than the listing price; and **(c)** other than as set forth in (a) and (b) above, a dual agent is obligated to disclose known facts materially affecting the value or desirability of the property to both parties.

**Offers not necessarily confidential:** Buyer is advised that seller or listing agent may disclose the existence, terms, or conditions of buyer's offer unless all parties and their agent have signed a written confidentiality agreement. Whether any such information is actually disclosed depends on many factors, such as current market conditions, the prevailing practice in the real estate community, the listing agent's marketing strategy and the instructions of the seller.

Buyer and seller understand that Broker may represent more than one buyer or more than one seller and even both buyer and seller on the same transaction and consents to such relationships.

**Seller and/or Buyer acknowledges reading and understanding this Possible Representation of More Than One Buyer or Seller - Disclosure and Consent and agrees to the agency possibilities disclosed.**

| | | |
|---|---|---|
| Seller _____ | | Date 3/1/17 |
| Seller _____ | | Date _____ |
| Buyer _Mark Maida_____ | **Mark Maida, and/or assignee** Date 02-27-2017 |
| Buyer _Minem Maida_____ | **Minem Maida, and/or assignee** Date 02-27-2017 |
| Real Estate Broker (Firm) _Shear Realty- Victorville_ | CalBRE Lic # _00978336_ Date _____ |
| By _____ | CalBRE Lic # _01497080_ Date 2-28-17 |
| Bruce D Kallen | |
| Real Estate Broker (Firm) _Shear Realty_ | CalBRE Lic # _00818152_ Date 02/27/2017 |
| By _John Snyder_____ | CalBRE Lic # _01019705_ Date 02/27/2017 |
| John F. Snyder | |

© 2014, California Association of REALTORS®, Inc. United States copyright law (Title 17 U.S. Code) forbids the unauthorized distribution, display and reproduction of this form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats. THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS® (C.A.R.). NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ACCURACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL.
This form is made available to real estate professionals through an agreement with or purchase from the California Association of REALTORS®. It is not intended to identify the user as a REALTOR®. REALTOR® is a registered collective membership mark which may be used only by members of the NATIONAL ASSOCIATION OF REALTORS® who subscribe to its Code of Ethics.

Published and Distributed by:
REAL ESTATE BUSINESS SERVICES, INC.
a subsidiary of the California Association of REALTORS®
525 South Virgil Avenue, Los Angeles, California 90020

| Reviewed by _____ Date _____ |
|---|

**PRBS 11/14 (PAGE 1 OF 1)**
## POSSIBLE REPRESENTATION OF MORE THAN ONE BUYER OR SELLER (PRBS PAGE 1 OF 1)

Shear Realty- AV, 18564 US Highway 18 Ste 205 Apple Valley, CA 92307     Phone: 760.242.7221     Fax: 760.242.7226     Vacant Land
John Snyder     Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026 www.zipLogix.com



# CALIFORNIA ASSOCIATION OF REALTORS®

## DISCLOSURE REGARDING REAL ESTATE AGENCY RELATIONSHIP
### (Selling Firm to Buyer)
### (As required by the Civil Code)
### (C.A.R. Form AD, Revised 12/14)

☐ (If checked) This form is being provided in connection with a transaction for a leasehold interest exceeding one year as per Civil Code section 2079.13(k) and (m).

When you enter into a discussion with a real estate agent regarding a real estate transaction, you should from the outset understand what type of agency relationship or representation you wish to have with the agent in the transaction.

**SELLER'S AGENT**
A Seller's agent under a listing agreement with the Seller acts as the agent for the Seller only. A Seller's agent or a subagent of that agent has the following affirmative obligations:
To the Seller: A fiduciary duty of utmost care, integrity, honesty and loyalty in dealings with the Seller.
To the Buyer and the Seller:
  (a) Diligent exercise of reasonable skill and care in performance of the agent's duties.
  (b) A duty of honest and fair dealing and good faith.
  (c) A duty to disclose all facts known to the agent materially affecting the value or desirability of the property that are not known to, or within the diligent attention and observation of, the parties. An agent is not obligated to reveal to either party any confidential information obtained from the other party that does not involve the affirmative duties set forth above.

**BUYER'S AGENT**
A selling agent can, with a Buyer's consent, agree to act as agent for the Buyer only. In these situations, the agent is not the Seller's agent, even if by agreement the agent may receive compensation for services rendered, either in full or in part from the Seller. An agent acting only for a Buyer has the following affirmative obligations:
To the Buyer: A fiduciary duty of utmost care, integrity, honesty and loyalty in dealings with the Buyer.
To the Buyer and the Seller:
  (a) Diligent exercise of reasonable skill and care in performance of the agent's duties.
  (b) A duty of honest and fair dealing and good faith.
  (c) A duty to disclose all facts known to the agent materially affecting the value or desirability of the property that are not known to, or within the diligent attention and observation of, the parties.
An agent is not obligated to reveal to either party any confidential information obtained from the other party that does not involve the affirmative duties set forth above.

**AGENT REPRESENTING BOTH SELLER AND BUYER**
A real estate agent, either acting directly or through one or more associate licensees, can legally be the agent of both the Seller and the Buyer in a transaction, but only with the knowledge and consent of both the Seller and the Buyer.
In a dual agency situation, the agent has the following affirmative obligations to both the Seller and the Buyer:
  (a) A fiduciary duty of utmost care, integrity, honesty and loyalty in the dealings with either the Seller or the Buyer.
  (b) Other duties to the Seller and the Buyer as stated above in their respective sections.
In representing both Seller and Buyer, the agent may not, without the express permission of the respective party, disclose to the other party that the Seller will accept a price less than the listing price or that the Buyer will pay a price greater than the price offered.
The above duties of the agent in a real estate transaction do not relieve a Seller or Buyer from the responsibility to protect his or her own interests. You should carefully read all agreements to assure that they adequately express your understanding of the transaction. A real estate agent is a person qualified to advise about real estate. If legal or tax advice is desired, consult a competent professional.
Throughout your real property transaction you may receive more than one disclosure form, depending upon the number of agents assisting in the transaction. The law requires each agent with whom you have more than a casual relationship to present you with this disclosure form. You should read its contents each time it is presented to you, considering the relationship between you and the real estate agent in your specific transaction. This disclosure form includes the provisions of Sections 2079.13 to 2079.24, inclusive, of the Civil Code set forth on page 2. Read it carefully. I/WE ACKNOWLEDGE RECEIPT OF A COPY OF THIS DISCLOSURE AND THE PORTIONS OF THE CIVIL CODE PRINTED ON THE BACK (OR A SEPARATE PAGE).

☒ Buyer ☐ Seller ☐ Landlord ☐ Tenant _Mark Maida_ Date 02-27-2017
Mark Maida, and/or assignee

☒ Buyer ☐ Seller ☐ Landlord ☐ Tenant _Mirenn Maida_ Date 02-27-2017
Mirenn Maida, and/or assignee

Agent _Shear Realty_ BRE Lic. # 00818152
Real Estate Broker (Firm)
By _John Snyder_ BRE Lic. # 01019705 Date 02-28-2017
(Salesperson or Broker-Associate) John F. Snyder

Agency Disclosure Compliance (Civil Code §2079.14):
• When the listing brokerage company also represents Buyer/Tenant: The Listing Agent shall have one AD form signed by Seller/Landlord and a different AD form signed by Buyer/Tenant.
• When Seller/Landlord and Buyer/Tenant are represented by different brokerage companies: (i) the Listing Agent shall have one AD form signed by Seller/Landlord and (ii) the Buyer's/Tenant's Agent shall have one AD form signed by Buyer/Tenant and either that same or a different AD form presented to Seller/Landlord for signature prior to presentation of the offer. If the same form is used, Seller may sign here:

_____ 3/1/17 _____ _____
Seller/Landlord Date Seller/Landlord Date

The copyright laws of the United States (Title 17 U.S. Code) forbid the unauthorized reproduction of this form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats.
Copyright © 1991-2010, CALIFORNIA ASSOCIATION OF REALTORS®, INC.
ALL RIGHTS RESERVED.

Reviewed by _____ Date _____



AD REVISED 12/14 (PAGE 1 OF 2)

## DISCLOSURE REGARDING REAL ESTATE AGENCY RELATIONSHIP (AD PAGE 1 OF 2)

Shear Realty- AV, 18564 US Highway 18 Ste 205 Apple Valley, CA 92307          Phone: 760.242.7121          Fax: 760.242.7126          Vacant Land Main
John Snyder                    Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026   www.zipLogix.com

## CIVIL CODE SECTIONS 2079.24 (2079.16 APPEARS ON THE FRONT)

**2079.13** As used in Sections 2079.14 to 2079.24, inclusive, the following terms have the following meanings: (a) "Agent" means a person acting under provisions of Title 9 (commencing with Section 2295) in a real property transaction, and includes a person who is licensed as a real estate broker under Chapter 3 (commencing with Section 10130) of Part 1 of Division 4 of the Business and Professions Code, and under whose license a listing is executed or an offer to purchase is obtained. (b) "Associate licensee" means a person who is licensed as a real estate broker or salesperson under Chapter 3 (commencing with Section 10130) of Part 1 of Division 4 of the Business and Professions Code and who is either licensed under a broker or has entered into a written contract with a broker to act as the broker's agent in connection with acts requiring a real estate license and to function under the broker's supervision in the capacity of an associate licensee. The agent in the real property transaction bears responsibility for his or her associate licensees who perform as agents of the agent. When an associate licensee owes a duty to any principal, or to any buyer or seller who is not a principal, in a real property transaction, that duty is equivalent to the duty owed to that party by the broker for whom the associate licensee functions. (c) "Buyer" means a transferee in a real property transaction, and includes a person who executes an offer to purchase real property from a seller through an agent, or who seeks the services of an agent in more than a casual, transitory, or preliminary manner, with the object of entering into a real property transaction. "Buyer" includes vendee or lessee. (d) "Commercial real property" means all real property in the state, except single-family residential real property, dwelling units made subject to Chapter 2 (commencing with Section 1940) of Title 5, mobilehomes, as defined in Section 798.3, or recreational vehicles, as defined in Section 799.29. (e) "Dual agent" means an agent acting, either directly or through an associate licensee, as agent for both the seller and the buyer in a real property transaction. (f) "Listing agreement" means a contract between an owner of real property and an agent, by which the agent has been authorized to sell the real property or to find or obtain a buyer. (g) "Listing agent" means a person who has obtained a listing of real property to act as an agent for compensation. (h) "Listing price" is the amount expressed in dollars specified in the listing for which the seller is willing to sell the real property through the listing agent. (i) "Offering price" is the amount expressed in dollars specified in an offer to purchase for which the buyer is willing to buy the real property. (j) "Offer to purchase" means a written contract executed by a buyer acting through a selling agent that becomes the contract for the sale of the real property upon acceptance by the seller. (k) "Real property" means any estate specified by subdivision (1) or (2) of Section 761 in property that constitutes or is improved with one to four dwelling units, any commercial real property, any leasehold in these types of property exceeding one year's duration, and mobilehomes, when offered for sale or sold through an agent pursuant to the authority contained in Section 10131.6 of the Business and Professions Code. (l) "Real property transaction" means a transaction for the sale of real property in which an agent is employed by one or more of the principals to act in that transaction, and includes a listing or an offer to purchase. (m) "Sell," "sale," or "sold" refers to a transaction for the transfer of real property from the seller to the buyer, and includes exchanges of real property between the seller and buyer, transactions for the creation of a real property sales contract within the meaning of Section 2985, and transactions for the creation of a leasehold exceeding one year's duration. (n) "Seller" means the transferor in a real property transaction, and includes an owner who lists real property with an agent, whether or not a transfer results, or who receives an offer to purchase real property of which he or she is the owner from an agent on behalf of another. "Seller" includes both a vendor and a lessor. (o) "Selling agent" means a listing agent who acts alone, or an agent who acts in cooperation with a listing agent, and who sells or finds and obtains a buyer for the real property, or an agent who locates property for a buyer or who finds a buyer for a property for which no listing exists and presents an offer to purchase to the seller. (p) "Subagent" means a person to whom an agent delegates agency powers as provided in Article 5 (commencing with Section 2349) of Chapter 1 of Title 9. However, "subagent" does not include an associate licensee who is acting under the supervision of an agent in a real property transaction.

**2079.14** Listing agents and selling agents shall provide the seller and buyer in a real property transaction with a copy of the disclosure form specified in Section 2079.16, and, except as provided in subdivision (c), shall obtain a signed acknowledgement of receipt from that seller or buyer, except as provided in this section or Section 2079.15, as follows: (a) The listing agent, if any, shall provide the disclosure form to the seller prior to entering into the listing agreement. (b) The selling agent shall provide the disclosure form to the seller as soon as practicable prior to presenting the seller with an offer to purchase, unless the selling agent previously provided the seller with a copy of the disclosure form pursuant to subdivision (a). (c) Where the selling agent does not deal on a face-to-face basis with the seller, the disclosure form prepared by the selling agent may be furnished to the seller (and acknowledgement of receipt obtained for the selling agent from the seller) by the listing agent, or the selling agent may deliver the disclosure form by certified mail addressed to the seller at his or her last known address, in which case no signed acknowledgement of receipt is required. (d) The selling agent shall provide the disclosure form to the buyer as soon as practicable prior to execution of the buyer's offer to purchase, except that if the offer to purchase is not prepared by the selling agent, the selling agent shall present the disclosure form to the buyer not later than the next business day after the selling agent receives the offer to purchase from the buyer.

**2079.15** In any circumstance in which the seller or buyer refuses to sign an acknowledgement of receipt pursuant to Section 2079.14, the agent, or an associate licensee acting for an agent, shall set forth, sign, and date a written declaration of the facts of the refusal.

**2079.16** Reproduced on Page 1 of this AD form.

**2079.17** (a) As soon as practicable, the selling agent shall disclose to the buyer and seller whether the selling agent is acting in the real property transaction exclusively as the buyer's agent, exclusively as the seller's agent, or as a dual agent representing both the buyer and the seller. This relationship shall be confirmed in the contract to purchase and sell real property or in a separate writing executed or acknowledged by the seller, the buyer, and the selling agent prior to or coincident with execution of that contract by the buyer and the seller and, except as provided in subdivision (a), the listing agent shall disclose to the seller whether the listing agent is acting in the real property transaction exclusively as the seller's agent, or as a dual agent representing both the buyer and seller. This relationship shall be confirmed in the contract to purchase and sell real property or in a separate writing executed or acknowledged by the seller and the listing agent prior to or coincident with the execution of that contract by the seller.

(c) The confirmation required by subdivisions (a) and (b) shall be in the following form.

| (DO NOT COMPLETE, SAMPLE ONLY) | is the agent of (check one): ☐ the seller exclusively; or ☐ both the buyer and seller. |
| (Name of Listing Agent) | |
| (DO NOT COMPLETE, SAMPLE ONLY) | is the agent of (check one): ☐ the buyer exclusively; or ☐ the seller exclusively; or |
| (Name of Selling Agent if not the same as the Listing Agent) | ☐ both the buyer and seller. |

(d) The disclosures and confirmation required by this section shall be in addition to the disclosure required by Section 2079.14.

**2079.18** No selling agent in a real property transaction may act as an agent for the buyer only, when the selling agent is also acting as the listing agent in the transaction.

**2079.19** The payment of compensation or the obligation to pay compensation to an agent by the seller or buyer is not necessarily determinative of a particular agency relationship between an agent and the seller or buyer. A listing agent and a selling agent may agree to share any compensation or commission paid, or any right to any compensation or commission for which an obligation arises as the result of a real estate transaction, and the terms of any such agreement shall not necessarily be determinative of a particular relationship.

**2079.20** Nothing in this article prevents an agent from selecting, as a condition of the agent's employment, a specific form of agency relationship not specifically prohibited by this article if the requirements of Section 2079.14 and Section 2079.17 are complied with.

**2079.21** A dual agent shall not disclose to the buyer that the seller is willing to sell the property at a price less than the listing price, without the express written consent of the seller. A dual agent shall not disclose to the buyer that the buyer is willing to pay a price greater than the offering price, without the express written consent of the buyer. This section does not alter in any way the duty or responsibility of a dual agent to any principal with respect to confidential information other than price.

**2079.22** Nothing in this article precludes a listing agent from also being a selling agent, and the combination of these functions in one agent does not, of itself, make that agent a dual agent.

**2079.23** A contract between the principal and agent may be modified or altered to change the agency relationship at any time before the performance of the act which is the object of the agency with the written consent of the parties to the agency relationship.

**2079.24** Nothing in this article shall be construed to either diminish the duty of disclosure owed buyers and sellers by agents and their associate licensees, subagents, and employees or to relieve agents and their associate licensees, subagents, and employees from liability for their conduct in connection with acts governed by this article or for any breach of a fiduciary duty or a duty of disclosure.

Published and Distributed by:
**REAL ESTATE BUSINESS SERVICES, INC.**
a subsidiary of the California Association of REALTORS®
525 South Virgil Avenue, Los Angeles, California 90020

| Reviewed by _____ Date _____ |



**AD REVISED 12/14 (PAGE 2 OF 2)**

## DISCLOSURE REGARDING REAL ESTATE AGENCY RELATIONSHIP (AD PAGE 2 OF 2)

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026  www.zipLogix.com    Vacant Land

# COUNTER OFFER

In reference to the "Vacant Land Purchase Agreement" ("Offer") dated February 27, 2017, made by Mark Meida, Minem Maida and/or Their Assignees ("Buyer"), to purchase the real property commonly known as .69 Acres of Land on Main Street, Hesperia, California; Also Known As Assessor's Parcel Number 0410-134-11 the following counter offer is submitted:

(1) Seller is Larry Simons in his capacity as Chapter 7 Trustee for the Bankruptcy Estate of Halo Sports Bar, Case No. 15-14566, Central District, California.

(2) RE #1-D: Buyer is aware that Seller is a bankruptcy trustee selling on behalf of a bankruptcy estate and the <u>sale is subject to overbid and to court approval.</u> "Approval" as used in this Counter Offer means entry of one or more orders by the court approving the sale, including such approval as is necessary to sell the Property free and clear of existing liens and encumbrances and rights of co-owners and any other orders necessary to convey title. It is estimated that the time period for approval is from 30 to 60 days. Close of Escrow shall be 15 days after court approval. This sale is subject to overbid.

(3) RE #3-I: Buyer hereby affirms that Offer is made free and clear of appraisal contingencies of any kind.

(4) RE #7-A(1): The referenced report(s) shall not be obtained at Seller's expense.

(5) RE #9-B: All costs associate with escrow and issuance of Buyer's Policy of Title Insurance shall be the sole responsibility of the Buyer.

(6) RE #12, 13, 14, 17 and All Other Associated Paragraphs: DISCLOSURES, CONDITION OF PROPERTY, ETC. Seller is exempt from all referenced disclosure requirements. Seller is selling and Buyer is purchasing the Property in its present "as is" condition without representation or warranties of any kind. Buyer is not relying on Seller or Seller's agents as to the condition or safety of the Property and/or any improvements thereon, including but not necessarily limited to electrical, plumbing, heating, sewer, roof, air conditioning, foundations, soils and geology, lot size, boundary locations, or suitability of the Property and/or its improvements for particular purposes, or that any components of the Property are in working order, or that improvements are structurally sound and/or in compliance with any city, county, state, and/or federal statutes, codes, or ordinances. Seller will not be obligated to make any changes, alterations, or repairs to the Property. <u>Any reports or corrective work required by Buyer is to be the sole responsibility of Buyer.</u> The closing of the transaction shall constitute acknowledgment by Buyer that the premises are accepted without representation or warranty of any kind and in their present "as is" condition based solely on Buyer's own inspections and investigations. Seller does not warrant existing structures as to habitability or suitability for occupancy. Buyer assumes responsibility to check with appropriate planning authority regarding Buyer's intended use of the Property and agrees to hold Seller and Seller's agents harmless as to Buyer's intended use.

(7) RE #24: COMMISSIONS: All commissions are subject to Bankruptcy Court approval.

(8) RE #27 and 28: These paragraphs are deleted in their entirety. Resolution for any dispute arising out of this agreement shall vested solely in the United States Bankruptcy Court for the Central District of California in Case Number 15-14566.

**OTHER TERMS:** All other terms to remain the same.

**RIGHT TO ACCEPT OTHER OFFERS:** Seller reserves the right to accept any other offers prior to Buyer's written acceptance of this Counter Offer. Acceptance shall not be effective until a copy of this Counter Offer, dated and signed by Buyer, is received by Seller or by Nathan Genovese of RE/MAX Full Spectrum, the Agent of Seller.

**EXPIRATION:** This Counter Offer shall expire unless written acceptance is delivered to Seller or Seller's Agent on or before 5:00 p.m. on March 8, 2016.

Seller _____ Date 3/18/17

Larry Simons, Chapter 7 Trustee
Bankruptcy Estate of Halo Sports Bar
Case No. 15-14566, C.D., CA

**[THIS SPACE INTENTIONALLY LEFT BLANK]**

# ACCEPTANCE

The undersigned Buyer accepts the above Counter Offer:

Buyer _Mark Maida_____ Date 03-10-2017_____

Buyer _Munem Maida_____ Date 03-10-2017_____

Receipt of Acceptance is hereby acknowledged:

DocuSigned by:

Seller _Nathan Genovese [R]_____ Date 3/12/2017_____
C22C4F3800284FA...

RECEIPT ACKNOWLEDGED
BY SELLER'S AUTHORIZED
AGENT


**CHICAGO TITLE COMPANY**

## PRELIMINARY REPORT

**Order No.:** 7101618342-DD
**Property:** 17122 Main Street
Hesperia, CA 92345

*In response to the application for a policy of title insurance referenced herein, **Chicago Title Company** hereby reports that it is prepared to issue, or cause to be issued, as of the date hereof, a policy or policies of title insurance describing the land and the estate or interest therein hereinafter set forth, insuring against loss which may be sustained by reason of any defect, lien or encumbrance not shown or referred to as an exception herein or not excluded from coverage pursuant to the printed Schedules, Conditions and Stipulations or Conditions of said policy forms.*

*The printed Exceptions and Exclusions from the coverage and Limitations on Covered Risks of said policy or policies are set forth in Attachment One. The policy to be issued may contain an arbitration clause. When the Amount of Insurance is less than that set forth in the arbitration clause, all arbitrable matters shall be arbitrated at the option of either the Company or the Insured as the exclusive remedy of the parties. Limitations on Covered Risks applicable to the CLTA and ALTA Homeowner's Policies of Title Insurance which establish a Deductible Amount and a Maximum Dollar Limit of Liability for certain coverages are also set forth in Attachment One. Copies of the policy forms should be read. They are available from the office which issued this report.*

*This report (and any supplements or amendments hereto) is issued solely for the purpose of facilitating the issuance of a policy of title insurance and no liability is assumed hereby. If it is desired that liability be assumed prior to the issuance of a policy of title insurance, a Binder or Commitment should be requested.*

*The policy(ies) of title insurance to be issued hereunder will be policy(ies) of Chicago Title Insurance Company, a Nebraska corporation.*

***Please read the exceptions shown or referred to herein and the exceptions and exclusions set forth in Attachment One of this report carefully. The exceptions and exclusions are meant to provide you with notice of matters which are not covered under the terms of the title insurance policy and should be carefully considered.***

***It is important to note that this preliminary report is not a written representation as to the condition of title and may not list all liens, defects and encumbrances affecting title to the land.***

### Chicago Title Insurance Company

Countersigned By:

By:

_____
Authorized Officer or Agent

_____
President

Attest:

_____
Secretary

Exhibit B - Page 40

*Visit Us on our Website: www.ctic.com*



## CHICAGO TITLE COMPANY

***ISSUING OFFICE:*** 560 E. Hospitality Lane, San Bernardino, CA 92408

***FOR SETTLEMENT INQUIRIES, CONTACT:***
Chicago Title Company
17330 Bear Valley Road, Suite 101 • Victorville, CA 92395
(760)241-8606 • FAX (760)241-8983

## PRELIMINARY REPORT

| | |
|---|---|
| **Title Officer:** Dan Dulin | **Escrow Officer:** Debbie Tarango |
| **Email:** dulind@ctt.com | **Email:** tarangod@ctt.com |
| **Phone No.:** (909)384-7806 | **Phone No.:** (760)241-8606 |
| **Fax No.:** (909)384-7902 | **Fax No.:** (760)241-8983 |
| **Title No.:** 7101618342-DD | **Escrow No.:** 7101618342-DT |

**PROPERTY ADDRESS(ES):** 17122 Main Street, Hesperia, CA

**EFFECTIVE DATE:  October 31, 2016 at 07:30 AM**

The form of policy or policies of title insurance contemplated by this report is:

CLTA Standard Coverage Policy 1990 (04-08-14)

ALTA Loan Policy 2006

1. The estate or interest in the Land hereinafter described or referred to covered by this Report is:

    Fee

2. Title to said estate or interest at the date hereof is vested in:

    Klairis Thanos, a married woman, as her sole and separate property, subject to item nos. 32 & 33

3. The Land referred to in this Report is described as follows:

    **For APN/Parcel ID(s):  0410-134-11-0-000**

    The East ½ Of The East ½ Of The West ½ Of The South ½ Of Parcel C, Block 156, Town Of Hesperia, In The City Of Hesperia, County Of San Bernardino, State Of California, As Per Plat Recorded In Book 12 Of Maps, Page 21, Records Of Said County.

    Except Therefrom All Oil, Gas, Minerals, And Other Hydrocarbon Substances Lying Below The Surface Of Said Land, But With No Right Of Surface Entry, As Provided In Deeds Of Record.

CLTA Preliminary Report Form - Modified (Adopted:  11.17.2006)                    2                    Printed: 11.11.16 @ 11:33 AM
CA-CT-FWIN-02180.055713-SPS-1-16-7101618342

Exhibit B - Page 41

Title No.: 7101618342-DD

**AT THE DATE HEREOF, EXCEPTIONS TO COVERAGE IN ADDITION TO THE PRINTED EXCEPTIONS AND EXCLUSIONS IN SAID POLICY FORM WOULD BE AS FOLLOWS:**

1.  Property taxes, including any personal property taxes and any assessments collected with taxes, are as follows:

    | | |
    |---|---|
    | Tax Identification No.: | 0410-134-11-0-000 |
    | Fiscal Year: | 2016-2017 |
    | 1st Installment: | $2,528.02, unpaid |
    | Penalty: | $252.81 (Due after December 10) |
    | 2nd Installment: | $2,527.99, unpaid |
    | Penalty and Cost: | $262.81 (Due after April 10) |
    | Homeowners Exemption: | $0.00 |
    | Code Area: | 020-090 |

2.  The lien of supplemental or escaped assessments of property taxes, if any, made pursuant to the provisions of Chapter 3.5 (commencing with Section 75) or Part 2, Chapter 3, Articles 3 and 4, respectively, of the Revenue and Taxation Code of the State of California as a result of the transfer of title to the vestee named in Schedule A or as a result of changes in ownership or new construction occurring prior to Date of Policy.

3.  Water rights, claims or title to water, whether or not disclosed by the public records.

4.  Easement(s) for the purpose(s) shown below and rights incidental thereto, as granted in a document:

    | | |
    |---|---|
    | Granted to: | Hesperia Water District |
    | Purpose: | pipelines |
    | Recording Date: | May 25, 1982 |
    | Recording No.: | 82-102472, Official Records |
    | Affects: | the north 7.50 feet of said land |

5.  Easement(s) for the purpose(s) shown below and rights incidental thereto, as granted in a document:

    | | |
    |---|---|
    | Granted to: | County of San Bernardino |
    | Purpose: | road |
    | Recording Date: | April 12, 1983 |
    | Recording No.: | 83-077382, Official Records |
    | Affects: | said land |

6.  Rights of the public to any portion of the Land lying within the area commonly known as

    any public street, road or highway.

7.  The Land described herein is included within a project area of the Redevelopment Agency shown below, and that proceedings for the redevelopment of said project have been instituted under the Redevelopment Law (such redevelopment to proceed only after the adoption of the Redevelopment Plan) as disclosed by a document.

    | | |
    |---|---|
    | Redevelopment Agency: | City of Hesperia |
    | Recording Date: | July 21, 1993 |
    | Recording No.: | 93-310136, Official Records |

CLTA Preliminary Report Form - Modified (Adopted: 11.17.2006)                 3                 Printed: 11.11.16 @ 11:33 AM
CA-CT-FWIN-02180.055713-SPS-1-16-7101618342

Exhibit B - Page 42

Title No.: 7101618342-DD

## EXCEPTIONS
(continued)

8.    A deed of trust to secure an indebtedness in the amount shown below,

Amount:             $370,000.00
Dated:              December 17, 2004
Trustor/Grantor     Halo Sports Bar & Grill, Inc., a California Corporation
Trustee:            North American Title Company, a California Corporation
Beneficiary:        Carl C. Schou and Nellie M. Schou, trustees, or their successors in trust, under The Schou
Family Living Trust, dated June 6, 2002, and any amendments thereto
Recording Date:     March 17, 2005
Recording No.:      2005-0186457, Official Records

This Company will require that the original note, the original deed of trust and a properly executed request for full reconveyance together with appropriate documentation (i.e., copy of trust, partnership agreement or corporate resolution) be in this office prior to the close of this transaction if the above-mentioned item is to be paid through this transaction or deleted from a policy of title insurance.

Any demands submitted to us for payoff must be signed by all beneficiaries as shown on said deed of trust, and/or any assignments thereto. In the event said demand is submitted by an agent of the beneficiary(s), we will require the written approval of the demand by the beneficiary(s). Servicing agreements do not constitute approval for the purposes of this requirement.

If no amounts remain due under the obligation a zero balance demand will be required along with the reconveyance documents.

In addition, we require the written approval of said demand by the trustor(s) on said deed of trust or the current owners if applicable.

A substitution of trustee under said deed of trust which names, as the substituted trustee, the following

Trustee:            S.B.S. Trust Deed Network, a California Corporation
Recording Date:     July 21, 2011
Recording No.:      2011-0295007, Official Records

An agreement to assume the obligation thereof, as provided in the instrument

Executed by:        Halo Sports Bar & Grill, Inc., a California Corporation and Klairis Thanos
Dated:              April 9, 2012
Recording Date:     May 24, 2012
Recording No.:      2012-0203648, Official Records

9.    A deed of trust to secure an indebtedness in the amount shown below,

Amount:             $370,000.00
Dated:              December 17, 2004
Trustor/Grantor     Halo Sports Bar & Grill, Inc., a California Corporation
Trustee:            North American Title Company, a California Corporation
Beneficiary:        Carl C. Schou and Nellie M. Schou, trustees, or their successors in trust, under the Schou
Family Living Trust, dated June 6, 2002, and any amendments thereto
Recording Date:     March 17, 2005
Recording No.:      2005-0186458, Official Records

CLTA Preliminary Report Form - Modified (Adopted: 11.17.2006)                4                Printed: 11.11.16 @ 11:33 AM
CA-CT-FWIN-02180.055713-SPS-1-16-7101618342

Exhibit B - Page 43

Title No.: 7101618342-DD

## EXCEPTIONS
(continued)

This Company will require that the original note, the original deed of trust and a properly executed request for full reconveyance together with appropriate documentation (i.e., copy of trust, partnership agreement or corporate resolution) be in this office prior to the close of this transaction if the above-mentioned item is to be paid through this transaction or deleted from a policy of title insurance.

Any demands submitted to us for payoff must be signed by all beneficiaries as shown on said deed of trust, and/or any assignments thereto. In the event said demand is submitted by an agent of the beneficiary(s), we will require the written approval of the demand by the beneficiary(s). Servicing agreements do not constitute approval for the purposes of this requirement.

If no amounts remain due under the obligation a zero balance demand will be required along with the reconveyance documents.

In addition, we require the written approval of said demand by the trustor(s) on said deed of trust or the current owners if applicable.

A substitution of trustee under said deed of trust which names, as the substituted trustee, the following

Trustee:             S.B.S. Trust Deed Network, a California Corporation
Recording Date:      July 21, 2011
Recording No.:       2011-0295009, Official Records

An agreement to assume the obligation thereof, as provided in the instrument

Executed by:         Halo Sports Bar & Grill, Inc., a California Corporation and Klairis Thanos
Dated:               April 9, 2012
Recording Date:      May 24, 2012
Recording No.:       2012-0203647, Official Records

10.   A lien for unsecured property taxes filed by the tax collector of the county shown, for the amount set forth, and any other amounts due.

County:              San Bernardino
Fiscal Year:         2006
Taxpayer:            Pyrgos Inc.
County ID No.:       0130-033-36-P-001
Amount:              $427.11
Recording Date:      November 19, 2007
Recording No.:       2007-0639578, Official Records

11.   A lien for unsecured property taxes filed by the tax collector of the county shown, for the amount set forth, and any other amounts due.

County:              San Bernardino
Fiscal Year:         2006
Taxpayer:            Pyrgos Inc.
County ID No.:       0133-155-01-P-000
Amount:              $506.32
Recording Date:      November 19, 2007
Recording No.:       2007-0639869, Official Records

Exhibit B - Page 44

Title No.: 7101618342-DD

## EXCEPTIONS
### (continued)

12.    A lien for unsecured property taxes filed by the tax collector of the county shown, for the amount set forth, and any other amounts due.

       County:          San Bernardino
       Fiscal Year:     2007
       Taxpayer:        Pyrgos Inc.
       County ID No.:   0130-033-36-P-001
       Amount:          $472.66
       Recording Date:  November 19, 2008
       Recording No.:   2008-0505185, Official Records

13.    A lien for unsecured property taxes filed by the tax collector of the county shown, for the amount set forth, and any other amounts due.

       County:          San Bernardino
       Fiscal Year:     2007
       Taxpayer:        Pyrgos Inc.
       County ID No.:   0133-155-01-P-000
       Amount:          $562.16
       Recording Date:  November 19, 2008
       Recording No.:   2008-0505433, Official Records

14.    A lien for unsecured property taxes filed by the tax collector of the county shown, for the amount set forth, and any other amounts due.

       County:          San Bernardino
       Fiscal Year:     2007
       Taxpayer:        Halo Sports Bar & Grill Inc.
       County ID No.:   0410-134-11-P-000
       Amount:          $544.69
       Recording Date:  November 19, 2008
       Recording No.:   2008-0513570, Official Records

15.    A lien for unsecured property taxes filed by the tax collector of the county shown, for the amount set forth, and any other amounts due.

       County:          San Bernardino
       Fiscal Year:     2008
       Taxpayer:        Halo Sports Bar & Grill Inc.
       County ID No.:   0410-134-11-P-000
       Amount:          $528.00
       Recording Date:  November 19, 2009
       Recording No.:   2009-0510908, Official Records

16.    A lien for unsecured property taxes filed by the tax collector of the county shown, for the amount set forth, and any other amounts due.

       County:          San Bernardino
       Fiscal Year:     2009
       Taxpayer:        Halo Sports Bar & Grill Inc.
       County ID No.:   0410-134-11-P-000
       Amount:          $445.91
       Recording Date:  November 19, 2009
       Recording No.:   2009-0510909, Official Records

Title No.: 7101618342-DD

## EXCEPTIONS
### (continued)

17.  A lien for unsecured property taxes filed by the tax collector of the county shown, for the amount set forth, and any other amounts due.

| | |
|---|---|
| County: | San Bernardino |
| Fiscal Year: | 2010 |
| Taxpayer: | Halo Sports Bar & Grill Inc. |
| County ID No.: | 0410-134-11-P-000 |
| Amount: | $491.37 |
| Recording Date: | November 18, 2010 |
| Recording No.: | 2010-487007, Official Records |

18.  A lien for unsecured property taxes filed by the tax collector of the county shown, for the amount set forth, and any other amounts due.

| | |
|---|---|
| County: | San Bernardino |
| Fiscal Year: | 2011 |
| Taxpayer: | Halo Sports Bar & Grill Inc. |
| County ID No.: | 0410-134-11-P-000 |
| Amount: | $495.61 |
| Recording Date: | November 15, 2011 |
| Recording No.: | 2011-0479639, Official Records |

19.  A state tax lien for the amount shown and any other amounts due,

| | |
|---|---|
| State ID No.: | BE-1297608 |
| Filed by: | State Board of Equalization |
| Taxpayer: | Santa Cruz Tides Inc., a Corporation  doing business as Rocksclub |
| Amount: | $3,068.25 |
| Recording Date: | August 30, 2012 |
| Recording No.: | 2012-0352289, Official Records |

20.  A state tax lien for the amount shown and any other amounts due,

| | |
|---|---|
| State ID No.: | SR EH 100652629 |
| Filed by: | State Board of Equalization |
| Taxpayer: | Shadowview Corporation a Corporation doing business as T-Zers Sports Bar & Grill |
| Amount: | $3,446.94 |
| Recording Date: | September 14, 2012 |
| Recording No.: | 2012-0378366, Official Records |

21.  A lien for unsecured property taxes filed by the tax collector of the county shown, for the amount set forth, and any other amounts due.

| | |
|---|---|
| County: | San Bernardino |
| Fiscal Year: | 2012 |
| Taxpayer: | Halo Sports Bar & Grill Inc. |
| County ID No.: | 0410-134-11-P-000 |
| Amount: | $493.51 |
| Recording Date: | November 9, 2012 |
| Recording No.: | 2012-0473494, Official Records |

Title No.: 7101618342-DD

## EXCEPTIONS
(continued)

22.    A state tax lien for the amount shown and any other amounts due,

| | |
|---|---|
| State ID No.: | BE-1305661 |
| Filed by: | State Board of Equalization |
| Taxpayer: | Santa Cruz Tides Inc., a Corporation doing business as Rocksclub |
| Amount: | $2,618.47 |
| Recording Date: | February 8, 2013 |
| Recording No.: | 2013-0057898, Official Records |

23.    A lien for unsecured property taxes filed by the tax collector of the county shown, for the amount set forth, and any other amounts due.

| | |
|---|---|
| County: | San Bernardino |
| Fiscal Year: | 2013 |
| Taxpayer: | Shadowview Corp |
| County ID No.: | 0396-235-21-P-001 |
| Amount: | $261.99 |
| Recording Date: | November 14, 2013 |
| Recording No.: | 2013-0493429, Official Records |

24.    A lien for unsecured property taxes filed by the tax collector of the county shown, for the amount set forth, and any other amounts due.

| | |
|---|---|
| County: | San Bernardino |
| Fiscal Year: | 2013 |
| Taxpayer: | Halo Sports Bar & Grill Inc. |
| County ID No.: | 0410-134-11-P-000 |
| Amount: | $500.33 |
| Recording Date: | November 14, 2013 |
| Recording No.: | 2013-0493702, Official Records |

25.    An abstract of judgment for the amount shown below and any other amounts due:

| | |
|---|---|
| Amount: | $4,752.02 |
| Debtor: | Santa Cruz Tides, Inc., a California Corporation dba Rocks Club, DBA Rocksclub; Klairis Thanos aka George Thanos individually |
| Creditor: | Collectronics, Inc. |
| Date entered: | March 17, 2014 |
| County: | San Bernardino |
| Court: | Superior |
| Case No.: | CIVRS 1306962 |
| Recording Date: | May 14, 2014 |
| Recording No.: | 2014-0175198, Official Records |

26.    A state tax lien for the amount shown and any other amounts due,

| | |
|---|---|
| State ID No.: | 14169384021 |
| Filed by: | Franchise Tax Board |
| Taxpayer: | Halo Sports Bar & Grill Inc. dba The Desert Fox |
| Amount: | $72,956.73 |
| Recording Date: | July 1, 2014 |
| Recording No.: | 2014-0236325, Official Records |

CLTA Preliminary Report Form - Modified  (Adopted:  11.17.2006)                    8                    Printed: 11.11.16 @ 11:33 AM
CA-CT-FWIN-02180.055713-SPS-1-16-7101618342

Exhibit B - Page 47

Title No.: 7101618342-DD

## EXCEPTIONS
### (continued)

27.    A lien for unsecured property taxes filed by the tax collector of the county shown, for the amount set forth, and any other amounts due.

| | |
|---|---|
| County: | San Bernardino |
| Fiscal Year: | 2014 |
| Taxpayer: | Halo Sports Bar & Grill Inc.; Rocks Club Sports Bar |
| County ID No.: | 0410-134-11-P-000 |
| Amount: | $499.95 |
| Recording Date: | November 13, 2014 |
| Recording No.: | 2014-0428011, Official Records |

28.    A lien for unsecured property taxes filed by the tax collector of the county shown, for the amount set forth, and any other amounts due.

| | |
|---|---|
| County: | San Bernardino |
| Fiscal Year: | 2014 |
| Taxpayer: | Shadowview Corp |
| County ID No.: | 0396-235-21-P-001 |
| Amount: | $263.13 |
| Recording Date: | November 13, 2014 |
| Recording No.: | 2014-0428590, Official Records |

29.    A state tax lien for the amount shown and any other amounts due,

| | |
|---|---|
| State ID No.: | BE-1349336 |
| Filed by: | State Board of Equalization |
| Taxpayer: | Santa Cruz Tides Inc. a Corporation  doing business as Rocksclub |
| Amount: | $111,799.77 |
| Recording Date: | March 10, 2015 |
| Recording No.: | 2015-0091228, Official Records |

30.    An abstract of judgment for the amount shown below and any other amounts due:

| | |
|---|---|
| Amount: | $1,811.46 |
| Debtor: | Shadowview Corporation, dba Tezzers sports Bar & Grill; Klairis Thanos aka Klairis Thands, aka Klairis Thanopoulos, individually as personal guarantor of Shadowview Corporation |
| Creditor: | Collectronics, Inc. |
| Date entered: | October 21, 2014 |
| County: | San Bernardino |
| Court: | Superior |
| Case No.: | CIVRS 1402556 |
| Recording Date: | April 23, 2015 |
| Recording No.: | 2015-0161436, Official Records |

31.    A state tax lien for the amount shown and any other amounts due,

| | |
|---|---|
| State ID No.: | SR EH 100652629 |
| Filed by: | State Board of Equalization |
| Taxpayer: | Shadowview Corporation a Corporation doing business as T-Zers Sports Bar & Grill |
| Amount: | $2,228.23 |
| Recording Date: | May 1, 2015 |
| Recording No.: | 2015-0178119, Official Records |

Title No.: 7101618342-DD

# EXCEPTIONS
(continued)

32.   Deed as set forth below:

   Grantor:         Klairis Thanos, an unmarried woman
   Grantee:         Halo Sports Bar and Grill, Inc., a California Corporation
   Dated:           May 1, 2015
   Recording Date:  May 4, 2015
   Recording No:    2015-0181545, Official Records

   Any defect or invalidity of the title to the estate or interest of the grantee herein arising out of or occasioned by the
   execution of the above-referenced deed.

   For insurance purposes, the Company will require that an affidavit, executed by the above grantor and
   acknowledged by a notary known to the Company, be submitted to the Company for review and approval in order
   for the Company to show title vested in the above-named grantee.  Said affidavit will be provided by the Company.

   The Company reserves the right to add additional items or make further requirements after review of the
   requested documentation.

33.   Any matters arising out of or by virtue of that certain bankruptcy case:

   Name of Debtor:      Halo Sports Bar & Grill Inc.
   Date of Filing:      May 6, 2015
   U. S. District Court: Central
   State:               California
   Case No.:            6:15-bk-14566-SC
   Chapter:             11
   Attorney:            W. Derek May, Law Offices of Stephen R. Wade, P.C.
   Attorney's Address: 350 W. Fourth Street, Claremont, CA 91711
   Attorney's Phone No.:  909-985-6500

34.   Notice of Pendency of Administrative Proceedings No. CE15-41113, and the lien of any assessment arising
   therefrom by the Department of Building and Safety of the City of Hesperia, in the matter of unlawful or unsafe
   conditions on the herein described Land.

   Property Owner:   Halo Sports Bar & Grill
   Recording Date:   October 8, 2015
   Recording No.:    2015-0440553, Official Records

   Reference is hereby made to said document for full particulars.

35.   A lien for unsecured property taxes filed by the tax collector of the county shown, for the amount set forth, and any
   other amounts due.

   County:           San Bernardino
   Fiscal Year:      2015
   Taxpayer:         Shadowview Corp; Teasers Sports Bar & Grill
   County ID No.:    0396-235-21-P-001
   Amount:           $261.80
   Recording Date:   November 18, 2015
   Recording No.:    2015-0505989, Official Records

---

Title No.: 7101618342-DD

## EXCEPTIONS
(continued)

36.    A state tax lien for the amount shown and any other amounts due,

| | |
|---|---|
| State ID No.: | BE-1364181 |
| Filed by: | State Board of Equalization |
| Taxpayer: | Santa Cruz Tides Inc. a Corporation Rocksclub |
| Amount: | $4,589.68 |
| Recording Date: | February 10, 2016 |
| Recording No.: | 2016-0052406, Official Records |

37.    Notice of Pendency of Administrative Proceedings No. CE16-00106, and the lien of any assessment arising therefrom by the Department of Building and Safety of the City of Hesperia, in the matter of unlawful or unsafe conditions on the herein described Land.

| | |
|---|---|
| Property Owner: | Halo Sports Bar & Grill |
| Recording Date: | March 10, 2016 |
| Recording No.: | 2016-0092645, Official Records |

Reference is hereby made to said document for full particulars.

38.    Notice of Pendency of Administrative Proceedings No. CE13-28932, and the lien of any assessment arising therefrom by the Department of Building and Safety of the County of Hesperia, in the matter of unlawful or unsafe conditions on the herein described Land.

| | |
|---|---|
| Property Owner: | Halo Sports Bank & Grill Inc. |
| Recording Date: | May 18, 2016 |
| Recording No.: | 2016-0194482, Official Records |

Reference is hereby made to said document for full particulars.

39.    A state tax lien for the amount shown and any other amounts due,

| | |
|---|---|
| State ID No.: | G001441725 |
| Filed by: | Employment Development Department |
| Taxpayer: | Shadowview Corporation |
| Amount: | $1,236.90 |
| Recording Date: | August 30, 2016 |
| Recording No.: | 2016-0349664, Official Records |

40.    Any encroachment, encumbrance, violation, variation or adverse circumstance affecting the Title that would be disclosed by an accurate and complete land survey of the land and not shown by the Public Records.

41.    Any rights of the parties in possession of a portion of, or all of, said Land, which rights are not disclosed by the public records.

The Company will require, for review, a full and complete copy of any unrecorded agreement, contract, license and/or lease, together with all supplements, assignments and amendments thereto, before issuing any policy of title insurance without excepting this item from coverage.

The Company reserves the right to except additional items and/or make additional requirements after reviewing said documents.

42.    Matters which may be disclosed by an inspection and/or by a correct ALTA/NSPS Land Title Survey of said Land that is satisfactory to the Company, and/or by inquiry of the parties in possession thereof.

Title No.:  7101618342-DD

**EXCEPTIONS**
(continued)

**END OF EXCEPTIONS**

Exhibit B - Page 51

Title No.: 7101618342-DD

## NOTES

**Note 1.** If a county recorder, title insurance company, escrow company, real estate broker, real estate agent or association provides a copy of a declaration, governing document or deed to any person, California law requires that the document provided shall include a statement regarding any unlawful restrictions. Said statement is to be in at least 14-point bold face type and may be stamped on the first page of any document provided or included as a cover page attached to the requested document. Should a party to this transaction request a copy of any document reported herein that fits this category, the statement is to be included in the manner described.

**Note 2.** If this company is requested to disburse funds in connection with this transaction, Chapter 598, Statutes of 1989 mandates hold periods for checks deposited to escrow or sub-escrow accounts. The mandatory hold period for cashier's checks, certified checks and teller's checks is one business day after the day deposited. Other checks require a hold period of from two to five business days after the day deposited. In the event that the parties to the contemplated transaction wish to record prior to the time that the funds are available for disbursement (and subject to Company approval), the Company will require the prior written consent of the parties. Upon request, a form acceptable to the company authorizing said early recording may be provided to Escrow for execution.

**Note 3.** Any documents being executed in conjunction with this transaction must be signed in the presence of an authorized Company employee, an authorized employee of an agent, an authorized employee of the insured lender, or by using Bancserv or other approved third-party service. If the above requirements cannot be met, please call the company at the number provided in this report.

**Note 4.** The Company will require the following documents for review prior to the issuance of any title insurance predicated upon a conveyance or encumbrance by the corporation named below.

Name of Corporation: Halo Sports Bar and Grill, Inc.

a.  A Copy of the corporation By-laws and Articles of Incorporation.

b.  An original or certified copy of a resolution authorizing the transaction contemplated herein.

c.  If the Articles and/or By-laws require approval by a 'parent' organization, a copy of the Articles and By-laws of the parent.

The Company reserves the right to add additional items or make further requirements after review of the requested documentation.

**Note 5.** Note: The only conveyance(s) affecting said Land, which recorded within 24 months of the date of this report, are as follows:

Grantor:          Klairis Thanos, an unmarried woman
Grantee:          Halo Sports Bar and Grill, Inc., a California Corporation
Recording Date:   May 4, 2015
Recording No.:    2015-0181545, Official Records

**Note 6.** Note: None of the items shown in this report will cause the Company to decline to attach CLTA Endorsement Form 100 to an Extended Coverage Loan Policy, when issued.

**Note 7.** Note: The Company is not aware of any matters which would cause it to decline to attach CLTA Endorsement Form 116 indicating that there is located on said Land a commercial building(s) , known as 17122 Main Street, Hesperia, CA, to an Extended Coverage Loan Policy.

dp

## END OF NOTES

CLTA Preliminary Report Form - Modified (Adopted: 11.17.2006)                    13                    Printed: 11.11.16 @ 11:33 AM
CA-CT-FWIN-02180.055713-SPS-1-16-7101618342

Exhibit B - Page 52

# EXHIBIT "A"
Legal Description

**For APN/Parcel ID(s):  0410-134-11-0-000**

The East ½ Of The East ½ Of The West ½ Of The South ½ Of Parcel C, Block 156, Town Of Hesperia, In The City Of Hesperia, County Of San Bernardino, State Of California, As Per Plat Recorded In Book 12 Of Maps, Page 21, Records Of Said County.

Except Therefrom All Oil, Gas, Minerals, And Other Hydrocarbon Substances Lying Below The Surface Of Said Land, But With No Right Of Surface Entry, As Provided In Deeds Of Record.

CLTA Preliminary Report Form - Modified  (Adopted:  11.17.2006)                    Printed:  11.11.16 @ 11:34 AM
14                    CA-CT-FWIN-02180.055713-SPS-1-16-7101618342

Exhibit B - Page 53

**FIDELITY NATIONAL FINANCIAL, INC.**
**PRIVACY NOTICE**
**Effective: April 1, 2016**

**Order No.:** 7101618342-DT

At Fidelity National Financial, Inc. and its majority-owned subsidiary companies (collectively, "FNF", "our" or "we"), we value the privacy of our customers. This Privacy Notice explains how we collect, use, and protect your information and explains the choices you have regarding that information. A summary of our privacy practices is below. We also encourage you to read the complete Privacy Notice following the summary.

| | |
|---|---|
| **Types of Information Collected.** You may provide us with certain personal information, like your contact information, social security number (SSN), driver's license, other government ID numbers, and/or financial information. We may also receive information from your Internet browser, computer and/or mobile device. | **How Information is Collected.** We may collect personal information directly from you from applications, forms, or communications we receive from you, or from other sources on your behalf, in connection with our provision of products or services to you. We may also collect browsing information from your Internet browser, computer, mobile device or similar equipment. This browsing information is generic and reveals nothing personal about the user. |
| **Use of Your Information.** We may use your information to provide products and services to you (or someone on your behalf), to improve our products and services, and to communicate with you about our products and services. We do not give or sell your personal information to parties outside of FNF for their use to market their products or services to you. | **Security Of Your Information.** We utilize a combination of security technologies, procedures and safeguards to help protect your information from unauthorized access, use and/or disclosure. We communicate to our employees about the need to protect personal information. |
| **Choices With Your Information.** Your decision to submit personal information is entirely up to you. You can opt-out of certain disclosures or use of your information or choose to not provide any personal information to us. | **When We Share Information.** We may disclose your information to third parties providing you products and services on our behalf, law enforcement agencies or governmental authorities, as required by law, and to parties with whom you authorize us to share your information. |
| **Information From Children.** We do not knowingly collect information from children under the age of thirteen (13), and our websites are not intended to attract children. | **Privacy Outside the Website.** We are not responsible for the privacy practices of third parties, even if our website links to those parties' websites. |
| **Access and Correction.** If you desire to see the information collected about you and/or correct any inaccuracies, please contact us in the manner specified in this Privacy Notice. | **Do Not Track Disclosures.** We do not recognize "do not track" requests from Internet browsers and similar devices. |
| **The California Online Privacy Protection Act.** Certain FNF websites collect information on behalf of mortgage loan servicers. The mortgage loan servicer is responsible for taking action or making changes to any consumer information submitted through those websites. | **International Use.** By providing us with your information, you consent to the transfer, processing and storage of such information outside your country of residence, as well as the fact that we will handle such information consistent with this Privacy Notice. |
| **Your Consent To This Privacy Notice.** By submitting information to us and using our websites, you are accepting and agreeing to the terms of this Privacy Notice. | **Contact FNF.** If you have questions or wish to contact us regarding this Privacy Notice, please use the contact information provided at the end of this Privacy Notice. |

## FIDELITY NATIONAL FINANCIAL, INC.
## PRIVACY NOTICE

FNF respects and is committed to protecting your privacy. We pledge to take reasonable steps to protect your Personal Information (as defined herein) and to ensure your information is used in compliance with this Privacy Notice.

This Privacy Notice is only in effect for information collected and/or owned by or on behalf of FNF, including collection through any FNF website or online services offered by FNF (collectively, the "Website"), as well as any information collected offline (e.g., paper documents). The provision of this Privacy Notice to you does not create any express or implied relationship, nor create any express or implied duty or other obligation, between FNF and you.

**Types of Information Collected**
We may collect two (2) types of information: Personal Information and Browsing Information.

*Personal Information.* The types of personal information FNF collects may include, but are not limited to:

- contact information (*e.g.*, name, address, phone number, email address);
- social security number (SSN), driver's license, and other government ID numbers; and
- financial account or loan information.

*Browsing Information.* The types of browsing information FNF collects may include, but are not limited to:

- Internet Protocol (or IP) address or device ID/UDID, protocol and sequence information;
- browser language;
- browser type;
- domain name system requests;
- browsing history;
- number of clicks;
- hypertext transfer protocol headers; and
- application client and server banners.

**How Information is Collected**
In the course of our business, we may collect *Personal Information* about you from the following sources:

- applications or other forms we receive from you or your authorized representative, whether electronic or paper;
- communications to us from you or others;
- information about your transactions with, or services performed by, us, our affiliates or others; and
- information from consumer or other reporting agencies and public records that we either obtain directly from those entities, or from our affiliates or others.

We may collect *Browsing Information* from you as follows:

- Browser Log Files. Our servers automatically log, collect and record certain Browsing Information about each visitor to the Website. The Browsing Information includes only generic information and reveals nothing personal about the user.
- Cookies. From time to time, FNF may send a "cookie" to your computer when you visit the Website. A cookie is a small piece of data that is sent to your Internet browser from a web server and stored on your computer's hard drive. When you visit the Website again, the cookie allows the Website to recognize your computer, with the goal of providing an optimized user experience. Cookies may store user preferences and other information. You can choose not to accept cookies by changing the settings of your Internet browser. If you choose not to accept cookies, then some functions of the Website may not work as intended.

**Use of Collected Information**
Information collected by FNF is used for three (3) main purposes:

- To provide products and services to you, or to one or more third party service providers who are performing services on your behalf or in connection with a transaction involving you;
- To improve our products and services; and
- To communicate with you and to inform you about FNF's products and services.

**When We Share Information**
We may share your Personal Information (excluding information we receive from consumer or other credit reporting agencies) and Browsing Information with certain individuals and companies, as permitted by law, without first obtaining your authorization. Such disclosures may include, without limitation, the following:

- to agents, representatives, or others to provide you with services or products you have requested, and to enable us to detect or prevent criminal activity, fraud, or material misrepresentation or nondisclosure;
- to third-party contractors or service providers who provide services or perform other functions on our behalf;
- to law enforcement or other governmental authority in connection with an investigation, or civil or criminal subpoenas or court orders; and/or
- to other parties authorized to receive the information in connection with services provided to you or a transaction involving you.

Exhibit B - Page 55

We may disclose Personal Information and/or Browsing Information when required by law or in the good-faith belief that such disclosure is necessary to:

- comply with a legal process or applicable laws;
- enforce this Privacy Notice;
- investigate or respond to claims that any information provided by you violates the rights of a third party; or
- protect the rights, property or personal safety of FNF, its users or the public.

We make efforts to ensure third party contractors and service providers who provide services or perform functions on our behalf protect your information. We limit use of your information to the purposes for which the information was provided. We do not give or sell your information to third parties for their own direct marketing use.

We reserve the right to transfer your Personal Information, Browsing Information, as well as any other information, in connection with the sale or other disposition of all or part of the FNF business and/or assets, or in the event of our bankruptcy, reorganization, insolvency, receivership or an assignment for the benefit of creditors. You expressly agree and consent to the use and/or transfer of this information in connection with any of the above described proceedings. We cannot and will not be responsible for any breach of security by any third party or for any actions of any third party that receives any of the information that is disclosed to us.

### Choices With Your Information
Whether you submit your information to FNF is entirely up to you. If you decide not to submit your information, FNF may not be able to provide certain products or services to you. You may choose to prevent FNF from using your information under certain circumstances ("opt out"). You may opt out of receiving communications from us about our products and/or services.

### Security And Retention Of Information
FNF is committed to protecting the information you share with us and utilizes a combination of security technologies, procedures and safeguards to help protect it from unauthorized access, use and/or disclosure. FNF trains its employees on privacy practices and on FNF's privacy and information security policies. FNF works hard to retain information related to you only as long as reasonably necessary for business and/or legal purposes.

### Information From Children
The Website is meant for adults. The Website is not intended or designed to attract children under the age of thirteen (13). We do not collect Personal Information from any person that we know to be under the age of thirteen (13) without permission from a parent or guardian.

### Access and Correction
To access your Personal Information in the possession of FNF and correct inaccuracies, please contact us by email at privacy@fnf.com or by mail at:

Fidelity National Financial, Inc.
601 Riverside Avenue
Jacksonville, Florida 32204
Attn: Chief Privacy Officer

### Your Consent To This Privacy Notice
By submitting Personal Information and/or Browsing Information to FNF, you consent to the collection and use of information by FNF in compliance with this Privacy Notice. We reserve the right to make changes to this Privacy Notice. If we change this Privacy Notice, we will post the revised version on the Website.

### Privacy Outside the Website
The Website may contain links to other websites, including links to websites of third party service providers. FNF is not and cannot be responsible for the privacy practices or the content of any of those other websites.

### International Users
Because FNF's headquarters is located in the United States, we may transfer your Personal Information and/or Browsing Information to the United States. By using our website and providing us with your Personal Information and/or Browsing Information, you understand and consent to the transfer, processing and storage of such information outside your country of residence, as well as the fact that we will handle such information consistent with this Privacy Notice.

### Do Not Track Disclosures
Currently, our policy is that we do not recognize "do not track" requests from Internet browsers and similar devices.

### The California Online Privacy Protection Act
For some websites which FNF or one of its companies owns, such as the Customer CareNet ("CCN"), FNF is acting as a third party service provider to a mortgage loan servicer. In those instances, we may collect certain information on behalf of that mortgage loan servicer, including:

- first and last name;
- property address;
- user name and password;
- loan number;
- social security number - masked upon entry;
- email address;
- security questions and answers; and
- IP address.

The information you submit is then transferred to your mortgage loan servicer by way of CCN. **The mortgage loan servicer is responsible for taking action or making changes to any consumer information submitted through this website. For example, if you believe that your payment or user information is incorrect, you must contact your mortgage loan servicer.**

CCN does not share consumer information with third parties, other than those with which the mortgage loan servicer has contracted to interface with the CCN application. All sections of this Privacy Notice apply to your interaction with CCN, except for the sections titled Choices With Your Information, and Access and Correction. If you have questions regarding the choices you have with regard to your personal information or how to access or correct your personal information, contact your mortgage loan servicer.

### Contact FNF
Please send questions and/or comments related to this Privacy Notice by email at privacy@fnf.com or by mail at:

Fidelity National Financial, Inc.
601 Riverside Avenue
Jacksonville, Florida 32204
Attn: Chief Privacy Officer

Copyright © 2016. Fidelity National Financial, Inc.
All Rights Reserved.

EFFECTIVE AS OF APRIL 1, 2016

# ATTACHMENT ONE

### CALIFORNIA LAND TITLE ASSOCIATION
### STANDARD COVERAGE POLICY - 1990

### EXCLUSIONS FROM COVERAGE

The following matters are expressly excluded from the coverage of this policy and the Company will not pay loss or damage, costs, attorneys' fees or expenses which arise by reason of:

1.   (a)   Any law, ordinance or governmental regulation (including but not limited to building or zoning laws, ordinances, or regulations) restricting, regulating, prohibiting or relating (i) the occupancy, use, or enjoyment of the land; (ii) the character, dimensions or location of any improvement now or hereafter erected on the land; (iii) a separation in ownership or a change in the dimensions or area of the land or any parcel of which the land is or was a part; or (iv) environmental protection, or the effect of any violation of these laws, ordinances or governmental regulations, except to the extent that a notice of the enforcement thereof or a notice of a defect, lien, or encumbrance resulting from a violation or alleged violation affecting the land has been recorded in the public records at Date of Policy.

      (b)   Any governmental police power not excluded by (a) above, except to the extent that a notice of the exercise thereof or notice of a defect, lien or encumbrance resulting from a violation or alleged violation affecting the land has been recorded in the public records at Date of Policy.

2.   Rights of eminent domain unless notice of the exercise thereof has been recorded in the public records at Date of Policy, but not excluding from coverage any taking which has occurred prior to Date of Policy which would be binding on the rights of a purchaser for value without knowledge.

3.   Defects, liens, encumbrances, adverse claims or other matters:

      (a)   whether or not recorded in the public records at Date of Policy, but created, suffered, assumed or agreed to by the insured claimant;

      (b)   not known to the Company, not recorded in the public records at Date of Policy, but known to the insured claimant and not disclosed in writing to the Company by the insured claimant prior to the date the insured claimant became an insured under this policy;

      (c)   resulting in no loss or damage to the insured claimant;

      (d)   attaching or created subsequent to Date of Policy; or

      (e)   resulting in loss or damage which would not have been sustained if the insured claimant had paid value for the insured mortgage or for the estate or interest insured by this policy.

4.   Unenforceability of the lien of the insured mortgage because of the inability or failure of the insured at Date of Policy, or the inability or failure of any subsequent owner of the indebtedness, to comply with the applicable doing business laws of the state in which the land is situated.

5.   Invalidity or unenforceability of the lien of the insured mortgage, or claim thereof, which arises out of the transaction evidenced by the insured mortgage and is based upon usury or any consumer credit protection or truth in lending law.

6.   Any claim, which arises out of the transaction vesting in the insured the estate or interest insured by this policy or the transaction creating the interest of the insured lender, by reason of the operation of federal bankruptcy, state insolvency or similar creditors' rights laws.

### EXCEPTIONS FROM COVERAGE - SCHEDULE B, PART I

This policy does not insure against loss or damage (and the Company will not pay costs, attorneys' fees or expenses) which arise by reason of:

1.   Taxes or assessments which are not shown as existing liens by the records of any taxing authority that levies taxes or assessments on real property or by the public records.

      Proceedings by a public agency which may result in taxes or assessments, or notices of such proceedings, whether or not shown by the records of such agency or by the public records.

2.   Any facts, rights, interests, or claims which are not shown by the public records but which could be ascertained by an inspection of the land or which may be asserted by persons in possession thereof.

3.   Easements, liens or encumbrances, or claims thereof, not shown by the public records.

4.   Discrepancies, conflicts in boundary lines, shortage in area, encroachments, or any other facts which a correct survey would disclose, and which are not shown by the public records.

5.   (a) Unpatented mining claims; (b) reservations or exceptions in patents or in Acts authorizing the issuance thereof; (c) water rights, claims or title to water, whether or not the matters excepted under (a), (b) or (c) are shown by the public records.

6.   Any lien or right to a lien for services, labor or material not shown by the public records.

## ATTACHMENT ONE
### (CONTINUED)

### CLTA HOMEOWNER'S POLICY OF TITLE INSURANCE (12-02-13)
### ALTA HOMEOWNER'S POLICY OF TITLE INSURANCE

### EXCLUSIONS

In addition to the Exceptions in Schedule B, You are not insured against loss, costs, attorneys' fees, and expenses resulting from:

1.  Governmental police power, and the existence or violation of those portions of any law or government regulation concerning:
    a.  building;
    b.  zoning;
    c.  land use;
    d.  improvements on the Land;
    e.  land division; and
    f.  environmental protection.
    This Exclusion does not limit the coverage described in Covered Risk 8.a., 14, 15, 16, 18, 19, 20, 23 or 27.
2.  The failure of Your existing structures, or any part of them, to be constructed in accordance with applicable building codes. This Exclusion does not limit the coverage described in Covered Risk 14 or 15.
3.  The right to take the Land by condemning it. This Exclusion does not limit the coverage described in Covered Risk 17.
4.  Risks:
    a.  that are created, allowed, or agreed to by You, whether or not they are recorded in the Public Records;
    b.  that are Known to You at the Policy Date, but not to Us, unless they are recorded in the Public Records at the Policy Date;
    c.  that result in no loss to You; or
    d.  that first occur after the Policy Date - this does not limit the coverage described in Covered Risk 7, 8.e., 25, 26, 27 or 28.
5.  Failure to pay value for Your Title.
6.  Lack of a right:
    a.  to any land outside the area specifically described and referred to in paragraph 3 of Schedule A; and
    b.  in streets, alleys, or waterways that touch the Land.
    This Exclusion does not limit the coverage described in Covered Risk 11 or 21.
7.  The transfer of the Title to You is invalid as a preferential transfer or as a fraudulent transfer or conveyance under federal bankruptcy, state insolvency, or similar creditors' rights laws.
8.  Contamination, explosion, fire, flooding, vibration, fracturing, earthquake or subsidence.
9.  Negligence by a person or an Entity exercising a right to extract or develop minerals, water, or any other substances.

### LIMITATIONS ON COVERED RISKS

Your insurance for the following Covered Risks is limited on the Owner's Coverage Statement as follows:
*   For Covered Risk 16, 18, 19 and 21, Your Deductible Amount and Our Maximum Dollar Limit of Liability shown in Schedule A.

The deductible amounts and maximum dollar limits shown on Schedule A are as follows:

|  | Your Deductible Amount | Our Maximum Dollar Limit of Liability |
|---|---|---|
| Covered Risk 16: | 1.00% of Policy Amount Shown in Schedule A<br>or<br>$2,500.00<br>(whichever is less) | $ 10,000.00 |
| Covered Risk 18: | 1.00% of Policy Amount Shown in Schedule A<br>or<br>$5,000.00<br>(whichever is less) | $ 25,000.00 |
| Covered Risk 19: | 1.00% of Policy Amount Shown in Schedule A<br>or<br>$5,000.00<br>(whichever is less) | $ 25,000.00 |
| Covered Risk 21: | 1.00% of Policy Amount Shown in Schedule A<br>or<br>$2,500.00<br>(whichever is less) | $ 5,000.00 |

# ATTACHMENT ONE
## (CONTINUED)

### 2006 ALTA LOAN POLICY (06-17-06)

### EXCLUSIONS FROM COVERAGE

The following matters are expressly excluded from the coverage of this policy, and the Company will not pay loss or damage, costs, attorneys' fees, or expenses that arise by reason of:

1. (a) Any law, ordinance, permit, or governmental regulation (including those relating to building and zoning) restricting, regulating, prohibiting, or relating to
    (i) the occupancy, use, or enjoyment of the Land;
    (ii) the character, dimensions, or location of any improvement erected on the Land;
    (iii) the subdivision of land; or
    (iv) environmental protection;
    or the effect of any violation of these laws, ordinances, or governmental regulations. This Exclusion 1(a) does not modify or limit the coverage provided under Covered Risk 5.
    (b) Any governmental police power. This Exclusion 1(b) does not modify or limit the coverage provided under Covered Risk 6.
2. Rights of eminent domain. This Exclusion does not modify or limit the coverage provided under Covered Risk 7 or 8.
3. Defects, liens, encumbrances, adverse claims, or other matters
    (a) created, suffered, assumed, or agreed to by the Insured Claimant;
    (b) not Known to the Company, not recorded in the Public Records at Date of Policy, but Known to the Insured Claimant and not disclosed in writing to the Company by the Insured Claimant prior to the date the Insured Claimant became an Insured under this policy;
    (c) resulting in no loss or damage to the Insured Claimant;
    (d) attaching or created subsequent to Date of Policy (however, this does not modify or limit the coverage provided under Covered Risk 11, 13, or 14); or
    (e) resulting in loss or damage that would not have been sustained if the Insured Claimant had paid value for the Insured Mortgage.
4. Unenforceability of the lien of the Insured Mortgage because of the inability or failure of an Insured to comply with applicable doing-business laws of the state where the Land is situated.
5. Invalidity or unenforceability in whole or in part of the lien of the Insured Mortgage that arises out of the transaction evidenced by the Insured Mortgage and is based upon usury or any consumer credit protection or truth-in-lending law.
6. Any claim, by reason of the operation of federal bankruptcy, state insolvency, or similar creditors' rights laws, that the transaction creating the lien of the Insured Mortgage, is
    (a) a fraudulent conveyance or fraudulent transfer, or
    (b) a preferential transfer for any reason not stated in Covered Risk 13(b) of this policy.
7. Any lien on the Title for real estate taxes or assessments imposed by governmental authority and created or attaching between Date of Policy and the date of recording of the Insured Mortgage in the Public Records. This Exclusion does not modify or limit the coverage provided under Covered Risk 11(b).

The above policy form may be issued to afford either Standard Coverage or Extended Coverage. In addition to the above Exclusions from Coverage, the Exceptions from Coverage in a Standard Coverage policy will also include the following Exceptions from Coverage:

### EXCEPTIONS FROM COVERAGE

[Except as provided in Schedule B - Part II,[ t[or T]his policy does not insure against loss or damage, and the Company will not pay costs, attorneys' fees, or expenses that arise by reason of:

#### [PART I

[The above policy form may be issued to afford either Standard Coverage or Extended Coverage. In addition to the above Exclusions from Coverage, the Exceptions from Coverage in a Standard Coverage policy will also include the following Exceptions from Coverage:

1. (a) Taxes or assessments that are not shown as existing liens by the records of any taxing authority that levies taxes or assessments on real property or by the Public Records; (b) proceedings by a public agency that may result in taxes or assessments, or notices of such proceedings, whether or not shown by the records of such agency or by the Public Records.
2. Any facts, rights, interests, or claims that are not shown by the Public Records but that could be ascertained by an inspection of the Land or that may be asserted by persons in possession of the Land.
3. Easements, liens or encumbrances, or claims thereof, not shown by the Public Records.
4. Any encroachment, encumbrance, violation, variation, or adverse circumstance affecting the Title that would be disclosed by an accurate and complete land survey of the Land and not shown by the Public Records.
5. (a) Unpatented mining claims; (b) reservations or exceptions in patents or in Acts authorizing the issuance thereof; (c) water rights, claims or title to water, whether or not the matters excepted under (a), (b), or (c) are shown by the Public Records.
6. Any lien or right to a lien for services, labor or material not shown by the Public Records.]

#### PART II

In addition to the matters set forth in Part I of this Schedule, the Title is subject to the following matters, and the Company insures against loss or damage sustained in the event that they are not subordinate to the lien of the Insured Mortgage:]

# ATTACHMENT ONE
## (CONTINUED)

### 2006 ALTA OWNER'S POLICY (06-17-06)
### EXCLUSIONS FROM COVERAGE

The following matters are expressly excluded from the coverage of this policy, and the Company will not pay loss or damage, costs, attorneys' fees, or expenses that arise by reason of:

1.  (a)  Any law, ordinance, permit, or governmental regulation (including those relating to building and zoning) restricting, regulating, prohibiting, or relating to

    (i)    the occupancy, use, or enjoyment of the Land;

    (ii)   the character, dimensions, or location of any improvement erected on the Land;

    (iii)  the subdivision of land; or

    (iv)   environmental protection;

    or the effect of any violation of these laws, ordinances, or governmental regulations.  This Exclusion 1(a) does not modify or limit the coverage provided under Covered Risk 5.

    (b)  Any governmental police power.  This Exclusion 1(b) does not modify or limit the coverage provided under Covered Risk 6.

2.  Rights of eminent domain.  This Exclusion does not modify or limit the coverage provided under Covered Risk 7 or 8.

3.  Defects, liens, encumbrances, adverse claims, or other matters

    (a)  created, suffered, assumed, or agreed to by the Insured Claimant;

    (b)  not Known to the Company, not recorded in the Public Records at Date of Policy, but Known to the Insured Claimant and not disclosed in writing to the Company by the Insured Claimant prior to the date the Insured Claimant became an Insured under this policy;

    (c)  resulting in no loss or damage to the Insured Claimant;

    (d)  attaching or created subsequent to Date of Policy (however, this does not modify or limit the coverage provided under Covered Risk 9 and 10); or

    (e)  resulting in loss or damage that would not have been sustained if the Insured Claimant had paid value for the Title.

4.  Any claim, by reason of the operation of federal bankruptcy, state insolvency, or similar creditors' rights laws, that the transaction vesting the Title as shown in Schedule A, is

    (a)  a fraudulent conveyance or fraudulent transfer; or

    (b)  a preferential transfer for any reason not stated in Covered Risk 9 of this policy.

5.  Any lien on the Title for real estate taxes or assessments imposed by governmental authority and created or attaching between Date of Policy and the date of recording of the deed or other instrument of transfer in the Public Records that vests Title as shown in Schedule A.

The above policy form may be issued to afford either Standard Coverage or Extended Coverage.  In addition to the above Exclusions from Coverage, the Exceptions from Coverage in a Standard Coverage policy will also include the following Exceptions from Coverage:

### EXCEPTIONS FROM COVERAGE

This policy does not insure against loss or damage, and the Company will not pay costs, attorneys' fees, or expenses that arise by reason of:

[The above policy form may be issued to afford either Standard Coverage or Extended Coverage.  In addition to the above Exclusions from Coverage, the Exceptions from Coverage in a Standard Coverage policy will also include the following Exceptions from Coverage:

1.  (a) Taxes or assessments that are not shown as existing liens by the records of any taxing authority that levies taxes or assessments on real property or by the Public Records; (b) proceedings by a public agency that may result in taxes or assessments, or notices of such proceedings, whether or not shown by the records of such agency or by the Public Records.

2.  Any facts, rights, interests, or claims that are not shown by the Public Records but that could be ascertained by an inspection of the Land or that may be asserted by persons in possession of the Land.

3.  Easements, liens or encumbrances, or claims thereof, not shown by the Public Records.

4.  Any encroachment, encumbrance, violation, variation, or adverse circumstance affecting the Title that would be disclosed by an accurate and complete land survey of the Land and not shown by the Public Records.

5.  (a) Unpatented mining claims; (b) reservations or exceptions in patents or in Acts authorizing the issuance thereof; (c) water rights, claims or title to water, whether or not the matters excepted under (a), (b), or (c) are shown by the Public Records.

6.  Any lien or right to a lien for services, labor or material not shown by the Public Records.]

7.  [Variable exceptions such as taxes, easements, CC&R's, etc., shown here.]

# ATTACHMENT ONE
## (CONTINUED)

### ALTA EXPANDED COVERAGE RESIDENTIAL LOAN POLICY - ASSESSMENTS PRIORITY (04-02-15)

### EXCLUSIONS FROM COVERAGE

The following matters are expressly excluded from the coverage of this policy and the Company will not pay loss or damage, costs, attorneys' fees or expenses which arise by reason of:

1.  (a)  Any law, ordinance, permit, or governmental regulation (including those relating to building and zoning) restricting, regulating, prohibiting, or relating to

    (i)  the occupancy, use, or enjoyment of the Land;

    (ii)  the character, dimensions, or location of any improvement erected on the Land;

    (iii)  the subdivision of land; or

    (iv)  environmental protection;

    or the effect of any violation of these laws, ordinances, or governmental regulations.  This Exclusion 1(a) does not modify or limit the coverage provided under Covered Risk 5, 6, 13(c), 13(d), 14 or 16.

    (b)  Any governmental police power.  This Exclusion 1(b) does not modify or limit the coverage provided under Covered Risk 5, 6, 13(c), 13(d), 14 or 16.

2.  Rights of eminent domain.  This Exclusion does not modify or limit the coverage provided under Covered Risk 7 or 8.

3.  Defects, liens, encumbrances, adverse claims, or other matters

    (a)  created, suffered, assumed, or agreed to by the Insured Claimant;

    (b)  not Known to the Company, not recorded in the Public Records at Date of Policy, but Known to the Insured Claimant and not disclosed in writing to the Company by the Insured Claimant prior to the date the Insured Claimant became an Insured under this policy;

    (c)  resulting in no loss or damage to the Insured Claimant;

    (d)  attaching or created subsequent to Date of Policy (however, this does not modify or limit the coverage provided under Covered Risk 11, 16, 17, 18, 19, 20, 21, 22, 23, 24, 27 or 28); or

    (e)  resulting in loss or damage that would not have been sustained if the Insured Claimant had paid value for the Insured Mortgage.

4.  Unenforceability of the lien of the Insured Mortgage because of the inability or failure of an Insured to comply with applicable doing-business laws of the state where the Land is situated.

5.  Invalidity or unenforceability in whole or in part of the lien of the Insured Mortgage that arises out of the transaction evidenced by the Insured Mortgage and is based upon usury, or any consumer credit protection or truth-in-lending law.  This Exclusion does not modify or limit the coverage provided in Covered Risk 26.

6.  Any claim of invalidity, unenforceability or lack of priority of the lien of the Insured Mortgage as to Advances or modifications made after the Insured has Knowledge that the vestee shown in Schedule A is no longer the owner of the estate or interest covered by this policy.  This Exclusion does not modify or limit the coverage provided in Covered Risk 11.

7.  Any lien on the Title for real estate taxes or assessments imposed by governmental authority and created or attaching subsequent to Date of Policy.  This Exclusion does not modify or limit the coverage provided in Covered Risk 11(b) or 25.

8.  The failure of the residential structure, or any portion of it, to have been constructed before, on or after Date of Policy in accordance with applicable building codes.  This Exclusion does not modify or limit the coverage provided in Covered Risk 5 or 6.

9.  Any claim, by reason of the operation of federal bankruptcy, state insolvency, or similar creditors' rights laws, that the transaction creating the lien of the Insured Mortgage, is

    (a)  a fraudulent conveyance or fraudulent transfer, or

    (b)  a preferential transfer for any reason not stated in Covered Risk 27(b) of this policy.

10.  Contamination, explosion, fire, flooding, vibration, fracturing, earthquake, or subsidence.

11.  Negligence by a person or an Entity exercising a right to extract or develop minerals, water, or any other substances.

## Notice of Available Discounts

Pursuant to Section 2355.3 in Title 10 of the California Code of Regulations Fidelity National Financial, Inc. and its subsidiaries ("FNF") must deliver a notice of each discount available under our current rate filing along with the delivery of escrow instructions, a preliminary report or commitment. Please be aware that the provision of this notice does not constitute a waiver of the consumer's right to be charged the filed rate. As such, your transaction may not qualify for the below discounts.

You are encouraged to discuss the applicability of one or more of the below discounts with a Company representative. These discounts are generally described below; consult the rate manual for a full description of the terms, conditions and requirements for such discount. These discounts only apply to transactions involving services rendered by the FNF Family of Companies. This notice only applies to transactions involving property improved with a one-to-four family residential dwelling.

Not all discounts are offered by every FNF Company. The discount will only be applicable to the FNF Company as indicated by the named discount.

**FNF Underwritten Title Companies**
CTC - Chicago Title Company

**Underwritten by FNF Underwriters**
CTIC - Chicago Title Insurance Company

**Available Discounts**

**CREDIT FOR PRELIMINARY TITLE REPORTS AND/OR COMMITMENTS ON SUBSEQUENT POLICIES (CTIC)**
Where no major change in the title has occurred since the issuance of the original report or commitment, the order may be reopened within 12 to 36 months and all or a portion of the charge previously paid for the report or commitment may be credited on a subsequent policy charge.

**FEE REDUCTION SETTLEMENT PROGRAM (CTC, CTIC)**
Eligible customers shall receive a $20.00 reduction in their title and/or escrow fees charged by the Company for each eligible transaction in accordance with the terms of the Final Judgments entered in *The People of the State of California et al. v. Fidelity National Title Insurance Company et al.,* Sacramento Superior Court Case No. 99AS02793, and related cases.

**DISASTER LOANS (CTIC)**
The charge for a Lender's Policy (Standard or Extended coverage) covering the financing or refinancing by an owner of record, within 24 months of the date of a declaration of a disaster area by the government of the United States or the State of California on any land located in said area, which was partially or totally destroyed in the disaster, will be 50% of the appropriate title insurance rate.

**CHURCHES OR CHARITABLE NON-PROFIT ORGANIZATIONS (CTIC)**
On properties used as a church or for charitable purposes within the scope of the normal activities of such entities, provided said charge is normally the church's obligation the charge for an owner's policy shall be 50% to 70% of the appropriate title insurance rate, depending on the type of coverage selected. The charge for a lender's policy shall be 32% to 50% of the appropriate title insurance rate, depending on the type of coverage selected.



This map/plat is being furnished as an aid in locating the herein described Land in relation to adjoining streets, natural boundaries and other land, and is not a survey of the land depicted. Except to the extent a policy of title insurance is expressly modified by endorsement, if any, the Company does not insure dimensions, distances, location of easements, acreage or other matters shown thereon.

**Scott Noskin**

| | |
|---|---|
| **From:** | Alan Nahmias |
| **Sent:** | Friday, November 18, 2016 12:33 PM |
| **To:** | 'bglaser@swesq.com' |
| **Cc:** | 'Larry Simons'; 'bktrusteerealestate@gmail.com' |
| **Subject:** | Halo / Thanos / County of San Bernardino |
| **Attachments:** | Halo Preliminary Title Report San Bernardino Tax Liens (00430922xB7A71).pdf |

Barry -

I hope this letter finds you well.

As you will recall, I represent Larry Simons, the Chapter 7 Trustee in the Halo Sports Bar and Grill matter. After fully satisfying your client's property tax liens secured by the 17122 Main Street, Hesperia, California 92345 property and settling the Estate's claims against the insurance company, the estate is now about to enter into escrow for the sale of the subject property.

Attached is a copy of the Preliminary Title Report just provided by the estate's broker which indicates that fifteen liens recorded in favor of the County of San Bernardino remain of record against the property. It would be of great assistance to the estate, as well as helping to keep legal fees to a minimum, if you could arrange with the County to have each of these liens released so that they no longer remain clouds on title.

As we are entering escrow within the next week, with the date varying based upon the upcoming Thanksgiving holiday, I would appreciate your getting back to me by Tuesday or Wednesday of next week with a preliminary response as to whether your client is agreeable to providing this assistance, and if so, what the time frame for accomplishing this request will be.

Thank you for taking the time to look into this matter.

Best for the upcoming holidays and beyond.

Alan



Alan I. Nahmias
Mirman, Bubman & Nahmias LLP
21860 Burbank Boulevard, Suite 360
Woodland Hills, California 91367-7406
Tel. No.: (818) 995-2555 (direct)
Fax No.: (818) 451-4620
Cell No.: (818) 314-6200
anahmias@mbnlawyers.com
www.mbnlawyers.com

Confidentiality Notice: The information contained in this transmittal, and any attachments thereto, is confidential, and may also be privileged. It is intended only for the use of the individual or entity to whom it is addressed. If you have received this in error, please notify us by email, telecopier or telephone, and delete this transmittal from your computer.

1

Exhibit C - Page 64

**Jackie Dale**

| | |
|---|---|
| **From:** | Barry S. Glaser <bglaser@swesq.com> |
| **Sent:** | Tuesday, November 22, 2016 1:39 PM |
| **To:** | Alan Nahmias |
| **Cc:** | Larry Simons; bktrusteerealestate@gmail.com |
| **Subject:** | FW: Halo / Thanos / County of San Bernardino Subject to FRE 408 |
| **Attachments:** | DOC112216-11222016134858.pdf |

Alan,

I have discussed the situation with the County and they have determined that 12 out of the 15 liens have been released, but it is the Trustee's responsibility to have the lien releases recorded. Also, 3 of the liens are still outstanding and have to be paid prior to the close of escrow.

In order for the County to reissue the "release of liens" the Trustee or the title company must pay a duplication release fee of $9.00 per release.

Attached above is a copy of the title report regarding the status for each lien.

Let me know if you have any questions.

Best for the Thanksgiving Holiday.

Barry


Barry S. Glaser
Direct: (213) 687-7521
www.SWESQ.com

 STECKBAUER
WEINHART, LLP

333 South Hope Street, 36th Floor
Los Angeles, California 90071
Phone: 213.229.2868 Fax: 213.229.2870

This email communication may contain CONFIDENTIAL INFORMATION WHICH ALSO MAY BE LEGALLY PRIVILEGED and is intended only for the use of the intended recipients identified above. If you are not the intended recipient of this communication, you are hereby notified that any unauthorized review, use, dissemination, distribution, downloading, or copying of this communication is strictly prohibited. If you are not the intended recipient and have received this communication in error, please immediately notify us by reply email, delete the communication and destroy all copies.

IRS CIRCULAR 230 NOTICE: To ensure compliance with requirements imposed by the Internal Revenue Service, we inform you that any U.S. tax advice contained in this communication (or in any attachment) is not intended or written to be used, and cannot be used, for the purpose of (i) avoiding penalties under the Internal Revenue Code or (ii) promoting, marketing or recommending to another party any transaction or matter addressed in this communication (or in any attachment).

Exhibit C - Page 65

Title No.: 7101618342-DD

## EXCEPTIONS
### (continued)

This Company will require that the original note, the original deed of trust and a properly executed request for full reconveyance together with appropriate documentation (i.e., copy of trust, partnership agreement or corporate resolution) be in this office prior to the close of this transaction if the above-mentioned item is to be paid through this transaction or deleted from a policy of title insurance.

Any demands submitted to us for payoff must be signed by all beneficiaries as shown on said deed of trust, and/or any assignments thereto. In the event said demand is submitted by an agent of the beneficiary(s), we will require the written approval of the demand by the beneficiary(s). Servicing agreements do not constitute approval for the purposes of this requirement.

If no amounts remain due under the obligation a zero balance demand will be required along with the reconveyance documents.

In addition, we require the written approval of said demand by the trustor(s) on said deed of trust or the current owners if applicable.

A substitution of trustee under said deed of trust which names, as the substituted trustee, the following

| | |
|---|---|
| Trustee: | S.B.S. Trust Deed Network, a California Corporation |
| Recording Date: | July 21, 2011 |
| Recording No.: | 2011-0295009, Official Records |

An agreement to assume the obligation thereof, as provided in the instrument

| | |
|---|---|
| Executed by: | Halo Sports Bar & Grill, Inc., a California Corporation and Klairis Thanos |
| Dated: | April 9, 2012 |
| Recording Date: | May 24, 2012 |
| Recording No.: | 2012-0203647, Official Records |

10. A lien for unsecured property taxes filed by the tax collector of the county shown, for the amount set forth, and any other amounts due.

*Release of lien issued on 09-09-2009*

| | |
|---|---|
| County: | San Bernardino |
| Fiscal Year: | 2006 |
| Taxpayer: | Pyrgos Inc. |
| County ID No.: | 0130-033-36-P-001 |
| Amount: | $427.11 |
| Recording Date: | November 19, 2007 |
| Recording No.: | 2007-0639578, Official Records |

11. A lien for unsecured property taxes filed by the tax collector of the county shown, for the amount set forth, and any other amounts due.

*Release of lien issued on 09-09-2009*

| | |
|---|---|
| County: | San Bernardino |
| Fiscal Year: | 2006 |
| Taxpayer: | Pyrgos Inc. |
| County ID No.: | 0133-155-01-P-000 |
| Amount: | $506.32 |
| Recording Date: | November 19, 2007 |
| Recording No.: | 2007-0639869, Official Records |

Exhibit C - Page 66

Title No.: 7101618342-DD

**EXCEPTIONS**
(continued)

12. A lien for unsecured property taxes filed by the tax collector of the county shown, for the amount set forth, and any other amounts due.



| | |
|---|---|
| County: | San Bernardino |
| Fiscal Year: | 2007 |
| Taxpayer: | Pyrgos Inc. |
| County ID No.: | 0130-033-36-P-001 |
| Amount: | $472.66 |
| Recording Date: | November 19, 2008 |
| Recording No.: | 2008-0505185, Official Records |

*Release of lien issued on 09-09-2009*

13. A lien for unsecured property taxes filed by the tax collector of the county shown, for the amount set forth, and any other amounts due.

| | |
|---|---|
| County: | San Bernardino |
| Fiscal Year: | 2007 |
| Taxpayer: | Pyrgos Inc. |
| County ID No.: | 0133-155-01-P-000 |
| Amount: | $562.16 |
| Recording Date: | November 19, 2008 |
| Recording No.: | 2008-0505433, Official Records |

*Release of lien issued on 09-09-2009*

14. A lien for unsecured property taxes filed by the tax collector of the county shown, for the amount set forth, and any other amounts due.

| | |
|---|---|
| County: | San Bernardino |
| Fiscal Year: | 2007 |
| Taxpayer: | Halo Sports Bar & Grill Inc. |
| County ID No.: | 0410-134-11-P-000 |
| Amount: | $544.69 |
| Recording Date: | November 19, 2008 |
| Recording No.: | 2008-0513570, Official Records |

*Release of lien issued on 06-22-2011*

15. A lien for unsecured property taxes filed by the tax collector of the county shown, for the amount set forth, and any other amounts due.



| | |
|---|---|
| County: | San Bernardino |
| Fiscal Year: | 2008 |
| Taxpayer: | Halo Sports Bar & Grill Inc. |
| County ID No.: | 0410-134-11-P-000 |
| Amount: | $528.00 |
| Recording Date: | November 19, 2009 |
| Recording No.: | 2009-0510908, Official Records |

*Release of lien issued on 06-22-2011*

16. A lien for unsecured property taxes filed by the tax collector of the county shown, for the amount set forth, and any other amounts due.



| | |
|---|---|
| County: | San Bernardino |
| Fiscal Year: | 2009 |
| Taxpayer: | Halo Sports Bar & Grill Inc. |
| County ID No.: | 0410-134-11-P-000 |
| Amount: | $445.91 |
| Recording Date: | November 19, 2009 |
| Recording No.: | 2009-0510909, Official Records |

*Release of lien issued on 06-22-2011*

Exhibit C - Page 67

Title No.: 7101618342-DD

## EXCEPTIONS
### (continued)

17.    A lien for unsecured property taxes filed by the tax collector of the county shown, for the amount set forth, and any other amounts due.

*Release of lien issued on 06-22-2011*

| | |
|---|---|
| County: | San Bernardino |
| Fiscal Year: | 2010 |
| Taxpayer: | Halo Sports Bar & Grill Inc. |
| County ID No.: | 0410-134-11-P-000 |
| Amount: | $491.37 |
| Recording Date: | November 18, 2010 |
| Recording No.: | 2010-487007, Official Records |

18.    A lien for unsecured property taxes filed by the tax collector of the county shown, for the amount set forth, and any other amounts due.

*Release of lien issued on 05-06-2014*

| | |
|---|---|
| County: | San Bernardino |
| Fiscal Year: | 2011 |
| Taxpayer: | Halo Sports Bar & Grill Inc. |
| County ID No.: | 0410-134-11-P-000 |
| Amount: | $495.61 |
| Recording Date: | November 15, 2011 |
| Recording No.: | 2011-0479639, Official Records |

19,    A state tax lien for the amount shown and any other amounts due,

| | |
|---|---|
| State ID No.: | BE-1297608 |
| Filed by: | State Board of Equalization |
| Taxpayer: | Santa Cruz Tides Inc., a Corporation  doing business as Rocksclub |
| Amount: | $3,068.25 |
| Recording Date: | August 30, 2012 |
| Recording No.: | 2012-0352289, Official Records |

20.    A state tax lien for the amount shown and any other amounts due,

| | |
|---|---|
| State ID No.: | SR EH 100652629 |
| Filed by: | State Board of Equalization |
| Taxpayer: | Shadowview Corporation a Corporation doing business as T-Zers Sports Bar & Grill |
| Amount: | $3,446.94 |
| Recording Date: | September 14, 2012 |
| Recording No.: | 2012-0378366, Official Records |

21.    A lien for unsecured property taxes filed by the tax collector of the county shown, for the amount set forth, and any other amounts due.

*Release of lien issued on 05-06-2014*

| | |
|---|---|
| County: | San Bernardino |
| Fiscal Year: | 2012 |
| Taxpayer: | Halo Sports Bar & Grill Inc. |
| County ID No.: | 0410-134-11-P-000 |
| Amount: | $493.51 |
| Recording Date: | November 9, 2012 |
| Recording No.: | 2012-0473494, Official Records |

Exhibit C - Page 68

Title No.: 7101618342-DD

## EXCEPTIONS
(continued)

22.    A state tax lien for the amount shown and any other amounts due.

State ID No.:        BE-1305661
Filed by:           State Board of Equalization
Taxpayer:           Santa Cruz Tides Inc., a Corporation doing business as Rocksclub
Amount:             $2,618.47
Recording Date:     February 8, 2013
Recording No.:      2013-0057898, Official Records

23.    A lien for unsecured property taxes filed by the tax collector of the county shown, for the amount set forth, and any other amounts due.

County:             San Bernardino                    *Unpaid*
Fiscal Year:        2013
Taxpayer:           Shadowview Corp
County ID No.:      0396-235-21-P-001
Amount:             $261.99
Recording Date:     November 14, 2013
Recording No.:      2013-0493429, Official Records

24.    A lien for unsecured property taxes filed by the tax collector of the county shown, for the amount set forth, and any other amounts due.

*Release of lien issued on 05-06-2014*

County:             San Bernardino
Fiscal Year:        2013
Taxpayer:           Halo Sports Bar & Grill Inc.
County ID No.:      0410-134-11-P-000
Amount:             $500.33
Recording Date:     November 14, 2013
Recording No.:      2013-0493702, Official Records

25.    An abstract of judgment for the amount shown below and any other amounts due:

Amount:             $4,752.02
Debtor:             Santa Cruz Tides, Inc., a California Corporation dba Rocks Club, DBA Rocksclub; Klairis
Thanos aka George Thanos Individually
Creditor:           Collectronics, Inc.
Date entered:       March 17, 2014
County:             San Bernardino
Court:              Superior
Case No.:           CIVRS 1306962
Recording Date:     May 14, 2014
Recording No.:      2014-0175198, Official Records

26.    A state tax lien for the amount shown and any other amounts due.

State ID No.:        14169384021
Filed by:           Franchise Tax Board
Taxpayer:           Halo Sports Bar & Grill Inc. dba The Desert Fox
Amount:             $72,956.73
Recording Date:     July 1, 2014
Recording No.:      2014-0236325, Official Records

Exhibit C - Page 69

Title No.: 7101618342-DD

## EXCEPTIONS
### (continued)

27.  A lien for unsecured property taxes filed by the tax collector of the county shown, for the amount set forth, and any other amounts due.

*Release of lien issued on 10-19-15*

| | |
|---|---|
| County: | San Bernardino |
| Fiscal Year: | 2014 |
| Taxpayer: | Halo Sports Bar & Grill Inc.; Rocks Club Sports Bar |
| County ID No.: | 0410-134-11-P-000 |
| Amount: | $499.95 |
| Recording Date: | November 13, 2014 |
| Recording No.: | 2014-0428011, Official Records |

28.  A lien for unsecured property taxes filed by the tax collector of the county shown, for the amount set forth, and any other amounts due.

*Unpaid*

| | |
|---|---|
| County: | San Bernardino |
| Fiscal Year: | 2014 |
| Taxpayer: | Shadowview Corp |
| County ID No.: | 0396-235-21-P-001 |
| Amount: | $263.13 |
| Recording Date: | November 13, 2014 |
| Recording No.: | 2014-0428590, Official Records |

29.  A state tax lien for the amount shown and any other amounts due,

| | |
|---|---|
| State ID No.: | BE-1349336 |
| Filed by: | State Board of Equalization |
| Taxpayer: | Santa Cruz Tides Inc. a Corporation doing business as Rocksclub |
| Amount: | $111,799.77 |
| Recording Date: | March 10, 2015 |
| Recording No.: | 2015-0091228, Official Records |

30.  An abstract of judgment for the amount shown below and any other amounts due:

| | |
|---|---|
| Amount: | $1,811.46 |
| Debtor: | Shadowview Corporation, dba Tezzers sports Bar & Grill; Klairis Thanos aka Klairis Thands, aka Klairis Thanopoulos, individually as personal guarantor of Shadowview Corporation |
| Creditor: | Collectronics, Inc. |
| Date entered: | October 21, 2014 |
| County: | San Bernardino |
| Court: | Superior |
| Case No.: | CIVRS 1402556 |
| Recording Date: | April 23, 2015 |
| Recording No.: | 2015-0161436, Official Records |

31.  A state tax lien for the amount shown and any other amounts due,

| | |
|---|---|
| State ID No.: | SR EH 100652629 |
| Filed by: | State Board of Equalization |
| Taxpayer: | Shadowview Corporation a Corporation doing business as T-Zers Sports Bar & Grill |
| Amount: | $2,228.23 |
| Recording Date: | May 1, 2015 |
| Recording No.: | 2015-0178119, Official Records |

Exhibit C - Page 70

Title No.: 7101618342-DD

## EXCEPTIONS
### (continued)

32.    Deed as set forth below:

Grantor:            Klairis Thanos, an unmarried woman
Grantee:            Halo Sports Bar and Grill, Inc., a California Corporation
Dated:              May 1, 2015
Recording Date:     May 4, 2015
Recording No:       2015-0181545, Official Records

Any defect or invalidity of the title to the estate or interest of the grantee herein arising out of or occasioned by the execution of the above-referenced deed.

For insurance purposes, the Company will require that an affidavit, executed by the above grantor and acknowledged by a notary known to the Company, be submitted to the Company for review and approval in order for the Company to show title vested in the above-named grantee. Said affidavit will be provided by the Company.

The Company reserves the right to add additional items or make further requirements after review of the requested documentation.

33.    Any matters arising out of or by virtue of that certain bankruptcy case:

Name of Debtor:       Halo Sports Bar & Grill Inc.
Date of Filing:       May 6, 2015
U. S. District Court: Central
State:                California
Case No.:             6:15-bk-14566-SC
Chapter:              11
Attorney:             W. Derek May, Law Offices of Stephen R. Wade, P.C.
Attorney's Address:   350 W. Fourth Street, Claremont, CA 91711
Attorney's Phone No.: 909-985-6500

34.    Notice of Pendency of Administrative Proceedings No. CE15-41113, and the lien of any assessment arising therefrom by the Department of Building and Safety of the City of Hesperia, in the matter of unlawful or unsafe conditions on the herein described Land.

Property Owner:     Halo Sports Bar & Grill
Recording Date:     October 8, 2015
Recording No.:      2015-0440553, Official Records

Reference is hereby made to said document for full particulars.

35.    A lien for unsecured property taxes filed by the tax collector of the county shown, for the amount set forth, and any other amounts due.



County:             San Bernardino
Fiscal Year:        2015                          *unpaid*
Taxpayer:           Shadowview Corp; Teasers Sports Bar & Grill
County ID No.:      0396-235-21-P-001
Amount:             $261.80
Recording Date:     November 18, 2015
Recording No.:      2015-0505989, Official Records

Exhibit C - Page 71

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:
21860 Burbank Boulevard, Suite 360, Woodland Hills, CA  91367

A true and correct copy of the foregoing document entitled (*specify*

TRUSTEE'S MOTION FOR ORDER:
(1)     AUTHORIZING SALE OF REAL PROPERTY OF THE ESTATE (17122 MAIN STREET,
        HESPERIA, CALIFORNIA) FREE AND CLEAR OF CERTAIN LIENS CLAIMS AND INTERESTS;
(2)     CONFIRMING SALE TO THIRD PARTY OF THE HIGHEST BIDDER APPEARING AT THE
        HEARING;
(3)     FOR DETERMINATION THAT BUYER IS ENTITLED TO 11 U.S.C. §363(m) PROTECTION; AND
(4)     WAIVING THE FOURTEEN DAY STAY PRESCRIBED BY BANKRUPTCY RULE 6004
MEMORANDUM OF POINTS AND DECLARATIONS OF LARRY SIMONS AND BRUCE KALLAN IN
SUPPORT THEREOF

will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*)
___August 22, 2017___ , I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

Attorney for Creditor Schou Family Living Trust:  Jason D Annigian jason@annigian-law.com, jason@annigian-law.com
Attorney for Trustee Larry D Simons (TR):  Stephen F Biegenzahn - efile@sfblaw.com
Attorney for Creditor and Lienholder San Bernardino County Treasurer and Tax Collector: Barry S Glaser - bglaser@swesq.com, erhee@swesq.com
Attorney for U.S. Trustee United States Trustee (RS):
Everett L Green - everett.l.green@usdoj.gov
Attorney for Debtor Halo Sports Bar and Grill, Inc. and Interested Party Klairis Thanos: W. Derek May - wdmlaw17@gmail.com, r48266@notify.bestcase.com
Attorney for Trustee Larry D Simons (TR): Alan I Nahmias - anahmias@mbnlawyers.com, jdale@mbnlawyers.com
Attorney for Trustee Larry D Simons (TR): Scott H Noskin - snoskin@mbnlawyers.com, aacosta@mbnlawyers.com
Chapter 7 Trustee:  Larry D Simons - larry@lsimonslaw.com, c119@ecfcbis.com; nancy@lsimonslaw.com; cynthia@lsimonslaw.com
United States Trustee (RS): ustpregion16.rs.ecf@usdoj.gov
Attorney for Debtor Halo Sports Bar and Grill, Inc.: Stephen R Wade - srw@srwadelaw.com, reception@srwadelaw.com

☐ Service information continued on attached page

**2. SERVED BY UNITED STATES MAIL**:
On (*date*)  ___August 22, 2017___ , I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

---

{00469370}This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*

**F 9013-3.1.PROOF.SERVICE**

PRESIDING JUDGE'S COPY:
Honorable Scott C. Clarkson
United States Bankruptcy Judge
411 W. Fourth Street, Suite 5130
Santa Ana, CA 92701

BUYERS:
Mark and Munem Maida
13302 Ranchero Rd.
Oak Hills, CA 92344

REALTOR:
Bruce Kallen
Shear Realty
12640 Hesperia Rd. Suite G
Victorville, CA 92395

LIEN HOLDERS:

State Board of Equalization
Account Information Group, MIC: 29
P. O. Box 942879
Sacramento, CA 94729-0020

Collectronics, Inc.
c/o Ralph L. Pollard, Esq.
3785 Brickway Boulevard, Suite 210
Santa Rosa, CA 95403-9034

Franchise Tax Board Bankruptcy Section, MS: A-340
P. O. Box 2952
Sacramento, CA 95812-2952

State of California Employment Development Department
Bankruptcy Group MIC 92E
P. O. Box 826880
Sacramento, CA 94280-0001

☐ Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method
for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (date) _____, I served
the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to
such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration
that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is
filed.

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

August __22__, 2017          JACQUELINE DALE          _____
Date                              Printed Name                              Signature

{00469370}This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2012

**F 9013-3.1.PROOF.SERVICE**